WARRANTY DEED

THE BAPTIST CONVENTION OF NEW MEXICO, a corporation, for considera-
tion paid, grants to the EXECUTIVE COMMITTEE OF THE SOUTHERN BAPTIST CONVENTION,
a corporation, the following described real estate in Santa Fe County, New
Mexico:

The west half of Section 22 in Township 16 North, Range 11
East, N.M.P.M., the northwest quarter of Section 27 in Township
16 N., Range 11 E., N.M.P.M., and all that part of the north
half of the southwest quarter and the southwest quarter of the
southwest quarter and the north half of the southeast quarter
of the southwest quarter of Section 27 in Township 16 N., Range
11 E., N.M.P.M., which lies to the north of the northerly right-
of-way line of the Santa Fe-Las Vegas Highway commonly known as
U. S. Highway No. 85, as said highway existed on June 22, 1939;
said northerly right-of-way line of said highway being more
particularly described as follows, to-wit:
Commencing at a point marked by an iron stake set on the
line between Section 27 and 28 of Township 16 N., Range 11 E.,
N.M.P.M., from which said point an iron post with brass cap
marked, witnessed and set by the United States General Land
Office for the quarter corner of Sections 27 and 28 of Township
16 N., Range 11 E., N.M.P.M., bears N. 0° 12' E. 903.9 feet
distant; and from said point of beginning running thence
S. 76° 49' E. 187.0 feet along the north boundary of said right
of way to an iron stake set at the point of a curve; thence
along a curve to the right whose external is 46.0 feet and whose
chord is S. 65° 26' E. 656.5 feet to an iron stake set at the
point of tangent, thence S. 49° 34' E. 136.0 feet to an iron
stake set at the point of curve; thence along a curve to the
right whose external is 6.0 feet and whose chord bears
S. 42° 15' E. 361.0 feet to an iron stake set at the point of
tangent; thence S. 35° 39' E. 362.5 feet to an iron stake;
thence S. 48° 01' E. 91.1 feet to an iron stake set on the
line between the north half of the southeast quarter of the
southwest quarter and the south half of the southeast quarter
of the southwest quarter of Section 27, Township 16 North,
Range 11 East, N.M.P.M., also the southeast quarter of Section
27 in Township 16 North, Range 11 East, N.M.P.M.

With Warranty Covenants.

IN WITNESS WHEREOF, the grantor herein has caused its corporate
name to be hereunto subscribed and its corporate seal to be hereto attached
this 24 day of January, 1950.

THE BAPTIST CONVENTION OF NEW MEXICO,
a corporation,

By _____
President of the Board

Attest:

_____
Executive Secretary

EXHIBIT 1

STATE OF NEW MEXICO )
                     ) ss.
COUNTY OF _____ )

On this 10th day of January, 1950, before me personally

appeared _____ to me personally known,

who being by me duly sworn, did say that he is President of the Board

of The Baptist Convention of New Mexico, a corporation organized under

the laws of the State of New Mexico, and the seal affixed to said instru-

ment is the corporate seal of said corporation, and that said instrument

was signed and sealed in behalf of said corporation, by authority of its

board of directors, and said _____ acknowledged

said instrument to be the free act and deed of said corporation.

Witness my hand and seal this the day and year last above written.

_____
Notary Public

My commission expires:

_____

Mail, To Charles Spann, Box 666., Santa Fe, N.M.

EXHIBIT 1
p. 2

WARRANTY DEED

332330

THE SUNDAY SCHOOL BOARD OF THE SOUTHERN BAPTIST CONVENTION, a Tennessee

corporation, Grantor, for consideration paid, grants to GLORIETA BAPTIST CHURCH of

Glorieta, New Mexico, Grantee, the following described real estate in Santa Fe

County, New Mexico:

A certain tract of land lying, being and situate in Section 28,
Township 16 North, Range 11 East, N.M.P.M., County of Santa Fe,
State of New Mexico, being more particularly described as follows:

Beginning at the Southeast corner of the herein described tract
and parcel of land, from which point the East quarter corner of
Section 28, Township 16 North, Range 11 East, New Mexico principle
meridian, bears South 71° 38' 45" East, 1455.04 feet, thence from
said point and place of beginning, North 85° 42' 22" West, 140.34
feet to the Southwest corner of the herein described tract and
parcel of land, thence North 0° 37' 57" East, 278.14 feet to the
Northwest corner of the herein described tract and parcel of land,
thence South 84° 20' 21" East, 144.59 feet to the Northeast cor-
ner of the herein described tract and parcel of land, thence
South 1° 27' 18" West, 274.41 feet to the point and place of be-
ginning.

Said tract and parcel of land containing 0.902 acres more or less.

All as shown upon plat of survey prepared by Bernie A. Alarid,
Registered Land Surveyor No. 5338, in November 1975, and en-
titled "Plat of Survey for Glorieta Baptist Conference Center
within the Northeast quarter of Section 28, Township 16 North,
Range 11 East, N.M.P.M. Santa Fe County New Mexico".

TO HAVE AND TO HOLD THE SAME, together with all the tenements, heredita-

ments, and appurtenances thereunto belonging, or in any wise appertaining, to the

said Grantee, and its assigns, for use as a cemetery, forever. The Grantor, for

itself, its successors, or assigns, does hereby guarantee to the Grantee, and its

assigns a right-of-access to the above described and conveyed land and premises,

but the Grantor shall not be responsible for maintaining any access road. The

Grantor, for itself, its successors, or assigns, does hereby covenant with Grantee,

and its assigns, that it is well seized in fee of the above described and conveyed

land and premises and that it has good right to sell and convey said land in the

manner and form set forth; that the same is free of all encumbrances; and that the

above bargained and granted land and premises in the quiet and peaceable posses-

sion of the Grantee, and its assigns, against all persons lawfully claiming, or to

claim, the whole or any part thereof, the Grantor will warrant and defend.

IN WITNESS WHEREOF, the Grantor has caused its corporate name and offi-

cial seal to be set hereunto on the    10th    day of    March    , 1976.

THE SUNDAY SCHOOL BOARD OF
THE SOUTHERN BAPTIST CONVENTION

By *Grady C. Cothen*
                        PRESIDENT

ATTEST: *M. J. Alexie*
                SECRETARY

EXHIBIT 2

# GIFT DEED

The Sunday School Board of the Southern Baptist Convention, a Tennessee nonprofit corporation with principal offices in Nashville, Tennessee, hereby and without consideration, except for the right of reversion herein, quitclaims to the Glorieta Pass Fire District, a private organization, whose address is Post Office Box 206, Glorieta, New Mexico the following real estate in Santa Fe County, New Mexico:

A certain tract of land lying and being situated within Section 28, Township 16 North, Range 11 East, New Mexico principal meridian, Santa Fe County, State of New Mexico, and more particularly described by metes and bounds as follows:

BEGINNING at the Southeast corner of the tract whence the U.S.G.L.O. Brass Cap of the East ¼ corner of Section 28, bears N.60°47'04"E., 1,109.19 feet, thence from said point of beginning,
S.89°50'46"W., 347.19 feet to a point; thence,
N.35°09'17"E., 181.71 feet to a point; thence,
S.58°40'20"E., 283.96 feet to the point and place of beginning; and containing 0.591 acres, more or less;

All as shown on that certain plat of survey titled "Plat of Survey for Glorieta Volunteer Fire Department," dated September 5, 1984, by Dean Williamson N.M.P.L.S. No. 6671.

This conveyance is being made for the express purpose of providing real estate upon which the Glorieta Pass Fire District will forthwith construct and maintain a fire station and conduct related activities, including classroom training; subject, however, to a right of forfeiture and reversion to The Sunday School Board of the Southern Baptist Convention or its assigns, in the event the real estate or any improvement thereon ever ceases to be used by the Glorieta Pass Fire District or its successors for those express purposes or if fires are actually set or explosives are used on the real estate or improvements thereon for training or any other purpose.

SFC CLERK RECORDED 02/09/2005

EXHIBIT 3
P-1

WITNESS our hands and seals this 5th day of November , 1984.

*Lloyd S. Elder*

LLOYD ELDER
President
The Sunday School Board of the
Southern Baptist Convention

Attested:

*Joyce M. Byrd*

Joyce M. Byrd
Secretary

Acknowledgment for Corporation

STATE OF TENNESSEE )
                                      ) ss.
COUNTY OF DAVIDSON )

The foregoing instrument was acknowledged before me this 5th day of November, 1984, by Lloyd Elder, President of The Sunday School Board of the Southern Baptist Convention, a Tennessee corporation, on behalf of said corporation.



Notary Public

My commission expires:

*July 18, 1987*



COUNTY OF SANTA FE      )                    GIFT DEED
STATE OF NEW MEXICO     ) ss              PAGES: 2

I Hereby Certify That This Instrument Was Filed for Record On The 9TH Day Of February, A.D., 2005 at 10:59 And Was Duly Recorded as Instrument # 1366299 Of The Records Of Santa Fe County

Witness My Hand And Seal Of Office
                                        Valerie Espinoza
Deputy _____  County Clerk, Santa Fe, NM

GIFT DEED - 2

EXHIBIT 3
P. 2

SFC CLERK RECORDED 02/09/2005



Kirk Tompkins, Managing Partner
4512 Carter Lane
Little Rock, Arkansas 72223 USA
501.680.4408 Mobile
501.235.8043 Office
SKYPE: kirktompkins
Kirk.Tompkins@comcast.net

July 31, 2013

Dr. Thom S. Rainer, President
LifeWay
One LifeWay Plaza
Nashville, Tennessee 37324

RE: Glorieta Proposed Sale to Glorieta 2.0

Dear Dr. Rainer:

Media coverage about LifeWay's pending disposal of Glorieta Conference Center to Glorieta 2.0 is publishing commentary from individuals expressing their point of view about issues largely focusing on the homes owned by leaseholders.

There is confusion by the similarity between the name Glorieta Conference Center and Glorieta 2.0. Some believe Glorieta 2.0 is the rebirth of Glorieta Conference Center. Of course, that is not true. Glorieta 2.0 is a non-Baptist, non-related group of businessmen operating for profit children's camps. The Glorieta Conference Center, under Glorieta 2.0's business plan barely and faintly resembles the historic mission that donated Glorieta Conference Center to Southern Baptist. None of the adult mission programs will continue, nor will the Glorieta 2.0 face welcome Baptist conferences.

The struggle sitting so heavily upon each of the Glorieta homeowners is their faith and belief in a statement by LifeWay.

Jerry Rhyne, LifeWay vice president and chief financial officer said, "One of the most important requirements for any sale of Glorieta was that new owners provide options that are fair, reasonable and prudent for individuals and churches that lease land at Glorieta for residential homes and small group facilities."

The fact remains that Glorieta 2.0 "options" offered Glorieta homeowners fail to meet the "requirement" set out by LifeWay. There is little doubt that if LifeWay executives and LifeWay Trustees individually owned the 60 homes involved, not one would accept any of the Glorieta 2.0 offers.

1

EXHIBIT 4
P. 1

The Glorieta 2.0 homeowner options expanded from the original "options" currently include:

> (1) $40,000 home purchase, now enhanced by additional funding provided by LifeWay to Glorieta 2.0, adding a $30.00 sq. ft. clause with a cap of $100,000 if the homeowner's home qualifies

> (2) Donating the home and taking an IRS tax credit for 30% of the appraised value

> (3) A 12-year lease with severe restrictions and homeowner requirements subject to unknown future regulations imposed by Glorieta 2.0, agreeing to donate the home to Glorieta 2.0 at the end of the 12-year lease

All three Glorieta 2.0 options result in evicting homeowners from their homes at pennies on the dollar. The 12-year lease terminates with homeowners donating their home to Glorieta 2.0 after paying $1800 annual escalating lease fees, insurance, taxes, and maintenance (which in some homeowner situations include an immediate need for new roofs that will cost $12,000 to $14,000.

Many Glorieta homes typically market at over $200,000, and in the area outside the Glorieta gate, MLS real-estate listings for like kind market at $300,000 to $400,000, and more. In the more depressed areas near Glorieta, homes sell for a minimum of $109.00 sq. ft.

The upside is that a Glorieta homeowner might find a like kind home in the $40,000 range by relocating to a city like Detroit.

It is my hope, and my recommendation as a business consultant, LifeWay terminate the current proposed Glorieta Conference Center offer to Glorieta 2.0. That LifeWay renew current leases until a time in the future that Glorieta 2.0, or other entity has the proper financing to acquire the 2400 acres with a good faith offer. It may be helpful to the next round of Glorieta contenders to include representation from Glorieta homeowners.

I suggest LifeWay Executives, LifeWay Executive Committee, and LifeWay Trustees review their decisions considering the unintended consequences to all concerned as is now evident.

Respectfully,

Kirk Tompkins & Family
304 Aspen Leaseholders

cc: Jerry Rhyne
     LifeWay Trustees via U.S. Mail
     Glorieta Homeowners

2

EXHIBIT 4
P. 2

*Dr. John W. and Becky Yarbrough*
*2905 Cambridgeshire DR*
*Carrollton, TX 75007*

Dr. Thom S. Rainer, President
LifeWay
1 LifeWay Plaza
Nashville, TN 37234

Dear Dr. Rainer:

My wife and I have been homeowners at the Southern Baptist and LifeWay's Glorieta Conference Center for 10 years. We are both in our late 60's. At age 40, I responded to God's call to full-time Christian Ministry and left my job with a large company. I now have an MDiv (1986) from Southwestern Baptist Theological Seminary in Ft. Worth, TX. and I have a DMin (1997) from Golden Gate Baptist Theological Seminary in San Francisco, CA. We served for 5 years as SBC Home Missionaries and retired after 26 years of ministry service on the staff of First Baptist Church of Carrollton, TX in 2011. Since I am a retired Southern Baptist Minister and have been active in many ways in the Southern Baptist life, we have a major problem and we would appreciate your help.

More than ten years ago, LifeWay asked us and other Southern Baptist to <u>invest</u> in the "new" Glorieta. We were told of a new vision for Glorieta and several houses were offered for sale by LifeWay. After many months of prayer, we purchased one of the homes that LifeWay advertised as a three-unit home with LifeWay's appraised value of $150,000. The home needed major repair, including a new roof, windows, flooring, ceiling, wall repairs and painting, etc. We refinanced our home in Texas in order to purchase our Glorieta home. We were excited and proud to be a part of the Southern Baptist LifeWay Glorieta Community and signed LifeWay's lease agreement. I was personally told on different occasions by LifeWay Glorieta leadership that Glorieta's financial condition was good and leases have always been renewed. If Glorieta was ever sold I would receive a fair market value for my retirement investment in my home.

Over the last 10 years we have completed these repairs and remodeling using all of our vacation time each year. This was our retirement home and place that we believed God wanted us to share with family, other ministers, missionaries and their spouses. We also planned to develop a ministry for others in Christian service that were burned out and needed a place to relax and renew so they could return to Christian Service. Did we trust the wrong people? Will LifeWay live up to their published Core Values?

*Character - LifeWay Core Value 4*
*Character is the expression of the person of Christ in our life. We will live consistent, Christian lifestyles, conducting our ministry and business with the highest standards of honesty, integrity and Christian ethics. "I have been crucified with Christ, and it is no longer I who live, but Christ lives in me . . ." Galatians 2:20*

EXHIBIT 5
P.1

We didn't learn until 2011, when LifeWay announced the process to sale Glorieta that we were no longer welcomed and our investment in the "new" Glorieta was no longer valued nor honored.   Our hearts were troubled because we believed in our Southern Baptist Roots and we were partnering with other Christian Believers, LifeWay, and our Southern Baptist Convention.  The Southern Baptist Convention has always been dedicated to Biblical integrity, honesty and Christ-Like Values as stated in the Charter and By-Laws of SBC.

Upon reviewing our current lease we noticed that it does not expire until September 30, 2014. We have read the agreement as it pertains to sale of the premises and ask LifeWay to purchase our improvements at $250,000.  As stated in our lease agreement, Item 14 – "Glorieta, at its option, shall have the right to purchase the improvements on the Premises."  This would be an honorable action to restore our retirement investment at a fair value.  Glorieta 2.0 offer will rob us of $170,000 of our retirement funds.  Are the retirement funds of a retired Southern Baptist Minister and Missionary to be used to finance the sale of Glorieta to a non-Southern Baptist ministry or possible a for-profit business?

Jerry Rhyne, LifeWay vice president and chief financial officer said, "One of the most important requirements for any sale of Glorieta was that new owners provide options that are fair, reasonable and prudent for individuals and churches that lease land at Glorieta for residential homes and small group facilities."

As an active Southern Baptist Minister and retired Southern Baptist Missionaries and believers in the Lord Jesus Christ, we are requesting that the leadership of LifeWay and the Southern Baptist Convention respond to our request.  If the Southern Baptist Convention and LifeWay do not respond appropriately, then LifeWay Glorieta will have created the Southern Baptist Convention's own retirement scandal by misleading us and other investors of Glorieta, much like the company 'Enron' did with their investors.  Our Southern Baptist heritage demands much better!

> Customers—LifeWay Core Value 3  Our customers are our reason for existence. Knowing our customers, not just knowing about them, and meeting their expressed, an unexpressed and unknown need is essential to achieving our vision.
> *"So in everything, do unto others what you would have them do unto you . . ."*     Matthew 7:12

We were so disturbed by the statement Jerry Rhyne, CFO of LifeWay made at a meeting with approximately 60 others in 2011 when it was ask of Mr. Rhyne, "Do any LifeWay Employees have a home or a lease agreement in Glorieta"?  His reply was: "I would never have signed this lease"!  It was and still is so appalling to be so discounted and basically told that we were taken in or "suckered" by signing  this (apparently unconscionable) lease. So again, we sincerely ask that our request be addressed, especially since we purchased our home directly from LifeWay.

> Stewardship—LifeWay Core Value 6  We will be faithful stewards of all God has entrusted to us.
> *"From everyone who has been given much, much will be demanded, and from the one who has been entrusted with much, much more will be asked",*  Luke 12:48b

EXHIBIT 5
P. 2

Our family, fellow leaseholders, the community surrounding Santa Fe, Southern Baptist Worldwide and other people around the world are waiting and watching LifeWay's actions to see how a Christian organization conducts their business and practices their own Core Value Statements.

As this is a very time sensitive matter, I would request a response from you before Tuesday, August 20.  Please do not disregard this letter from one of your own Southern Baptist Ministers. We write this letter from our hearts because we know that God requires of us to be wise stewards of all He has given us and to speak up and be heard.  We ask that you put yourselves in our shoes for a moment and consider what you would do if you were in our place?

*"So in everything, do unto others what you would have them do unto you . . ."*     *Matthew 7:12*

Remember that neither us, nor any of the homeowners had anything to do with the demise of Glorieta.

Sincerely,

John and Becky Yarbrough
342 Aspen

cc:  SBC LifeWay Trustees
     Baptist General Convention of Texas
     Baptist General Convention of New Mexico
     Dr. Brent Taylor, Senior Pastor First Baptist Church; Carrollton, Texas

EXHIBIT 5
P. 3

**Kirk Tompkins**
**4512 Carter Lane**
**Little Rock, AR 72223**
**501.680.4408**
**Kirk.Tompkins@comcast.net**

August 17, 2013

Fred Luter, SBC President
Franklin Avenue Baptist Church
2515 Franklin Avenue
New Orleans, Louisiana 70117

Frank S. Page
Taylors First Baptist Church
200 West Main Street
Taylors, SC 29687

The Executive Committee of the Southern Baptist Convention
901 Commerce Street, Seventh Floor
Nashville, TN 37203-3699

SBC EXECUTIVE COMMITTEE

Ernest L. Easley, SBC Chairman
Senior Pastor
Roswell Street Baptist
774 Roswell Street
Marietta, GA  30060

Michael W. (Mike) Routt, SBC Vice Chairman
Senior Pastor
Circle Drive Baptist
801 N Circle Drive
Colorado Springs, CO 80909-5036

John L. Yeats, SBC Admin. Comm. Chair
Executive Director
Missouri Baptist Convention
400 E. High Street
Jefferson City, MO 65101

EXHIBIT 6

Chris S. Osborne, SBC Bus. & Fin. Comm. Chair
Senior Pastor
Central Baptist Church
1991 FM 158
College Station, TX 77845

Rodney F. Autrey, SBC CP Comm. Chair
Senior Pastor
Emmanuel Baptist Church
8006 Centreville Road
Manassas, VA 20111

Jerry L. Rhyne, Principal
LifeWay Christian Resources of the Southern Baptist Convention
One LifeWay Plaza
Nashville, TN 37234

Thom S. Rainer, Principal
LifeWay Christian Resources of the Southern Baptist Convention
One Lifeway Plaza
Nashville, TN 37234


Anthony Scott
Glorieta 2.0
% Glorieta Conference Center
P.O. Box 8
Glorieta, NM 87535


**Re: *Enjoinment* to Cease and Desist**


Dear Sir/Madam:

Every avenue challenging LifeWay actions now exhausted regarding Glorieta Conference Center for fair and equitable treatment of all parties, having begun in 2011, forces this letter. LifeWay's lack of response and unwillingness to consider the several letters and requests from multiple parties leaves no other choice but to demand through this *Enjoinment* letter to cease and desist all actions involving any disposal of Glorieta Conference Center.

In a LifeWay organized meeting, Lifeway presented their company as "agency duty" speaking about how they represented Glorieta Conference Center homeowners' interests. In assuming

representation for homeowners, LifeWay assumed the fiduciary duty to protect homeowners' interests, which LifeWay has failed miserably.

This letter is to demand Southern Baptist Convention (SBC), LifeWay, Glorieta 2.0, and their independent and separate Trustees, board members and staff to immediately stop any and all action involving any actionable agreement with Glorieta 2.0 as "inking" such a voidable contract will certainly lead to legal claims and individual trustee's personal liability.

This is a demand to stop further intimidation, coercion or harassment of leaseholders to force them to sign any Glorieta 2.0 "option" offers. The LifeWay intimidation telling Leaseholders that if they do not sign a Glorieta 2.0 offer, LifeWay will have to place Glorieta Conference Center on the public sale block is a blatant act to defraud Leaseholders of their property. LifeWay charter requires two separate but formal SBC convention unifications for any such action approval.

Under the authority of the SBC 2007 Convention, LifeWay authorization is to develop and promote, but LifeWay is not authorized to dispose of a conference facility as stated in article 5 of specifically assigned LifeWay tasking by the 2007 SBC Convention.

*5. Assist churches through the operation of conference centers and camps.*
*Develop, promote, and operate conference and resident camp facilities useful to Southern Baptist Convention entities, state conventions, associations, and churches in establishing, enlarging, and improving their ministries.*

LifeWay in this action to liquidate and dispose of Glorieta Conference Center is a willful violation of Southern Baptist Convention Charter and Bylaws, but more significantly, just tacit knowledge might subject trustees, directors, and staff to personal liability.

LifeWay sending email to LifeWay Executive Committee is not a replacement for LifeWay judicial and fiduciary responsibility to the SBC Charter.

Under the authority of the SBC 2007 Convention, The Executive Committee of the Southern Baptist Convention and LifeWay Christian Resources of the Southern Baptist Convention have provided these Executive Committees specific powers enumerated. None of these powers includes any Executive Committee authorization to liquidate or dispose of a conference center, i.e. Glorieta Conference Center.

Southern Baptist Convention, and LifeWay's violation of the SBC Charter/Bylaws is damaging to the reputation of SBC and LifeWay. SBC and LifeWay are therefore, enjoined to cease any further initiative in the unlawful liquidation of SBC's corporate asset, Glorieta Conference Center, until full investigation of charter violations to determine if violations are occurring. Such an investigation should also decide if the public, which include individuals, churches and all of the groups that either buy from LifeWay, or donate to SBC, consider the disposing of Glorieta Conference Center a waste of their money.

SBC and LifeWay should not engage in a sham 'review' of LifeWay's compliance with the SBC Charter / Bylaws, as this review may be subject to discussion at the 2014 SBC convention.

The LifeWay position remains unequivocal, although careful attention to comments and statements of various writings that LifeWay stated represent a dichotomy to LifeWay actions.

The "argument" to consider is "FRAUDULENT MISREPRESENTATION" and "ABUSE OF BY-LAWS" highlighted with "ORIGINAL INTENT."

The SBC Charter (bi-laws) requires LifeWay to present any disposal of the assets like Glorieta Conference Center to the SBC full convention in two successive years for convention approval. In the five hundred pages of each of the 2011 and 2012 convention minutes, there is no Glorieta Majority Report and no Glorieta Minority Report presented, and there are no recorded votes by convention. The 2013 minutes are not yet available on the SBC website. There is a brief and casual passing over Glorieta by LifeWay's president in the 2012 convention minutes:

*"At Glorieta, the trustees of LifeWay Christian Resources approved a recommendation to reduce operations at Glorieta Conference Center. Effective November 1, 2011, the center will offer only summer events for student groups. Centrifuge Camps and Collegiate Week will continue as usual. Trustees also provided direction to begin pursuing viable options for the disposition of the property including, but not limited to, sales to or alliances with SBC entities, state conventions, and other ministries."* Again, there is no record of the required vote by convention messengers.

Glorieta Conference Center became part of Southern Baptist Convention through due process of following SBC charter/Bylaws requirement of two consecutive full SBC convention votes rejecting the majority report recommending Harrison, Arkansas in favor of the minority report accepting Glorieta as SBC's western conference center.

Simply stated, Glorieta Conference Center became part of the Southern Baptist Convention by strict adherence to SBC Charter. The same SBC Charter applies to any disposal of Glorieta Conference Center.

Here noted is that LifeWay changes to SBC leases with Glorieta Leaseholders failed to go before convention and the lease changes did not receive the Charter required by 2-convention vote process.

Further noted is that LifeWay's participation or approval of Glorieta 2.0 fund raising violates SBC Charter.

*VI. Fund Raising Activities:*

*A. Approval of Financial Activities – No entity of the Southern Baptist Convention shall conduct any type of fund raising activity without the advance approval of the Convention, or its Executive Committee. No advance approval shall be required for the two Convention approved special*

offerings: *Lottie Moon Christmas Offering for International Missions and Annie Armstrong Easter Offering for North American Missions.*

*D. No Financial Appeals to Churches – In no case shall any Convention entity approach a church for inclusion in its church budget or appeal for financial contributions.*

LifeWay staff and Glorieta 2.0 staff are intimidating the Glorieta Conference Center Churches and other home church missions to accept "options" that each end up requiring the improvements be "donated."

LifeWay's "deferred maintenance" at Glorieta Conference Center is contrary to Charter section XII.

*"XII. Contingent Reserves: Each entity of this Convention shall set up as soon as possible a reserve for contingencies to provide for deficits that may occur either through decreased receipts or through emergencies or both. The maximum amount of contingent reserve of any entity shall be determined by the entity, subject to the approval of the Convention. Entities shall state on the balance sheets of the annual audits the amounts in Contingent Reserve Funds."*

Any participation by LifeWay financially aiding Glorieta 2.0 to increase the value of options offered leaseholders above Glorieta 2.0's budgeted amount of $40k raising the amount to a maximum of $100k is yet another violation of the SBC Charter as it represents expenditures. SBC Convention minutes fail to record the two-convention requirement authorization for such expenditure by LifeWay.

*"XV. New Enterprises: No new enterprise involving expenditure of money shall be authorized by the Convention except upon favorable action by the Convention in two (2) succeeding annual meetings; provided, however, that this restriction shall not apply to a recommendation of any entity of the Convention concerning its own work. In the event any new hospital propositions are made, they must be considered as new enterprises of the Convention, whether money is involved at the time of the acquiring of such property or not, and must be presented to two (2) succeeding annual sessions of the Convention."*

LifeWay and LifeWay employees' facilitation of Glorieta 2.0 "options" do not meet the ethical challenge. No report has been forthcoming about the Glorieta 2.0 intended actions as a claimed "business plan," which remains secretive as does the proposed activities, and all unauthorized by SBC Convention, LifeWay "agreement or contract" with Glorieta 2.0 is legally a genuine issue of material misrepresentation at best and voidable.

*"XVII. Business Procedure: Entity boards of trustees should oversee the operations of the entity in such a manner as will assure effective and ethical management. Disclosures of the entity's relationship with other entities, its activities, liabilities, commitments, and results of operations*

*should be accurate and complete and include all material information. The entity should not make any loan from funds of the entity to a trustee. The entity should not make any loan from funds of the entity to an officer or employee without having first obtained the approval of its board (or its delegated subcommittee) after disclosure of all relevant details. Employees and trustees should not appropriate for personal advantage any corporate property or business opportunities which should be enjoyed by the entity. As a normal operating policy, each entity of the Southern Baptist Convention shall refrain from entering any business transaction with a trustee or employee, or a business enterprise in which a trustee or employee has an interest. An exception to this policy may be made, at the discretion of the board of trustees, in any case wherein it appears that a commodity or service is unavailable on a more favorable basis from any other source, or a commodity or service, at the discretion of the board, is found to be in the best interest of the entity. Competitive bids should be taken if possible. In any case being considered for exception, the extent of the trustee's or employee's interest shall be disclosed to the entire board."*

Nothing in this letter is intended to affect legal remedies, criminal or civil, which any Glorieta Conference Center homeowner might pursue for past or future violations of SBC Charter / Bylaws under the specific case law such as the following:

*"A corporation, whether non-profit or for profit, comes into existence by a charter from the state, and the "Charter" of a corporation is a contract consisting of its articles of incorporation taken in connection with the law under which it was organized, largely on the 'model Business Corporation Act' and the Courts presumes that the state intended to some degree to place the "States Corporate Law" to be in step with the law of other states". Thus applicable state laws are embodied in the charter of a corporation. (Harbison v. Strickland, 900 So. 2d 385, 2004); (Board of Directors Washington City Orphan Asylum v. Board of Trustees, Washington City Orphan Asylum, 798 A.2d 1068, 2002); (Pueblo Bancorporation v. Lindoe Inc. 63 P.3d 353, 2003)*

*"A corporate charter is a contract which confers rights and imposes burdens in accordance with its provisions having an obligation to perform the duties to the public which it has undertaken under the charter, and it cannot without the consent of the state change its terms nor absolve itself from the obligations and demands of its charter". (Northern Pac. Ry. Co. v. State of N.Dakota ex rel McCue,236 U.S. 585, 35 S.Ct. 429, 59 L. Ed. 735)*

*"A Nonprofit corporation has the power to engage in a competitive, profit-making business" (StructureProbe, Inc. v. Franklin Institute, 450 F. Supp. 1272; 595 F2d. 1214;) "Except to the extent that such activity supports it other lawful activities"... "several state and federal statutes only prohibit the corporation from using the profit from such activities for purposes other than to support its other lawful activities of its charter" 267 A.D.2d 1025.*

*"Under statute... every corporation neglecting, failing, or refusing to keep and maintain books of account, is subject to penalty..." (Flowers v. Rotary Printing Co. 31 N. E. 2d 251.)*

*"A corporation speaks and acts through its records and minutes hence public policy requires that the record of its acts must be kept faithfully in order to protect the rights of stockholders and those doing business with it" (His Way Inc. v. McMillin, 909 So.2d 735)*

*"Officers and Directors have a fiduciary duty not to make expenditures or appropriations or divestitures of corporation assets which are so unreasonable as to waste the corporate assets that are a diversion of corporate assets benefiting corporate assets of others through transfer of control and ownership by any means." (Garner v. Pearson, 374 F. Supp. 580)*

*"Corporate Directors have the right to inspect the records and minutes of all corporate business, this right is irrespective of motive but subject to fiduciary obligations to protect and preserve the corporation and its charter's bylaws." State ex rel. Oliver v. Society for the Preservation of Book of Common Prayer,693 S.W. 2d 340 (Tenn. 1985)*

*"The Authority to purchase or sale corporate property does not imply an authority to purchase or sale purchase or sale property not necessary to effect the purposes of the corporation." (St. Louis Beverage Co. v. Planters' Grain Elevator Mule & Feed Co., 200 S.W. 780)*

LifeWay in all the above considerations may be liable for their actions under "Ultra vires. *An act performed without any authority to act on subject. Haslund v. City of Seattle, 86 Wash.2d 607, 547 P.2d 1221, 1230. Acts beyond the scope of the powers of a corporation, as defined by its charter or laws of state of incorporation. State ex rel. v. Holston Trust Co., 168 Tenn. 546, 79 S.W.2d 1012, 1016. The term has a broad application and includes not only acts prohibited by the charter, but acts which are in excess of powers granted and not prohibited, and generally applied either when a corporation has no power whatever to do an act, or when the corporation has the power but exercises it irregularly. People ex rel. Barrett v. Bank of Peoria, 295 Ill.App. 543, 15 N.E.2d 333, 335. Act is ultra vires when corporation is without authority to perform it under any circumstances or for any purpose. By doctrine of ultra vires a contract made by a corporation beyond the scope of its corporate powers is unlawful. Community Federal Sav. & Loan Ass'n of Independence, Mo. v. Fields, C.C.A. Mo., 128 F.2d 705, 708. Ultra vires act of municipality is one which is beyond powers conferred upon it by law. Charles v. Town of Jeanerette, Inc., La.App., 234 So.2d 794, 798." Black's Law Dictionary 6th Edition page 1522, [emphasis added],*

This letter is a final attempt to avoid a lawful full class action due to mismanagement and deceit and fiduciary responsibility of circuitous attempts to cover-up the failures of "Lifeway" to abide lawful SBC Bylaws, specifically SBC's Charter bindings under the law.

YOU ARE HEREBY WARNED TO CEASE AND DESIST FROM CONDUCTING THE BUSINESS OF DISPOSING OR TRANSFERRING CONTROL OF GLORIETA CONFERENCE CENTER. FAILURE TO DO SO WILL RESULT IN APPROPRIATE LAWFUL ACTION BEING TAKEN.

Please confirm, in writing, before August 31, 2013, that all parties have discontinued this misconduct described herein this letter. In the event such misconduct continues, or is repeated

from or after said date, further instruction is to commence appropriate lawful action against all parties involved having any possible tacit knowledge

Yours very truly,

*Kirk Tompkins*

Kirk Tompkins

cc: LifeWay Trustees by mail
    Glorieta Homeowner/Leaseholders by email
 Attachments:
SBC 1949 convention page 45
SBC 1950 convention pages 41-42

13. Since the Committee reporting to this Convention on theological education did not regard Bible Schools which seek to serve God-called men who are not college-trained, and who because of age and limited previous schooling cannot enter college, as coming within the purview of the Committee, as evidenced by conclusion, it is understood that the new Committee, whose appointment is called for in Recommendation 8 of the report, be instructed to give careful study to the work of such Bible schools with a view to the obtaining or establishing of an institution to serve the host of God-called preachers who cannot obtain the training they desire in the colleges or seminaries.

Respectfully submitted,

JOHN H. BUCHANAN, Chairman
J. W. STORER
R. PAUL CAUDILL
WADE BRYANT
DOUGLAS HUDGINS
WALLACE BASSETT
EDGAR GODBOLD
R. C. CAMPBELL
R. VAUGHN ROCK
GILBERT GUFFIN

61. Perry Webb, Texas, presented the report of the Committee on Western Assembly as follows:

### Recommendations

We recommend the establishment of a Southern Baptist Assembly at the site offered by the Chamber of Commerce of Harrison, Arkansas.

After discussion by Wayne DeHoney, Kentucky; Otto Hake, New Mexico, in favor of a substitute motion offered by Phillip C. McGahey, New Mexico to insert the name of Glorieta, New Mexico, for Harrison, Arkansas, and opposed by Pat W. Murphy, Oklahoma, the substitute motion was adopted.

62. Duke K. McCall, Tennessee, moved that the motion as amended be referred to the Sunday School Board for study as to what is involved in the development of the site at Glorieta, New Mexico, and no other site, and that the Sunday School Board be instructed to report to this Convention next year. Motion was approved.

63. Porter M. Bailes, Texas, nominated Robert G. Lee for president, with Vice-president W. Maxey Jarman, Tennessee, presiding, and on motion of J. Seborn Winn, Georgia, President Lee was re-elected by acclamation by a standing vote. Motion was approved.

64. E. D. Solomon, Florida, nominated Homer G. Lindsay, Florida, for first vice-president. Bruce H. Price, Virginia, nominated E. Hermond Westmoreland, Texas; J. W. Buckner, Arkansas, nominated J. D. Grey, Louisiana; and I. L. Yearby, Oklahoma, nominated Robert S. Kerr, Oklahoma.

65. On motion of Wallace Bassett, it was voted to name those receiving the highest and the second highest vote on the ballot as first and second vice-president, respectively.

66. On motion of Hight C Moore, North Carolina, Porter W. Routh and Joe W. Burton were elected as secretaries.

67. Wallace Bassett, Texas, moved, and it was adopted by a two-thirds vote, that Article XIV of the Constitution be amended to read as follows:

| Baptist Brotherhood | 40,050 (0.890%) |
| Radio Commission | 124,650 (2.77%) |

| Total | $4,500,000 (100%) |

*This appropriation made in keeping with the action of the Convention, page 51, Item 3, of the 1949 S.B.C. Annual.

(3) That $2,500,000 be distributed to apply on the capital needs goals of the various agencies and that the percentage representing the portion of this $2,500,000 to be allocated to each agency be adopted at the 1951 session of the Southern Baptist Convention.

(4) That all additional Cooperative Program funds above the $7,000,000 and the Convention Operating Budget be given to the Foreign Mission Board for the year 1951.

(5) That the Foreign Mission Board and the Home Mission Board be allowed to use such portion of their receipts for capital funds as may be necessary to safeguard their missionary program. It is understood, however, that the funds so used will be charged against the long-range capital improvement goals.

37. On motion of I. E. Lee, Illinois, Recommendation No. 8 was adopted as follows:

### Recommendation No. 8

We recommend that the Convention Expense Budget take care of the auditorium rental expense for the 1951 W.M.U. Convention.

38. On motion of Isam Hodges, California, Recommendation No. 9 was adopted as follows:

### Recommendation No. 9

We recommend that all special Convention committees transfer, upon their discharge, all official files to the Executive Committee of the Southern Baptist Convention.

39. On motion of Frank A. Hooper, Georgia, Recommendation No. 10 was adopted as follows:

### Recommendation No. 10

Whereas the Southern Baptist Convention, beginning in 1946, made a study looking to the establishment of an assembly in the West, which study culminated in the acceptance by the 1949 Convention of the offer of the New Mexico Baptist Convention of a site for an assembly at Glorieta, New Mexico, and

Whereas, pursuant thereto the Executive Committee on May 9, 1950, passed the following resolution:

Executive Secretary McCall reported that he had received a Warranty Deed from the Baptist Convention of New Mexico dated January 10, 1950, conveying to the Executive Committee of the Southern Baptist Convention certain property in Santa Fe County, New Mexico, known as the Glorieta site, for a Western Assembly. The deed was duly recorded on March 30, 1950, in the land records of Santa Fe County of the State of New Mexico in Book 46, page 71. Your committee recommends that this deed be accepted.

and,

Whereas the 1949 Southern Baptist Convention requested the Sunday School Board to study what would be involved in the development of the site at Glorieta, New Mexico, and report to this Convention, and

Whereas, pursuant thereto the Sunday School Board makes the following report:

"In compliance with the Convention's instruction, T. L. Holcomb, H. E. Ingraham, and W. A. Harrell visited Glorieta in September, 1949, for the purpose of reviewing the property and determining whether or not it could be developed satisfactorily for the proposed assembly. Such questions as the amount of property, whether or not accessible by highways, railroads, and airways; whether protected so far as other property was concerned; the water supply, the electrical supply, and possibility of road construction; accessible

building materials and methods of construction; heating facilities necessary, gas supply, sanitation, and other matters were carefully discussed. It was our judgment that the property could be developed as an assembly site. To assure protection, the Sunday School Board has acquired an additional 400 acres, making a total of approximately 1,300 acres.

"In connection with their attendance upon the meeting of the New Mexico Convention at Santa Fe, Drs. J. O. Williams and Duke K. McCall visited the Glorieta Assembly grounds. They were in complete accord with the findings previously submitted.

"In order to prove to the brethren in the West that we really mean to develop a great assembly in that section, the Sunday School Board agreed to match dollar for dollar up to $100,000 any contributions secured by the brethren of that area. Approximately $70,000 of this amount has been required to pay for the additional acreage deemed necessary to make the entire property safe and adequate for future development.

"In January, W. A. Harrell and Hardie C. Bass of our Architectural Department spent two days at Glorieta for the purpose of studying the property again since several pieces needed along the highway had been acquired. During this visit contact was made with a firm of responsible engineers, and representatives from their organization studied the property for the purpose of determining the location of roads, laying out the water and sewerage systems, and possible locations of buildings.

"As the Sunday School Board faced the responsibility of enlarging Ridgecrest and the possibility of the additional ministry of building Glorieta, we realized that it was a huge undertaking. In order to keep from making request of the Convention and thereby disturbing all of the percentages, the Board in its December meeting elected Dr. John L. Hill as Director of Promotion for Ridgecrest and Glorieta assemblies. He assumed this new work January 1, with the understanding that our Board will provide his salary and office and travel expense. We earnestly request the full co-operation of the Executive Committee and of every agency of the Convention in making it possible for Dr. Hill to reach the people who should make special contributions to the two assemblies. His work of course will be in harmony with the Business and Financial Plan of the Convention.

"In order that we might save time after the action of the Southern Baptist Convention regarding Glorieta, we arranged a conference in Santa Fe and also on the property April 27, attended by Messrs. Harrell, Bass, Ingraham, Hill and Holcomb. Representatives from two firms of engineers and architects from Santa Fe and Clovis were invited. Dr. Stagg and a group of New Mexico workers met with us for a full discussion of the development of Glorieta up to the present.

"The fellowship was fine and we feel that real progress has been made in reaching conclusions regarding the location of the main buildings, such as an auditorium, an administration building, and dining room. Practically all other developments would be related to one of these.

"If the building of Glorieta is assigned to the Sunday School Board, we pledge our very best efforts, asking of course for the prayers and help of the entire brotherhood."

We therefore recommend:

(1) That the Convention authorize the Sunday School Board to develop the Glorieta Baptist Assembly as funds will permit and to operate it as a Southern Baptist assembly representing all phases of Southern Baptist work, and that the Convention request all its agencies to co-operate with the Sunday School Board to this end.

(2) That the Convention authorize and instruct the Executive Committee of the Southern Baptist Convention to transfer to the Sunday School Board of the Southern Baptist Convention, upon approval by the latter of the title, by proper deed of conveyance the said property being the same property conveyed by the Baptist Convention of New Mexico to the Executive Committee of the Southern Baptist Convention by deed dated January 10, 1950, and recorded on March 30, 1950, in Book 46, page 71, of the Records of Deeds in the office of the County Court Clerk, Santa Fe County, New Mexico.

40. On motion of Adiel Moncrief, Jr., Missouri, Recommendation No. 11 was adopted as follows: