

WARRANTY DEED

THE BAPTIST CONVENTION OF NEW MEXICO, a corporation, for consideration paid, grants to THE EXECUTIVE COMMITTEE OF THE SOUTHERN BAPTIST CONVENTION, a corporation, the following described real estate in Santa Fe County, New Mexico:

The west half of Section 22 in Township 16 North, Range 11 East, N.M.P.M., the northwest quarter of Section 27 in Township 16 N., Range 11 E., N.M.P.M., and all that part of the north half of the southwest quarter and the southwest quarter of the southwest quarter and the north half of the southeast quarter of the southwest quarter of Section 27 in Township 16 N., Range 11 E., N.M.P.M., which lies to the north of the northerly right-of-way line of the Santa Fe-Las Vegas Highway commonly known as U. S. Highway No. 85, as said highway existed on June 22, 1939; said northerly right-of-way line of said highway being more particularly described as follows, to-wit:

Commencing at a point marked by an iron stake set on the line between Section 27 and 28 of Township 16 N., Range 11 E., N.M.P.M., from which said point an iron post with brass cap marked, witnessed and set by the United States General Land Office for the quarter corner of Sections 27 and 28 of Township 16 N., Range 11 E., N.M.P.M., bears N. 0° 12' E. 903.9 feet distant; and from said point of beginning running thence S. 76° 49' E. 187.0 feet along the north boundary of said right of way to an iron stake set at the point of a curve; thence along a curve to the right whose external is 16.0 feet and whose chord is S. 65° 26' E. 656.5 feet to an iron stake set at the point of tangent, thence S. 49° 04' E. 136.0 feet to an iron stake set at the point of curve; thence along a curve to the right whose external is 6.0 feet and whose chord bears S. 42° 15' E. 361.0 feet to an iron stake set at the point of tangent; thence S. 39° 19' E. 862.5 feet to an iron stake; thence S. 48° 01' E. 311.1 feet to an iron stake set on the line between the north half of the southeast quarter of the southwest quarter and the south half of the southeast quarter of the southwest quarter of Section 27, Township 16 North, Range 11 East, N.M.P.M., also the southeast quarter of Section 21 in Township 16 North, Range 11 East, N.M.P.M.

With Warranty Covenants,

IN WITNESS WHEREOF, the grantor herein has caused its corporate name to be hereunto subscribed and its corporate seal to be hereto attached this ___ day of January, 1950.

THE BAPTIST CONVENTION OF NEW MEXICO,
a corporation,

By _____
President of the Board

Attest:

_____
Executive Secretary

EXHIBIT 1

STATE OF NEW MEXICO  )
                     ) ss.
COUNTY OF Bernalillo )

On this 10th day of January, 1950, before me personally

appeared E.D. Mitchell to me personally known,

who being by me duly sworn, did say that he is President of the Board

of The Baptist Convention of New Mexico, a corporation organized under

the laws of the State of New Mexico, and the seal affixed to said instru-

ment is the corporate seal of said corporation, and that said instrument

was signed and sealed in behalf of said corporation by authority of its

board of directors, and said E.D. Mitchell acknowledged

said instrument to be the free act and deed of said corporation.

Witness my hand and seal this the day and year last above written.

_____
Notary Public

My commission expires:

6/24/53

STATE OF NEW MEXICO )
COUNTY OF SANTA FE   )   27450

MARGARET LEONARD, Recorder

Mail, To Charles Spann, Box 666, Santa Fe, N.M.

EXHIBIT 1
p. 2

WARRANTY DEED                                    332330

THE SUNDAY SCHOOL BOARD OF THE SOUTHERN BAPTIST CONVENTION, a Tennessee
corporation, Grantor, for consideration paid, grants to GLORIETA BAPTIST CHURCH of
Glorieta, New Mexico, Grantee, the following described real estate in Santa Fe
County, New Mexico:

A certain tract of land lying, being and situate in Section 28,
Township 16 North, Range 11 East, N.M.P.M., County of Santa Fe,
State of New Mexico, being more particularly described as follows:

Beginning at the Southeast corner of the herein described tract
and parcel of land, from which point the East quarter corner of
Section 28, Township 16 North, Range 11 East, New Mexico principle
meridian, bears South 71° 38' 45" East, 1455.04 feet, thence from
said point and place of beginning, North 85° 42' 22" West, 140.34
feet to the Southwest corner of the herein described tract and
parcel of land, thence North 0° 37' 57" East, 278.14 feet to the
Northwest corner of the herein described tract and parcel of land,
thence South 86° 20' 21" East, 144.59 feet to the Northeast cor-
ner of the herein described tract and parcel of land, thence
South 1° 27' 18" West, 274.41 feet to the point and place of be-
ginning.

Said tract and parcel of land containing 0.902 acres more or less.

All as shown upon plat of survey prepared by Bernie A. Alarid,
Registered Land Surveyor No. 5338, in November 1975, and en-
titled "Plat of Survey for Glorieta Baptist Conference Center
within the Northeast quarter of Section 28, Township 16 North,
Range 11 East, N.M.P.M. Santa Fe County New Mexico".

TO HAVE AND TO HOLD THE SAME, together with all the tenaments, heredita-
ments, and appurtenances thereunto belonging, or in any wise appertaining, to the
said Grantee, and its assigns, for use as a cemetery, forever. The Grantor, for
itself, its successors, or assigns, does hereby guarantee to the Grantee, and its
assigns a right-of-access to the above described and conveyed land and premises,
but the Grantor shall not be responsible for maintaining any access road. The
Grantor, for itself, its successors, or assigns, does hereby covenant with Grantee,
and its assigns, that it is well seized in fee of the above described and conveyed
land and premises and that it has good right to sell and convay said land in the
manner and form set forth; that the same is free of all encumbrances; and that the
above bargained and granted land and premises in the quiet and peaceable posses-
sion of the Grantee, and its assigns, against all persons lawfully claiming, or to
claim the whole or any part thereof, the Grantor will warrant and defend.

IN WITNESS WHEREOF, the Grantor has caused its corporate name and offi-
cial seal to be set hereunto on the   10th        day of      March        , 1976.

                                    THE SUNDAY SCHOOL BOARD OF
                                    THE SOUTHERN BAPTIST CONVENTION

                                    By  Grady C. Cothen
ATTEST:   M. J. Al____                      PRESIDENT
          SECRETARY

EXHIBIT 2

## GIFT DEED

The Sunday School Board of the Southern Baptist Convention, a Tennessee nonprofit corporation with principal offices in Nashville, Tennessee, hereby and without consideration, except for the right of reversion herein, quitclaims to the Glorieta Pass Fire District, a private organization, whose address is Post Office Box 206, Glorieta, New Mexico the following real estate in Santa Fe County, New Mexico:

> A certain tract of land lying and being situated within Section 28, Township 16 North, Range 11 East, New Mexico principal meridian, Santa Fe County, State of New Mexico, and more particularly described by metes and bounds as follows:
>
>> BEGINNING at the Southeast corner of the tract whence the U.S.G.L.O. Brass Cap of the East ¼ corner of Section 28, bears N.60°47'04"E., 1,109.19 feet, thence from said point of beginning,
>> S.89°50'46"W., 347.19 feet to a point; thence,
>> N.35°09'17"E., 181.71 feet to a point; thence,
>> S.58°40'20"E., 283.96 feet to the point and place of beginning; and containing 0.591 acres, more or less;
>
> All as shown on that certain plat of survey titled "Plat of Survey for Glorieta Volunteer Fire Department," dated September 5, 1984, by Dean Williamson N.M.P.L.S. No. 6671.

This conveyance is being made for the express purpose of providing real estate upon which the Glorieta Pass Fire District will forthwith construct and maintain a fire station and conduct related activities, including classroom training; subject, however, to a right of forfeiture and reversion to The Sunday School Board of the Southern Baptist Convention or its assigns, in the event the real estate or any improvement thereon ever ceases to be used by the Glorieta Pass Fire District or its successors for those express purposes or if fires are actually set or explosives are used on the real estate or improvements thereon for training or any other purpose.

SFC CLERK RECORDED 02/09/2005

EXHIBIT 3
P. 1

WITNESS our hands and seals this 5th day of November 1984.

_Lloyd J. Elder_
LLOYD ELDER
President
The Sunday School Board of the
Southern Baptist Convention

Attested:

_Joyce M. Byrd_
Joyce M. Byrd
Secretary

### Acknowledgment for Corporation

STATE OF TENNESSEE )
) ss.
COUNTY OF DAVIDSON )

The foregoing instrument was acknowledged before me this 5th day of _November_ 1984, by Lloyd Elder, President of The Sunday School Board of the Southern Baptist Convention, a Tennessee corporation, on behalf of said corporation.

_Phyllis E. Kelley_
Notary Public

My commission expires:

_July 18, 1987_



COUNTY OF SANTA FE )           GIFT DEED
STATE OF NEW MEXICO ) ss        PAGES: 2
I Hereby Certify That This Instrument Was Filed for
Record On The 9TH Day Of February, A.D., 2005 at 10:59
And Was Duly Recorded as Instrument # 1366299
Of The Records Of Santa Fe County
          Witness My Hand And Seal Of Office
                         Valerie Espinoza
Deputy _____      County Clerk, Santa Fe, NM

GIFT DEED - 2

SFC CLERK RECORDED 02/09/2005

EXHIBIT 3
P. 2



**Kirk Tompkins, Managing Partner**
**4512 Carter Lane**
**Little Rock, Arkansas 72223 USA**
**501.680.4408 Mobile**
**501.235.8043 Office**
**SKYPE: kirktompkins**
**Kirk.Tompkins@comcast.net**

July 31, 2013

Dr. Thom S. Rainer, President
LifeWay
One LifeWay Plaza
Nashville, Tennessee 37324

RE: Glorieta Proposed Sale to Glorieta 2.0

Dear Dr. Rainer:

Media coverage about LifeWay's pending disposal of Glorieta Conference Center to Glorieta 2.0 is publishing commentary from individuals expressing their point of view about issues largely focusing on the homes owned by leaseholders.

There is confusion by the similarity between the name Glorieta Conference Center and Glorieta 2.0. Some believe Glorieta 2.0 is the rebirth of Glorieta Conference Center. Of course, that is not true. Glorieta 2.0 is a non-Baptist, non-related group of businessmen operating for profit children's camps. The Glorieta Conference Center, under Glorieta 2.0's business plan barely and faintly resembles the historic mission that donated Glorieta Conference Center to Southern Baptist. None of the adult mission programs will continue, nor will the Glorieta 2.0 face welcome Baptist conferences.

The struggle sitting so heavily upon each of the Glorieta homeowners is their faith and belief in a statement by LifeWay.

Jerry Rhyne, LifeWay vice president and chief financial officer said, "One of the most important requirements for any sale of Glorieta was that new owners provide options that are fair, reasonable and prudent for individuals and churches that lease land at Glorieta for residential homes and small group facilities."

The fact remains that Glorieta 2.0 "options" offered Glorieta homeowners fail to meet the "requirement" set out by LifeWay. There is little doubt that if LifeWay executives and LifeWay Trustees individually owned the 60 homes involved, not one would accept any of the Glorieta 2.0 offers.

1

*EXHIBIT 4*
*P. 1*

The Glorieta 2.0 homeowner options expanded from the original "options" currently include:

> (1) $40,000 home purchase, now enhanced by additional funding provided by LifeWay to Glorieta 2.0, adding a $30.00 sq. ft. clause with a cap of $100,000 if the homeowner's home qualifies

> (2) Donating the home and taking an IRS tax credit for 30% of the appraised value

> (3) A 12-year lease with severe restrictions and homeowner requirements subject to unknown future regulations imposed by Glorieta 2.0, agreeing to donate the home to Glorieta 2.0 at the end of the 12-year lease

All three Glorieta 2.0 options result in evicting homeowners from their homes at pennies on the dollar. The 12-year lease terminates with homeowners donating their home to Glorieta 2.0 after paying $1800 annual escalating lease fees, insurance, taxes, and maintenance (which in some homeowner situations include an immediate need for new roofs that will cost $12,000 to $14,000.

Many Glorieta homes typically market at over $200,000, and in the area outside the Glorieta gate, MLS real-estate listings for like kind market at $300,000 to $400,000, and more. In the more depressed areas near Glorieta, homes sell for a minimum of $109.00 sq. ft.

The upside is that a Glorieta homeowner might find a like kind home in the $40,000 range by relocating to a city like Detroit.

It is my hope, and my recommendation as a business consultant, LifeWay terminate the current proposed Glorieta Conference Center offer to Glorieta 2.0. That LifeWay renew current leases until a time in the future that Glorieta 2.0, or other entity has the proper financing to acquire the 2400 acres with a good faith offer. It may be helpful to the next round of Glorieta contenders to include representation from Glorieta homeowners.

I suggest LifeWay Executives, LifeWay Executive Committee, and LifeWay Trustees review their decisions considering the unintended consequences to all concerned as is now evident.

Respectfully,

Kirk Tompkins & Family
304 Aspen Leaseholders


cc: Jerry Rhyne
     LifeWay Trustees via U.S. Mail
     Glorieta Homeowners

2

EXHIBIT 4
P. 2

*Dr. John W. and Becky Yarbrough*
*2905 Cambridgeshire DR*
*Carrollton, TX 75007*

Dr. Thom S. Rainer, President
LifeWay
1 LifeWay Plaza
Nashville, TN 37234

Dear Dr. Rainer:

My wife and I have been homeowners at the Southern Baptist and LifeWay's Glorieta Conference Center for 10 years. We are both in our late 60's. At age 40, I responded to God's call to full-time Christian Ministry and left my job with a large company. I now have an MDiv (1986) from Southwestern Baptist Theological Seminary in Ft. Worth, TX. and I have a DMin (1997) from Golden Gate Baptist Theological Seminary in San Francisco, CA. We served for 5 years as SBC Home Missionaries and retired after 26 years of ministry service on the staff of First Baptist Church of Carrollton, TX in 2011. Since I am a retired Southern Baptist Minister and have been active in many ways in the Southern Baptist life, we have a major problem and we would appreciate your help.

More than ten years ago, LifeWay asked us and other Southern Baptist to <u>invest</u> in the "new" Glorieta. We were told of a new vision for Glorieta and several houses were offered for sale by LifeWay. After many months of prayer, we purchased one of the homes that LifeWay advertised as a three-unit home with LifeWay's appraised value of $150,000. The home needed major repair, including a new roof, windows, flooring, ceiling, wall repairs and painting, etc. We refinanced our home in Texas in order to purchase our Glorieta home. We were excited and proud to be a part of the Southern Baptist LifeWay Glorieta Community and signed LifeWay's lease agreement. I was personally told on different occasions by LifeWay Glorieta leadership that Glorieta's financial condition was good and leases have always been renewed. If Glorieta was ever sold I would receive a fair market value for my retirement investment in my home.

Over the last 10 years we have completed these repairs and remodeling using all of our vacation time each year. This was our retirement home and place that we believed God wanted us to share with family, other ministers, missionaries and their spouses. We also planned to develop a ministry for others in Christian service that were burned out and needed a place to relax and renew so they could return to Christian Service. Did we trust the wrong people? Will LifeWay live up to their published Core Values?

*Character - LifeWay Core Value 4*
*Character is the expression of the person of Christ in our life. We will live consistent, Christian lifestyles, conducting our ministry and business with the highest standards of honesty, integrity and Christian ethics. "I have been crucified with Christ, and it is no longer I who live, but Christ lives in me . . ." Galatians 2:20*

EXHIBIT 5
P.1

We didn't learn until 2011, when LifeWay announced the process to sale Glorieta that we were no longer welcomed and our investment in the "new" Glorieta was no longer valued nor honored.   Our hearts were troubled because we believed in our Southern Baptist Roots and we were partnering with other Christian Believers, LifeWay, and our Southern Baptist Convention. The Southern Baptist Convention has always been dedicated to Biblical integrity, honesty and Christ-Like Values as stated in the Charter and By-Laws of SBC.

Upon reviewing our current lease we noticed that it does not expire until September 30, 2014. We have read the agreement as it pertains to sale of the premises and ask LifeWay to purchase our improvements at $250,000.  As stated in our lease agreement, Item 14 – "Glorieta, at its option, shall have the right to purchase the improvements on the Premises." This would be an honorable action to restore our retirement investment at a fair value.  Glorieta 2.0 offer will rob us of $170,000 of our retirement funds. Are the retirement funds of a retired Southern Baptist Minister and Missionary to be used to finance the sale of Glorieta to a non-Southern Baptist ministry or possible a for-profit business?

Jerry Rhyne, LifeWay vice president and chief financial officer said, "One of the most important requirements for any sale of Glorieta was that new owners provide options that are fair, reasonable and prudent for individuals and churches that lease land at Glorieta for residential homes and small group facilities."

As an active Southern Baptist Minister and retired Southern Baptist Missionaries and believers in the Lord Jesus Christ, we are requesting that the leadership of LifeWay and the Southern Baptist Convention respond to our request.  If the Southern Baptist Convention and LifeWay do not respond appropriately, then LifeWay Glorieta will have created the Southern Baptist Convention's own retirement scandal by misleading us and other investors of Glorieta, much like the company 'Enron' did with their investors.  Our Southern Baptist heritage demands much better!

> Customers—LifeWay Core Value 3   Our customers are our reason for existence. Knowing our customers, not just knowing about them, and meeting their expressed, an unexpressed and unknown need is essential to achieving our vision.
> "So in everything, do unto others what you would have them do unto you . . ."      Matthew 7:12

We were so disturbed by the statement Jerry Rhyne, CFO of LifeWay made at a meeting with approximately 60 others in 2011 when it was ask of Mr. Rhyne, "Do any LifeWay Employees have a home or a lease agreement in Glorieta"?  His reply was: "I would never have signed this lease"!  It was and still is so appalling to be so discounted and basically told that we were taken in or "suckered" by signing  this (apparently unconscionable) lease. So again, we sincerely ask that our request be addressed, especially since we purchased our home directly from LifeWay.

> Stewardship—LifeWay Core Value 6   We will be faithful stewards of all God has entrusted to us.
> "From everyone who has been given much, much will be demanded, and from the one who has been entrusted with much, much more will be asked",  Luke 12:48b

EXHIBIT 5
P. 2

Our family, fellow leaseholders, the community surrounding Santa Fe, Southern Baptist Worldwide and other people around the world are waiting and watching LifeWay's actions to see how a Christian organization conducts their business and practices their own Core Value Statements.

As this is a very time sensitive matter, I would request a response from you before Tuesday, August 20.  Please do not disregard this letter from one of your own Southern Baptist Ministers.  We write this letter from our hearts because we know that God requires of us to be wise stewards of all He has given us and to speak up and be heard.  We ask that you put yourselves in our shoes for a moment and consider what you would do if you were in our place?

*"So in everything, do unto others what you would have them do unto you . . ."*     Matthew 7:12

Remember that neither us, nor any of the homeowners had anything to do with the demise of Glorieta.

Sincerely,

John and Becky Yarbrough
342 Aspen

cc:  SBC LifeWay Trustees
     Baptist General Convention of Texas
     Baptist General Convention of New Mexico
     Dr. Brent Taylor, Senior Pastor First Baptist Church; Carrollton, Texas

EXHIBIT 5
P. 3

**Kirk Tompkins**
**4512 Carter Lane**
**Little Rock, AR 72223**
**501.680.4408**
**Kirk.Tompkins@comcast.net**

August 17, 2013

Fred Luter, SBC President
Franklin Avenue Baptist Church
2515 Franklin Avenue
New Orleans, Louisiana 70117

Frank S. Page
Taylors First Baptist Church
200 West Main Street
Taylors, SC 29687

The Executive Committee of the Southern Baptist Convention
901 Commerce Street, Seventh Floor
Nashville, TN 37203-3699

SBC EXECUTIVE COMMITTEE

Ernest L. Easley, SBC Chairman
Senior Pastor
Roswell Street Baptist
774 Roswell Street
Marietta, GA  30060

Michael W. (Mike) Routt, SBC Vice Chairman
Senior Pastor
Circle Drive Baptist
801 N Circle Drive
Colorado Springs, CO 80909-5036

John L. Yeats, SBC Admin. Comm. Chair
Executive Director
Missouri Baptist Convention
400 E. High Street
Jefferson City, MO 65101

EXHIBIT 6

Chris S. Osborne, SBC Bus. & Fin. Comm. Chair
Senior Pastor
Central Baptist Church
1991 FM 158
College Station, TX 77845

Rodney F. Autrey, SBC CP Comm. Chair
Senior Pastor
Emmanuel Baptist Church
8006 Centreville Road
Manassas, VA 20111

Jerry L. Rhyne, Principal
LifeWay Christian Resources of the Southern Baptist Convention
One LifeWay Plaza
Nashville, TN 37234

Thom S. Rainer, Principal
LifeWay Christian Resources of the Southern Baptist Convention
One Lifeway Plaza
Nashville, TN 37234

Anthony Scott
Glorieta 2.0
% Glorieta Conference Center
P.O. Box 8
Glorieta, NM 87535

**Re: *Enjoinment* to Cease and Desist**

Dear Sir/Madam:

Every avenue challenging LifeWay actions now exhausted regarding Glorieta Conference Center for fair and equitable treatment of all parties, having begun in 2011, forces this letter. LifeWay's lack of response and unwillingness to consider the several letters and requests from multiple parties leaves no other choice but to demand through this *Enjoinment* letter to cease and desist all actions involving any disposal of Glorieta Conference Center.

In a LifeWay organized meeting, Lifeway presented their company as "agency duty" speaking about how they represented Glorieta Conference Center homeowners' interests. In assuming

representation for homeowners, LifeWay assumed the fiduciary duty to protect homeowners' interests, which LifeWay has failed miserably.

This letter is to demand Southern Baptist Convention (SBC), LifeWay, Glorieta 2.0, and their independent and separate Trustees, board members and staff to immediately stop any and all action involving any actionable agreement with Glorieta 2.0 as "inking" such a voidable contract will certainly lead to legal claims and individual trustee's personal liability.

This is a demand to stop further intimidation, coercion or harassment of leaseholders to force them to sign any Glorieta 2.0 "option" offers. The LifeWay intimidation telling Leaseholders that if they do not sign a Glorieta 2.0 offer, LifeWay will have to place Glorieta Conference Center on the public sale block is a blatant act to defraud Leaseholders of their property. LifeWay charter requires two separate but formal SBC convention unifications for any such action approval.

Under the authority of the SBC 2007 Convention, LifeWay authorization is to develop and promote, but LifeWay is not authorized to dispose of a conference facility as stated in article 5 of specifically assigned LifeWay tasking by the 2007 SBC Convention.

*5. Assist churches through the operation of conference centers and camps.*
*Develop, promote, and operate conference and resident camp facilities useful to Southern*
*Baptist Convention entities, state conventions, associations, and churches in establishing,*
*enlarging, and improving their ministries.*

LifeWay in this action to liquidate and dispose of Glorieta Conference Center is a willful violation of Southern Baptist Convention Charter and Bylaws, but more significantly, just tacit knowledge might subject trustees, directors, and staff to personal liability.

LifeWay sending email to LifeWay Executive Committee is not a replacement for LifeWay judicial and fiduciary responsibility to the SBC Charter.

Under the authority of the SBC 2007 Convention, The Executive Committee of the Southern Baptist Convention and LifeWay Christian Resources of the Southern Baptist Convention have provided these Executive Committees specific powers enumerated. None of these powers includes any Executive Committee authorization to liquidate or dispose of a conference center, i.e. Glorieta Conference Center.

Southern Baptist Convention, and LifeWay's violation of the SBC Charter/Bylaws is damaging to the reputation of SBC and LifeWay. SBC and LifeWay are therefore, enjoined to cease any further initiative in the unlawful liquidation of SBC's corporate asset, Glorieta Conference Center, until full investigation of charter violations to determine if violations are occurring. Such an investigation should also decide if the public, which include individuals, churches and all of the groups that either buy from LifeWay, or donate to SBC, consider the disposing of Glorieta Conference Center a waste of their money.

SBC and LifeWay should not engage in a sham 'review' of LifeWay's compliance with the SBC Charter / Bylaws, as this review may be subject to discussion at the 2014 SBC convention.

The LifeWay position remains unequivocal, although careful attention to comments and statements of various writings that LifeWay stated represent a dichotomy to LifeWay actions.

The "argument" to consider is "FRAUDULENT MISREPRESENTATION" and "ABUSE OF BY-LAWS" highlighted with "ORIGINAL INTENT."

The SBC Charter (bi-laws) requires LifeWay to present any disposal of the assets like Glorieta Conference Center to the SBC full convention in two successive years for convention approval. In the five hundred pages of each of the 2011 and 2012 convention minutes, there is no Glorieta Majority Report and no Glorieta Minority Report presented, and there are no recorded votes by convention. The 2013 minutes are not yet available on the SBC website. There is a brief and casual passing over Glorieta by LifeWay's president in the 2012 convention minutes:

*"At Glorieta, the trustees of LifeWay Christian Resources approved a recommendation to reduce operations at Glorieta Conference Center. Effective November 1, 2011, the center will offer only summer events for student groups. Centrifuge Camps and Collegiate Week will continue as usual. Trustees also provided direction to begin pursuing viable options for the disposition of the property including, but not limited to, sales to or alliances with SBC entities, state conventions, and other ministries."* Again, there is no record of the required vote by convention messengers.

Glorieta Conference Center became part of Southern Baptist Convention through due process of following SBC charter/Bylaws requirement of two consecutive full SBC convention votes rejecting the majority report recommending Harrison, Arkansas in favor of the minority report accepting Glorieta as SBC's western conference center.

Simply stated, Glorieta Conference Center became part of the Southern Baptist Convention by strict adherence to SBC Charter. The same SBC Charter applies to any disposal of Glorieta Conference Center.

Here noted is that LifeWay changes to SBC leases with Glorieta Leaseholders failed to go before convention and the lease changes did not receive the Charter required by 2-convention vote process.

Further noted is that LifeWay's participation or approval of Glorieta 2.0 fund raising violates SBC Charter.

*VI. Fund Raising Activities:*

*A. Approval of Financial Activities -- No entity of the Southern Baptist Convention shall conduct any type of fund raising activity without the advance approval of the Convention, or its Executive Committee. No advance approval shall be required for the two Convention approved special*

*offerings: Lottie Moon Christmas Offering for International Missions and Annie Armstrong Easter Offering for North American Missions.*

*D. No Financial Appeals to Churches <u>– In no case shall any Convention entity approach a church for inclusion in its church budget or appeal for financial contributions.</u>*

LifeWay staff and Glorieta 2.0 staff are intimidating the Glorieta Conference Center Churches and other home church missions to accept "options" that each end up requiring the improvements be "donated."

LifeWay's "deferred maintenance" at Glorieta Conference Center is contrary to Charter section XII.

*"XII. Contingent Reserves: Each entity of this Convention shall set up as soon as possible a reserve for contingencies to provide for deficits that may occur either through decreased receipts or through emergencies or both. The maximum amount of contingent reserve of any entity shall be determined by the entity, subject to the approval of the Convention. Entities shall state on the balance sheets of the annual audits the amounts in Contingent Reserve Funds."*

Any participation by LifeWay financially aiding Glorieta 2.0 to increase the value of options offered leaseholders above Glorieta 2.0's budgeted amount of $40k raising the amount to a maximum of $100k is yet another violation of the SBC Charter as it represents expenditures. SBC Convention minutes fail to record the two-convention requirement authorization for such expenditure by LifeWay.

*"XV. New Enterprises: No new enterprise involving expenditure of money shall be authorized by the Convention except upon favorable action by the Convention in two (2) succeeding annual meetings; provided, however, that this restriction shall not apply to a recommendation of any entity of the Convention concerning its own work. In the event any new hospital propositions are made, they must be considered as new enterprises of the Convention, whether money is involved at the time of the acquiring of such property or not, and must be presented to two (2) succeeding annual sessions of the Convention."*

LifeWay and LifeWay employees' facilitation of Glorieta 2.0 "options" do not meet the ethical challenge. No report has been forthcoming about the Glorieta 2.0 intended actions as a claimed "business plan," which remains secretive as does the proposed activities, and all unauthorized by SBC Convention, LifeWay "agreement or contract" with Glorieta 2.0 is legally a genuine issue of material misrepresentation at best and voidable.

*"XVII. Business Procedure: Entity boards of trustees should oversee the operations of the entity in such a manner as will assure effective and ethical management. Disclosures of the entity's relationship with other entities, its activities, liabilities, commitments, and results of operations*

*should be accurate and complete and include all material information. The entity should not make any loan from funds of the entity to a trustee. The entity should not make any loan from funds of the entity to an officer or employee without having first obtained the approval of its board (or its delegated subcommittee) after disclosure of all relevant details. Employees and trustees should not appropriate for personal advantage any corporate property or business opportunities which should be enjoyed by the entity. As a normal operating policy, each entity of the Southern Baptist Convention shall refrain from entering any business transaction with a trustee or employee, or a business enterprise in which a trustee or employee has an interest. An exception to this policy may be made, at the discretion of the board of trustees, in any case wherein it appears that a commodity or service is unavailable on a more favorable basis from any other source, or a commodity or service, at the discretion of the board, is found to be in the best interest of the entity. Competitive bids should be taken if possible. In any case being considered for exception, the extent of the trustee's or employee's interest shall be disclosed to the entire board."*

Nothing in this letter is intended to affect legal remedies, criminal or civil, which any Glorieta Conference Center homeowner might pursue for past or future violations of SBC Charter / Bylaws under the specific case law such as the following:

*"A corporation, whether non-profit or for profit, comes into existence by a charter from the state, and the "Charter" of a corporation is a contract consisting of its articles of incorporation taken in connection with the law under which it was organized, largely on the 'model Business Corporation Act' and the Courts presumes that the state intended to some degree to place the "States Corporate Law" to be in step with the law of other states". Thus applicable state laws are embodied in the charter of a corporation. (Harbison v. Strickland, 900 So. 2d 385, 2004); (Board of Directors Washington City Orphan Asylum v. Board of Trustees, Washington City Orphan Asylum, 798 A.2d 1068, 2002); (Pueblo Bancorporation v. Lindoe Inc. 63 P.3d 353, 2003)*

*"A corporate charter is a contract which confers rights and imposes burdens in accordance with its provisions having an obligation to perform the duties to the public which it has undertaken under the charter, and it cannot without the consent of the state change its terms nor absolve itself from the obligations and demands of its charter". (Northern Pac. Ry. Co. v. State of N.Dakota ex rel McCue,236 U.S. 585, 35 S.Ct. 429, 59 L. Ed. 735)*

*"A Nonprofit corporation has the power to engage in a competitive, profit-making business" (StructureProbe, Inc. v. Franklin Institute, 450 F. Supp. 1272; 595 F2d. 1214;) "Except to the extent that such activity supports it other lawful activities"... "several state and federal statutes only prohibit the corporation from using the profit from such activities for purposes other than to support its other lawful activities of its charter" 267 A.D.2d 1025.*

*"Under statute... every corporation neglecting, failing, or refusing to keep and maintain books of account, is subject to penalty..." (Flowers v. Rotary Printing Co. 31 N. E. 2d 251.)*

*"A corporation speaks and acts through its records and minutes hence public policy requires that the record of its acts must be kept faithfully in order to protect the rights of stockholders and those doing business with it" (His Way Inc. v. McMillin, 909 So.2d 735)*

*"Officers and Directors have a fiduciary duty not to make expenditures or appropriations or divestitures of corporation assets which are so unreasonable as to waste the corporate assets that are a diversion of corporate assets benefiting corporate assets of others through transfer of control and ownership by any means." (Garner v. Pearson, 374 F. Supp. 580)*

*"Corporate Directors have the right to inspect the records and minutes of all corporate business, this right is irrespective of motive but subject to fiduciary obligations to protect and preserve the corporation and its charter's bylaws." State ex rel. Oliver v. Society for the Preservation of Book of Common Prayer, 693 S.W. 2d 340 (Tenn. 1985)*

*"The Authority to purchase or sale corporate property does not imply an authority to purchase or sale purchase or sale property not necessary to effect the purposes of the corporation." (St. Louis Beverage Co. v. Planters' Grain Elevator Mule & Feed Co., 200 S.W. 780)*

LifeWay in all the above considerations may be liable for their actions under "Ultra vires. *An act performed without any authority to act on subject. Haslund v. City of Seattle, 86 Wash.2d 607, 547 P.2d 1221, 1230. Acts beyond the scope of the powers of a corporation, as defined by its charter or laws of state of incorporation. State ex rel. v. Holston Trust Co., 168 Tenn. 546, 79 S.W.2d 1012, 1016. The term has a broad application and includes not only acts prohibited by the charter, but acts which are in excess of powers granted and not prohibited, and generally applied either when a corporation has no power whatever to do an act, or when the corporation has the power but exercises it irregularly. People ex rel. Barrett v. Bank of Peoria, 295 Ill.App. 543, 15 N.E.2d 333, 335. Act is ultra vires when corporation is without authority to perform it under any circumstances or for any purpose. By doctrine of ultra vires a contract made by a corporation beyond the scope of its corporate powers is unlawful. Community Federal Sav. & Loan Ass'n of Independence, Mo. v. Fields, C.C.A. Mo., 128 F.2d 705, 708. Ultra vires act of municipality is one which is beyond powers conferred upon it by law, Charles v. Town of Jeanerette. Inc., La.App., 234 So.2d 794, 798." Black's Law Dictionary 6th Edition page 1522, [emphasis added],*

This letter is a final attempt to avoid a lawful full class action due to mismanagement and deceit and fiduciary responsibility of circuitous attempts to cover-up the failures of "Lifeway" to abide lawful SBC Bylaws, specifically SBC's Charter bindings under the law.

YOU ARE HEREBY WARNED TO CEASE AND DESIST FROM CONDUCTING THE BUSINESS OF DISPOSING OR TRANSFERRING CONTROL OF GLORIETA CONFERENCE CENTER. FAILURE TO DO SO WILL RESULT IN APPROPRIATE LAWFUL ACTION BEING TAKEN.

Please confirm, in writing, before August 31, 2013, that all parties have discontinued this misconduct described herein this letter. In the event such misconduct continues, or is repeated

from or after said date, further instruction is to commence appropriate lawful action against all parties involved having any possible tacit knowledge

Yours very truly,

Kirk Tompkins

cc: LifeWay Trustees by mail
    Glorieta Homeowner/Leaseholders by email
 Attachments:
SBC 1949 convention page 45
SBC 1950 convention pages 41-42

13. Since the Committee reporting to this Convention on theological education did not regard Bible Schools which seek to serve God-called men who are not college-trained, and who because of age and limited previous schooling cannot enter college, as coming within the purview of the Committee, as evidenced by conclusion, it is understood that the new Committee, whose appointment is called for in Recommendation 8 of the report, be instructed to give careful study to the work of such Bible schools with a view to the obtaining or establishing of an institution to serve the host of God-called preachers who cannot obtain the training they desire in the colleges or seminaries.

Respectfully submitted,

JOHN H. BUCHANAN, Chairman
J. W. STORER
R. PAUL CAUDILL
WADE BRYANT
DOUGLAS HUDGINS
WALLACE BASSETT
EDGAR GODBOLD
R. C. CAMPBELL
R. VAUGHN ROCK
GILBERT GUFFIN

61. Perry Webb, Texas, presented the report of the Committee on Western Assembly as follows:

### Recommendations

We recommend the establishment of a Southern Baptist Assembly at the site offered by the Chamber of Commerce of Harrison, Arkansas.

After discussion by Wayne DeHoney, Kentucky; Otto Hake, New Mexico, in favor of a substitute motion offered by Phillip C. McGahey, New Mexico to insert the name of Glorieta, New Mexico, in Harrison, Arkansas, and opposed by Pat W. Murphy, Oklahoma, the substitute motion was adopted.

62. Duke K. McCall, Tennessee, moved that the motion as amended be referred to the Sunday School Board for study as to what is involved in the development of the site at Glorieta, New Mexico, and no other site, and that the Sunday School Board be instructed to report to this Convention next year. Motion was approved.

63. Porter M. Bailes, Texas, nominated Robert G. Lee for president, with Vice-president W. Maxey Jarman, Tennessee, presiding, and on motion of J. Seborn Winn, Georgia, President Lee was re-elected by acclamation by a standing vote. Motion was approved.

64. E. D. Solomon, Florida, nominated Homer C. Lindsay, Florida, for first vice-president.   Bruce H. Price, Virginia, nominated E. Hermond Westmoreland, Texas; J. W. Buckner, Arkansas, nominated J. D. Grey, Louisiana; and I. L. Yearby, Oklahoma, nominated Robert S. Kerr, Oklahoma.

65. On motion of Wallace Bassett, it was voted to name those receiving the highest and the second highest vote on the ballot as first and second vice-president, respectively.

66. On motion of Hight C Moore, North Carolina, Porter W. Routh and Joe W. Burton were elected as secretaries.

67. Wallace Bassett, Texas, moved, and it was adopted by a two-thirds vote, that Article XIV of the Constitution be amended to read as follows:

1950 PROCEEDINGS                                                      41

Baptist Brotherhood ...............................................  40,050  (0.890%)
Radio Commission ...................................................  124,650  (2.77%)

Total ................................................................. $4,500,000  (100%)

*This appropriation made in keeping with the action of the Convention, page 51, Item 3, of the 1949 S.B.C. Annual.

(3) That $2,500,000 be distributed to apply on the capital needs goals of the various agencies and that the percentage representing the portion of this $2,500,000 to be allocated to each agency be adopted at the 1951 session of the Southern Baptist Convention.

(4) That all additional Cooperative Program funds above the $7,000,000 and the Convention Operating Budget be given to the Foreign Mission Board for the year 1951.

(5) That the Foreign Mission Board and the Home Mission Board be allowed to use such portion of their receipts for capital funds as may be necessary to safeguard their missionary program. It is understood, however, that the funds so used will be charged against the long-range capital improvement goals.

37. On motion of I. E. Lee, Illinois, Recommendation No. 8 was adopted as follows:

Recommendation No. 8

We recommend that the Convention Expense Budget take care of the auditorium rental expense for the 1951 W.M.U. Convention.

38. On motion of Isam Hodges, California, Recommendation No. 9 was adopted as follows:

Recommendation No. 9

We recommend that all special Convention committees transfer, upon their discharge, all official files to the Executive Committee of the Southern Baptist Convention.

39. On motion of Frank A. Hooper, Georgia, Recommendation No. 10 was adopted as follows:

Recommendation No. 10

Whereas the Southern Baptist Convention, beginning in 1946, made a study looking to the establishment of an assembly in the West, which study culminated in the acceptance by the 1949 Convention of the offer of the New Mexico Baptist Convention of a site for an assembly at Glorieta, New Mexico, and

Whereas, pursuant thereto the Executive Committee on May 9, 1950, passed the following resolution:

Executive Secretary McCall reported that he had received a Warranty Deed from the Baptist Convention of New Mexico dated January 10, 1950, conveying to the Executive Committee of the Southern Baptist Convention certain property in Santa Fe County, New Mexico, known as the Glorieta site, for a Western Assembly. The deed was duly recorded on March 30, 1950, in the land records of Santa Fe County of the State of New Mexico in Book 46, page 71. Your committee recommends that this deed be accepted. and,

Whereas the 1949 Southern Baptist Convention requested the Sunday School Board to study what would be involved in the development of the site at Glorieta, New Mexico, and report to this Convention, and

Whereas, pursuant thereto the Sunday School Board makes the following report:

"In compliance with the Convention's instruction, T. L. Holcomb, H. E. Ingraham, and W. A. Harrell visited Glorieta in September, 1949, for the purpose of reviewing the property and determining whether or not it could be developed satisfactorily for the proposed assembly. Such questions as the amount of property, whether or not accessible by highways, railroads, and airways; whether protected so far as other property was concerned; the water supply, the electrical supply, and possibility of road construction; accessible

42                   1950 SOUTHERN BAPTIST CONVENTION

building materials and methods of construction; heating facilities necessary, gas supply, sanitation, and other matters were carefully discussed. It was our judgment that the property could be developed as an assembly site. To assure protection, the Sunday School Board has acquired an additional 400 acres, making a total of approximately 1,300 acres.

"In connection with their attendance upon the meeting of the New Mexico Convention at Santa Fe, Drs. J. O. Williams and Duke K. McCall visited the Glorieta Assembly grounds. They were in complete accord with the findings previously submitted.

"In order to prove to the brethren in the West that we really mean to develop a great assembly in that section, the Sunday School Board agreed to match dollar for dollar up to $100,000 any contributions secured by the brethren of that area. Approximately $70,000 of this amount has been required to pay for the additional acreage deemed necessary to make the entire property safe and adequate for future development.

"In January, W. A. Harrell and Hardie C. Bass of our Architectural Department spent two days at Glorieta for the purpose of studying the property again since several pieces needed along the highway had been acquired. During this visit contact was made with a firm of responsible engineers, and representatives from their organization studied the property for the purpose of determining the location of roads, laying out the water and sewerage systems, and possible locations of buildings.

"As the Sunday School Board faced the responsibility of enlarging Ridgecrest and the possibility of the additional ministry of building Glorieta, we realized that it was a huge undertaking. In order to keep from making request of the Convention and thereby disturbing all of the percentages, the Board in its December meeting elected Dr. John L. Hill as Director of Promotion for Ridgecrest and Glorieta assemblies. He assumed this new work January 1, with the understanding that our Board will provide his salary and office and travel expense. We earnestly request the full co-operation of the Executive Committee and of every agency of the Convention in making it possible for Dr. Hill to reach the people who should make special contributions to the two assemblies. His work of course will be in harmony with the Business and Financial Plan of the Convention.

"In order that we might save time after the action of the Southern Baptist Convention regarding Glorieta, we arranged a conference in Santa Fe and also on the property April 27, attended by Messrs. Harrell, Bass, Ingraham, Hill and Holcomb. Representatives from two firms of engineers and architects from Santa Fe and Clovis were invited. Dr. Stagg and a group of New Mexico workers met with us for a full discussion of the development of Glorieta up to the present.

"The fellowship was fine and we feel that real progress has been made in reaching conclusions regarding the location of the main buildings, such as an auditorium, an administration building, and dining room. Practically all other developments would be related to one of these.

"If the building of Glorieta is assigned to the Sunday School Board, we pledge our very best efforts, asking of course for the prayers and help of the entire brotherhood."

We therefore recommend:

(1) That the Convention authorize the Sunday School Board to develop the Glorieta Baptist Assembly as funds will permit and to operate it as a Southern Baptist assembly representing all phases of Southern Baptist work, and that the Convention request all its agencies to co-operate with the Sunday School Board to this end.

(2) That the Convention authorize and instruct the Executive Committee of the Southern Baptist Convention to transfer to the Sunday School Board of the Southern Baptist Convention, upon approval by the latter of the title, by proper deed of conveyance the said property being the same property conveyed by the Baptist Convention of New Mexico to the Executive Committee of the Southern Baptist Convention by deed dated January 10, 1950, and recorded on March 30, 1950, in Book 46, page 71, of the Records of Deeds in the office of the County Court Clerk, Santa Fe County, New Mexico.

40. On motion of Adiel Moncrief, Jr., Missouri, Recommendation No. 11 was adopted as follows:

## AFFIDAVIT OF DONALD D. BURR AND BRENDA R. BURR

The undersigned, Donald D. Burr and Brenda R. Burr, do make this affidavit in good faith with clean hands on this the _3/_ day of August, 2013, being duly sworn, hereby deposes and states for the record:

1. I, Donald D. Burr am 76 years old, and am retired.

2. I, Brenda R. Burr am 72 years and am retired.

3. Affiants currently reside at 204 Old Alton Drive, Denton, Texas 76210.

4. Affiants are of sound mind and body with no legal disabilities, having personal knowledge of the common facts as set forth herein:

5. Affiants are Resident Leaseholders of Glorieta Conference Center, Glorieta, Santa Fe County, New Mexico 87535, seeking truth, honor, and justice.

6. Affiants are Texans who first became aware of the Conference in 1973 as Donald came here with the church on a Ski Bible Study trip for the first time. Also, our children came with youth groups from our church to Glorieta Conference Center.

7. We volunteered for the first time in September of 2003 . We worked in the dining room wiping tables, etc. Our joy was meeting other like-minded volunteers and serving others while allowing GOD to work in their lives.

8. We became aware of private homes on the campus while volunteering in 2005. Before trying to buy, we conferred with longtime residents as to how they operated with a lease agreement where one owned the house, but not the land. Since no one had had a problem, and being encouraged by several we proceeded to purchase a house realizing they had not had any problems functioning with such a lease. We went ahead bought and paid cash for a house, purchased from Ferne and Mack Machen who built the house in 1966. They had kept the house of 1000 square feet in good condition. We paid their asking price of $155,000.00. We trusted that all would continue in the future as it had in the past 60 years.

9. Since purchasing the house, we have upgraded by putting in new kitchen cabinets, an island, sink, faucet, tile work, installing new light fixtures, ceiling fans, upgrading light switches, new tankless hot water system, plumbed the garage for a washer and dryer, a utility sink, and installing electric lights in dark corners in the garage. This work was in excess of $6,000.00 in addition to the purchase price.

10. We were in the process of looking into replacing the floor and upgrading the bathrooms when Glorieta Conference Center announced their intent to sell the campus in 2011.

EXHIBIT 7

11. During the past eight years we have owned the house on the GCC, houses have been purchased and sold at fair market value. Some houses have even been sold to private individuals owned by the GCC for fair market value .

12. Now, we find to our dismay, we have no viable options other than the ones they deem fair and equitable. They have offered a minimum of $40,000.00 for a home of 1300 square feet, $30.00 per square foot, up to a maximum of $100,000.00, regardless of the price paid or the true value of the home. These homes, that we sacrifice, are to be used to their advantage and give houses for their staff, families who will pay to come to the camp events, which they will provide for a price. Their 12 year lease is prorated so that the house (improvements) belong to them at the end of the lease.or we can go ahead and give them the house now.

13. Our intent for our home was to enjoy a summer home in a beautiful and serene atmosphere, share this with our children and grandchildren while serving. This is no longer an option as our children cannot inherit the house in our deaths, It will belong to the new owners. Neither will they be able to use it without many stipulations and rules should we accept the 12 year lease.

14. Our goal of this affidavit is to alert others of the inequity of the situation being imposed on a few in order that the buyers or the sellers benefit at our expense. We are asking for justice to be handed to the guilty party or parties.


STATE OF NEW MEXICO       )
                          ) ss.
COUNTY OF SANTA FE        )

### VERIFICATION

I hereby certify that the above and foregoing motion is true and correct to the best of my knowledge.

_____           _____
Donald Burr                       Brenda Burr

(SEAL)                            SUBSCRIBE AND SWORN BEFORE ME,
                                  A NOTARY PUBLIC on this date 31st August 2013

                                  _____
                                  MY COMMISSION EXPIRES: 2/25/17

OFFICIAL SEAL
SAMANTHA HUSTON
NOTARY PUBLIC-State of New Mexico
My Commission Expires 2/25/17

## AFFIDAVIT OF George H. Foster and Karen M. Foster

The undersigned, George H. Foster and Karen M. Foster, do make this affidavit in good faith with clean hands on this the 31st day of August, 2013, being duly sworn, hereby depose and state for the record:

1.  I, George H. Foster, am 57 years old, and am unemployed.

2.  I, Karen M. Foster, am 61 years old, and am unemployed.

3.  Affiants currently own their sole residence at 220 Pinon, Glorieta, New Mexico, 87535; mailing address is 167 Rainbow Dr. #6760, Livingston, TX 77399.

4.  Affiants are of sound mind and body with no legal disabilities, having personal knowledge of the common facts as set forth herein:

5.  Affiants are Resident Leaseholders of Glorieta Conference Center, Glorieta, Santa Fe County, New Mexico 87535, seeking truth, honor and justice,

6.  Affiants are Texans, who fell in love with Glorieta Baptist Conference Center at a Singles Adult Conference in 1986. After we married, we took summer family vacations at Glorieta, loving the peacefulness and summer weather. We always had the dream to move to Glorieta and work in the Christian environment, and eventually retire living our years out at Glorieta Conference Center (GCC).

7.  Affiants in the summer of 2007 volunteered for a month of Christian work at GCC. We eventually sought out advice from Glorieta personnel leadership advising them of our interest of full-time employment.

8.  After returning to Texas in July, Art Snead, a GCC Supervisor then offered Karen full-time employment at GCC whereby we worked out details of Karen's employment

9.  Karen's GCC employment began as front desk clerk Oct. 1, 2007. George's employment would be seasonally (Spring/Summer/Fall) in the Conference Support division. The week before we were to return for Karen's Employment at Glorieta, our home in Wimberley, Texas, having been for sale in excess of a year, received an approved offer and we accepted. We felt this was confirmation from God that our plans were in line with His.

10. We proceeded to enter into a sales agreement with a Mr. Calvin Miller to buy his Glorieta home at 220 Pinon at the Glorieta Conference Center and assume his Lease. We used the proceeds from the sale of our 2,700 sq. ft. Texas home to buy our 1,600 sq. ft. GCC, N.M, home with cash, with no liens or mortgage.

11. In respect to signing the GCC Lease, at the time, we did not know everything involved. Rather than having the lease scrutinized by an attorney, we joined other, wiser Christians who were on the lease in believing that Glorieta would continue its 60-year history of recurring lease agreements with leaseholders.

12. We believed in our hearts this was God's mission for our golden years, that we live and work in the Southern Baptist Christian (SBC) Community of Glorieta Conference Center. However, in order to reside in our private home on the GCC campus, we had to sign a land lease agreement. Whereby we entered into a five-year lease as Baptist Christians, we were being assured that Glorieta would continue its calling for all Christians and believing that Glorieta was a true, honorable Christian Conference Center, inhabited by fellow Christians

1

EXHIBIT 8

for over 60 years, and would continue to operate in such a manner in the future with recurring leases renewable every five years.

13. Sadly, only two (2) years later, we were hit with the first downsizing of Glorieta eliminating Karen's full-time job; LIFEWAY CHRISTIAN RESOURCES OF THE SOUTHERN BAPTIST CONVENTION (LIFEWAY) dissolved both Karen's and George's positions, intending to rely only on summer college staff and "volunteers" to fill their jobs.

14. This downsizing became difficult for us to continue living at Glorieta without jobs both financially and emotionally. Still being very active Christians, we agreed we should try full-time Christian "RV"ing. Our Glorieta Home would be our home base as we looked into Christian camp/RV groups that we could join and work Christian ministry projects throughout the country. In the last four years, we have done work camping jobs for pay and several volunteer Christian ministry projects.

15. We invested our life savings into our only home here at Glorieta. Initial purchase price was $175,000.00 in 2007. We added a two-car carport for a cost of $25,000.00 in 2008. Since then we have made various improvements to the home and landscaping for ease of upkeep.

16. Additional improvements/renovations amounted to $23,000.00. Our total investment in our Glorieta home is now in excess of $223,000.00, including all home and land improvements but not owning the land.

17. During our Glorieta home ownership, we were allowed to market said property at a fair and equitable price and did investigate such beginning two years ago when there were rumors that LIFEWAY CHRISTIAN RESOURCES OF THE SOUTHERN BAPTIST CONVENTION (LIFEWAY) was seeking to sell Glorieta Conference Center.

18. We were led to believe, and it was our understanding when we originally signed the lease, that in the event the lease was not renewed by LIFEWAY, they would purchase our home from us at fair market value. In the announcement of the sale of Glorieta made by Jerry Rhyne, CFO of LIFEWAY, July 9, 2013, he stated to the entire assembly present, and we quote, "... one of the most important requirements for any sale of Glorieta was that new owners provide options that are fair, reasonable and prudent for individuals and churches that lease land at Glorieta for residential homes and small group facilities."

19. However, the options that are being offered by LIFEWAY and the pending new buyers Glorieta G2.0 (G2.0) are neither fair, reasonable nor prudent for the Leaseholders of residential homes at Glorieta. We are being scammed, coerced and intimidated into donating our homes for the use of a new unknown ministry (if such is a Christian ministry) not affiliated with SBC. Our "fair market value" has been reduced to a mere $30/sq ft. LIFEWAY and G2.0's options do not even begin to reimburse us for our home improvements not to mention our initial investment.

20. We have learned through investigation and now understand our homes are to be used for the profitability and usage of the new Glorieta ownership "G2.0" and its private members, as they take control of all GCC dream retirement homes and then lease our homes for and to future event participants and families who are to be entertained by G2.0. New owners admit they do not have enough money to pay fair market value for our homes. If they do not have enough money to treat us fairly, reasonably and prudently, then what goals and intentions do they have? And to a more important agenda, why should G2.0, a virtually unknown entity organized only recently in April 2013, even be allowed to purchase the entire Glorieta

2

Conference Center allegedly having a value by real estate appraisal agents of $40 Million for the mere sales price of $1 instead of returning Glorieta Conference Center to its Original New Mexico Baptist Conference Owners?

21. Two (2) other options available to us and other Leaseholders are equally ludicrous. Citing from the offers that we can either donate our homes outright or lease our homes for 12 years with increasing lease amounts of unknown charges, having illegal/immoral lease terms, and then upon termination donate our homes to this new unknown ministry. What's more ludicrous, we and other Leaseholders would be banned from the Glorieta campus during events. We did not purchase our homes with such anti-piety nor did we have any knowledge of future intentions until July 2013. Glorieta campus is a tranquil setting, originally developed to be enjoyed by all event participants as well as resident Leaseholders. It was not created to be a Communist Concentration Camp where Leaseholders would be unable to enjoy the property and Christian atmosphere, if it exists, but must be confined to our residential area only with limitations of traveling to and from.

22. We as well as other Leaseholders are falling victim to serious mismanagement, misrepresentation, and even possible fraudulent misappropriation of financial incomes of the Glorieta Conference Center by LIFEWAY and its trustees resulting in major financial losses. In order to save face with new buyers, THOM RAINER, PRESIDENT, JERRY L. RHYNE, CFO in tacit concert with SBC are throwing Leaseholders under the bus at our expense.

23. These are our homes, not just vacation cabins or retreat bungalows. We have invested in our home at Glorieta as we have invested in every other home we've owned. Our priority is to be debt free. We have no financial capability of buying another home for cash, as we had to buy our home in Glorieta. A mere $40,000 wouldn't begin to buy a home of like kind in the USA. We are unemployed and have no capability of acquiring a mortgage on another home. We worked hard for what we have and do not wish it to be defrauded and ripped out from under us to be used for profit by the alledgedly "non-profit Christian" corporation.

24. Our goal of this affidavit is to alert the world that there is an attack against Christians who seek only Truth, Honor and Justice in the world of corporate greed.

Wherefore we pray to our Creator through Jesus the Christ that an Honorable Court hear our affidavit made in good faith with clean hands, for justice is begging to be heard.

STATE OF SOUTH DAKOTA   )
COUNTY OF PENNINGTON    )

VERIFICATION

I hereby certify that the above and foregoing motion is true and correct to the best of my knowledge.

_George H. Foster_                          _Karen M. Foster_
George H. Foster                            Karen M. Foster

SUBSCRIBE AND SWORN BEFORE                  State of South Dakota
A NOTARY PUBLIC on this date ___            County of Pennington

MY COMMISSION EXPIRES: 10-22-2016

# AFFIDAVIT OF CHARLES J. GOODYEAR AND KAY H. GOODYEAR

The undersigned, Charles J. Goodyear and Kay H. Goodyear, do make this affidavit made in good faith with clean hands on this the __31 ST__ day of August 2013, being duly sworn, hereby deposes and states for the record:

1. Charles J. Goodyear am 62 years old and am self-employed as a Radio/TV management and accounting consultant.

2. I, Kay H. Goodyear am 62 years old and am self-employed as a Piano Teacher.

3. Affiants currently reside at 1804 Crestridge Court, Arlington, County of Tarrant, Texas 76013.

4. Affiants are of sound mind and body with no legal disabilities, having personal knowledge of the common fact as set forth herein:

5. Affiants are Resident Leaseholders of 156 Oak Street Glorieta Conference Center, Glorieta, Santa Fe County, New Mexico 87535,seeking truth, honor, and justice.

6. Affiants began coming to the Glorieta Conference Center (GCC) as small children and continued as teens and young adults. We were so blessed and felt God's presence in this place. We had a life-long desire to acquire a home here to which we could come during our retirement years and have a safe place to bring our children and grandchildren. In 2008, we began looking at homes. A representative of the GCC staff showed us several properties that LifeWay was selling. However, the prices were beyond our means since a total cash purchase was required. Mortgages were not allowed. In 2009, through receipts from an inheritance, we were able to purchase a home from Dallas Baptist University on the GCC campus, subject to a land lease from LifeWay. We planned to pass this home down to future generations.

7. As regular visitors to GCC we had noticed a decline in attendance and the reduction in the number of major conferences such as Music Week and Sunday School Week. Thus, we were concerned about the financial state of GCC and asked pointed questions before our purchase. We were assured in 2008 by Art Snead, a GCC manager, that GCC's current operations and future were "stable". In 2009, we were told by Hal Hill, GCC Director, that GCC's cash flow was cash positive almost every year for the past 25 years, although they

EXHIBIT 9

ran a "book" loss due to depreciation and LifeWay corporate expense allocations. Operations at GCC he said "could continue for years at the current level." He repeated this statement in 2011 shortly after it was announced that LifeWay was considering the sale of GCC and again in 2012 when it was announced GCC would reduce its full time operations to June 1 through September 1. The reduction in full time operations was supposed to improve the cash flow. GCC "could operate for years with just the Fuge" summer camps and remain cash flow positive. He also stated that contracts had already been signed for Fuge camps through 2014.

8. We understood that the lease of land to homeowners was to help protect and control the Christian community environment. We were required to provide a letter from our pastor certifying that we were active participating members in our local Southern Baptist Church.

9. We signed a four-year lease and understood our Lease to be readily renewable. Routine renewal was expected as the leases had been renewed for the previous 55 years. No one had ever been denied a renewal. We also understood we were to maintain our homes in good condition and our personal lives were to meet the GCC standards of a Christian.

10. We purchased our home September 1, 2009, at an investment cost of $130,000 and have made numerous small improvements at a cost of $8,000. The home now has a value pursuant to appraisal estimates of like kind homes within 20 miles of $150,000 to $175,000.

11. We were also led to believe that our investment was protected by LifeWay in that we would receive buy-outs that were "Fair and Equitable" if the lease was terminated. This was demonstrated by 55 years of prior history and LifeWay representatives showing us homes for sale that they had previously purchased from former lessees.

12. Since the receipt of a letter sent to Leaseholders of the Glorieta Conference Center in mid-June 2013 advising us of a potential sale to Glorieta 2.0 we have been bullied, threatened, and intimidated to accept pennies on the dollar for our homes. Jerry Rhyne, CFO of LifeWay, threatened Lessees in a July 9, 2013 open meeting, if this deal didn't go through the property would be sold to commercial developers and we'd all be gone. In the same

2

meeting, David Weekley, a home builder and Director of Glorieta 2.0, claimed he could build a new house for $50,000. He was clearly trying to bully lessees into acceptance of his low-ball $40,000 offer. In a meeting in our home on July 15, we were told by Anthony Scott of Glorieta 2.0 and Hal Hill, GCC Director that if anyone filed legal action the deal would be killed for everyone. In that same meeting we were told that everyone they'd visited had accepted the options except one lessee. From talking to several people whom they'd already visited I knew this not to be true. I considered these comments an intimidation tactic to squelch any opposition and cow everyone to accepting as well. During the meeting we also gave them the results on our online investigation of comparable square foot prices. In a July 16 email from Anthony Scott to us only, he wrote, "Many are using your square foot numbers and are not happy with our offer. Is your desire that we walk?" Clearly, this was an effort to intimidate us into silence and acceptance. Several additional letters and emails were sent by Anthony Scott to all lessees claiming only a few lessees had not expressed their acceptance. Again, this was another attempt to isolate and coerce acceptance from those who had not agreed. On August 20, Hal Hill of GCC sent an email to all leaseholders saying access to the grounds would remain "as long as those agreements are in place." We took that as a threat to cut off the access to our property if we didn't sign on to one of the new options since GCC might claim our current agreement was "no longer in place." Marty King, spokesperson for LifeWay, claimed in numerous news reports that the options were "generous". These reports were an attack on the credibility of lessees complaining about the unfair options to other media. Thom Rainer, President of LifeWay, has failed to answer a single email, letter, or call from us regarding LifeWay's decision and reasoning.

13. The options offered to Leaseholders for their homes are unreasonably unfair. The options were presented to us in our Glorieta home on July 15 by Anthony Scott of Glorieta 2.0 and Hal Hill of GCC. We told Anthony and Hal the $30 per square foot offer was unfair and

gave him the comparative numbers from nearby markets. We also received an email from

Anthony Scott with the options. The maximum compensation offer for lessee's property

was the greater of $40,000 or $30 per square foot up to a maximum of $100,000. My online

research of home prices revealed a $109 per square foot average in nearby Pecos, a poverty

stricken community. In nearby Eldorado the average per square foot rate is $206. Clearly,

$30 was neither fair nor generous. The other options were worse. One was simply to

give the property to Glorieta 2.0. The other option was to accept a 12-year lease and turn

the property over to Glorieta 2.0 upon the lease expiration and receive no compensation. In

the July 9 meeting, Jerry Rhyne, LifeWay CFO, claimed his #2 priority was to treat

Leaseholders fairly. When pressed to answer if $40,000 was really fair he wouldn't answer

the question.

14. We pray that an honorable court hear our affidavit made in good faith with clean hands

seeking justice.

Charles J. Goodyear                          Kay H. Goodyear


STATE OF NEW MEXICO )
                    ) ss.
COUNTY OF SANTA FE  )

### VERIFICATION

   This instrument was acknowledged before me on 31 Day of August , 2013 by Charles J. Goodyear
and Kay H. Goodyear, Husband and wife, who certify that the above and foregoing affidavit is true and correct
to the best of their knowledge.

Charles J. Goodyear                          Kay H. Goodyear


(SEAL)


                                          SUBSCRIBE AND SWORN BEFORE ME,
                                          A NOTARY PUBLIC on this date 31 August 2013

**OFFICIAL SEAL**
**SAMANTHA HUSTON**
NOTARY PUBLIC-State of New Mexico
My Commission Expires 2/25/17

                                          MY COMMISSION EXPIRES: 2/25/17

## AFFIDAVIT OF Dr. John W. Yarbrough and Becky Yarbrough

The undersigned, **Dr. John W. and Becky Yarbrough**, do make this affidavit in good faith with clean hands on this the 31th day of August 2013, being duly sworn, hereby deposes and state for the record:

1. I Dr. John W. Yarbrough am 69 Years old, and I am a retired SBC Home Missionary and Minister and currently work part-time as a Chaplain.

2. I Becky Yarbrough am 66 Years old, and I am a retired SBC Home Missionary, office manager and currently work part-time. Affiants currently reside at 2905 Cambridgeshire Dr, Carrollton, TX 75007.

3. Affiants are of sound mind and body with no legal disabilities, having personal knowledge of the common facts as set forth herein:

4. Affiants are Leaseholders of 342 Aspen, Glorieta Conference Center, Glorieta, Santa Fe County, New Mexico 87535, seeking truth,

5. We were led to believe and it was our understanding when we originally signed the lease that in the event the lease was not renewed by LIFEWAY, they would purchase our home from us at fair market value. In the announcement of the sale of Glorieta made by Jerry Rhyne, CFO of LIFEWAY, July 9, 2013, he stated to the entire assembly present and we quote, "... one of the most important requirements for any sale of Glorieta was that new owners provide options that are fair, reasonable and prudent for individuals and churches that lease land at Glorieta for residential homes and small group facilities."

6. However, the options that are being offered by LIFEWAY and the pending new buyers Glorieta G2.0 are neither fair, reasonable nor prudent for the Leaseholders of residential homes at Glorieta. In 2003, we purchased our home from LifeWay that advertised it at an appraised value of $150,000. The home needed major repair, including a new roof, windows, flooring, ceilings, wall repair, plumbing and etc. We refinanced our home in Texas in order to purchase our Glorieta home. We are being scammed, coerced and intimidated into donating our homes for the use of a new unknown ministry (If such is a Christian ministry) not affiliated with SBC. Our "fair market value" has been depleted to a mere $30 per square foot. LIFEWAY and G2.0's options do not even begin to reimburse us for our home improvements not to mention our initial investment.

7. We have learned through investigation and now understand our homes are to be used for the profitability and usage of the new Glorieta ownership "G2.0" and its private members, as they take control of all Glorieta Conference Center dream retirement homes and then lease our homes for and to future event participants and families who are to be entertained by G2.0. New owners admit they do not have enough money to pay fair market value for our homes. If they do not have enough money to treat us fairly, reasonably and prudently, then what goals and intentions do they have and to a more important agenda why should G2.0, an virtually Unknown entity organized only recently in April 2013, even be allowed to purchase the entire Glorieta Conference Center allegedly having a value by real estate appraisal agents of $40 Million for the mere sales price of $1.

8. Two (2) Other options available to us and other Leaseholders are equally ludicrous. Citing from the offers that we can either donate our homes outright or lease our homes for 12 years

EXHIBIT 10

with increasing lease amounts of unknown amounts per having illegal/immoral lease terms and then upon termination donate our homes to this new unknown ministry. What's more ludicrous we and other Leaseholders would be banned from the Glorieta Campus during events. We did not purchase our homes with such anti-piety nor did we have any knowledge of future intentions until July 2013. Glorieta campus is a tranquil setting, originally developed to be enjoyed by all event participants as well as resident Leaseholders. It is not a communist concentration camp where Leaseholders are unable to enjoy the property and Christian atmosphere, if it exists, but we must be confined to our residential area only with limitations of traveling to and from.

9.   We as well as other Leaseholders are falling victim to serious mismanagement, misrepresentation, mismanagement and even possible fraudulent misappropriation of financial incomes of the Glorieta Conference Center by LIFEWAY and its trustees resulting in major financial losses. In order to save face with new buyers, THOM RAINER, PRESIDENT, JERRY L. RHYNE, CFO in tacit concert with SBC are throwing Leaseholders under the bus at our expense.

10.  These are our homes, not vacation cabins or retreat bungalows. We have invested in our home at Glorieta as we have invested in every other home we've owned. Our priority is to be debt free. We have no financial capability of buying another home for cash, as we had to buy our home in Glorieta. A mere $40,000 or $30 a square foot wouldn't begin to buy a home of like kind in the USA. We are retired and have no capability of acquiring a mortgage on another home. We worked hard for what we have and do not wish it to be defrauded and ripped out from under us.

11.  Our goal of this affidavit is alert the world that there is an attack against Christians who seek only Truth, Honor and Justice in the world of corporate greed.

Wherefore we pray to our Creator through Jesus the Christ that an Honorable Court hears our affidavit made in good faith with clean hands, for justice is begging to be heard.

STATE OF NEW MEXICO   )
                                              ) ss.
COUNTY OF SANTA FE    )

<div align="center">VERIFICATION</div>

This instrument was acknowledged before me on 31 Day of _August_, 2013 by Dr. John W. Yarbrough and Becky Yarbrough, Husband and wife, who certify that the above and foregoing affidavit is true and correct to the best of their knowledge.

_____                           _____
Dr. John W. Yarbrough                                  Becky Yarbrough

(SEAL)

                                        SUBSCRIBE AND SWORN BEFORE ME,
                                        A NOTARY PUBLIC, on this date _August 31, 2013_

                                        _____
                                        MY COMMISSION EXPIRES: 01/04/16

### AFFIDAVIT OF Marion E. Cheshire and Marlyene F. Cheshire

The undersigned, Marion E. Cheshire and Marlyene F. Cheshire, residents at 1211 Mustang Trail, Kingwood, Harris County, TX 77339 {Phone 832.349.8554} do herby make this affidavit in good faith with clean hands on this the ⎯3⎯ day of September, 2013, being duly sworn, hereby deposes and state for the record:

1. I Marion E Cheshire am 83 Years old , and retired.

2. I Marlyene F. Cheshire am 79 Years old and am a homemaker.

3. Affiants are owners of our New Mexico residence is 340 Aspen, Glorieta, NM 87535.

4. Affiants are of sound mind and body with no legal disabilities, having personal knowledge of the common facts as set forth herein:

5. Affiants are Resident Leaseholders of Glorieta Conference Center, Santa Fe County, New Mexico 87535, seeking justice.

6. Affiants are Texans who first came to Glorieta Baptist Conference Center in 1971 to attend summer conferences resulting in our active participations in the conferences, without being a resident of Glorieta Baptist Conference Center, through the summer of 1982.

7. After having sought ownership of a residence within the Conference Center, for several years, we finally were able to purchase our "Glorieta Home" in November 1982 for cash.

8. The value of our home in Glorieta per local real estate has an estimated value of approximately $200,000.00, however it has never been our intent to sell our home but to continue living in the Glorieta Christian environment and pass our property to our children, as they have spent many years with us or with their own families.

9. Upon our retirement in 1986, my family has resided in our Glorieta home for more than half the year each year. Our home has been invaluable as a meeting place for friends and family, including an intermediate meeting place for our Texas families and

1

EXHIBIT 11

our family members serving in the military living in California.

10. We have always enjoyed our home and friends within the Conference Center and those outside the conference center, particularly those in Glorieta Baptist Church and First Baptist Church in nearby Santa Fe, New Mexico.

11. We have always believed, and led to believe based on numerous discussions and promises that Lifeway (SBC), if ever ceased operations, would treat us fairly, would conduct their business professionally and with honest professionalism provide us, in the event of some extra-ordinary event, a return of our investment with a fair-market value for our home.

12. We Believe the present offers and conditions being tended for our home are unfair, unreasonable, demeaning and an insult well below any local appraised value of like kind homes, actual and perceived.  Further, the actual value of our home has been decreased by all this turmoil associated with the perceived illegitimate conveyance negotiations between Glorieta and prospective buyers, particularly the non-profit Glorieta 2.0, a non-member of the Southern Baptist Convention members of Churches and Organizations.

13. Through our affidavit of support we only seek honor, justice and continued access to our home or in the alternative an agreeable financial remunerations which are "fair, reasonable and prudent".

14. Our Goal of our affidavit is alert the world that there is an attack against Christians who seek only Truth, Honor and Justice in the world of corporate greed.

**WHEREFORE,** we pray to our Creator through Jesus the Christ that an Honorable Court take measure hearing our pleading affidavit made in good faith with clean hands, for justice is begging to be heard.

Marion E. Cheshire
_____
Marion E. Cheshire

Marlyene F. Cheshire
_____
Marlyene F. Cheshire

2

STATE OF TEXAS     )
                   ) ss.
COUNTY OF ~~HARRIS~~  )
       Montgomery

### VERIFICATION

    This instrument was acknowledged before me on _3_ Day of _Sep._, 2013 by Marion E. Cheshire and Marlyene F. Cheshire, Husband and wife, who certify that the above and foregoing affidavit is true and correct to the best of their knowledge.

_Marion E. Cheshire_        _Marlyene F. Cheshire_
Marion E. Cheshire             Marlyene F. Cheshire

(SEAL)

GAIL DEMPSEY
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Expires 04-26-2017

SUBSCRIBE AND SWORN BEFORE ME,
A NOTARY PUBLIC on this date _9-3-13_

_Gail Dempsey_
MY COMMISSION EXPIRES: _4-26-17_

3

### SPECIAL WARRANTY DEED

LifeWay Christian Resources of the Southern Baptist Convention, formerly known as The Sunday School Board of the Southern Baptist Convention, a Tennessee non-profit corporation (GRANTOR), for consideration paid, grants to Glorieta 2.0, Inc., a Texas corporation (GRANTEE) whose address is 1111 North Post Oak Road, Houston, Texas 77055, the following described real estate in Santa Fe County, New Mexico:

### SEE EXHIBIT A (attached)

(hereinafter the "Property")

GRANTOR further expressly conveys with the Property as part of the Property with this conveyance all groundwater rights identified in New Mexico Office of the State Engineer file nos. UP-373 through 378, and in *State of New Mexico ex rel. Reynolds v. Lewis and State ex rel. Reynolds v. Hagerman Canal Co. et al.*, Case No 20294 and 22600 consolidated, Subfile No. UP 8.9-8.14, Consent Judgment dated July 17, 1990 ("Consent Judgment"), attached hereto as Exhibit B, hereinafter referenced as the "Groundwater Rights;"

GRANTOR expressly reserves (and does not hereby grant) a 60% interest of a total 100% interest of all the oil, gas, coal, or other minerals (including without limitation natural minerals such as humate, gravel, sand, caliche, building stones, clay, gravel and rock for crushing) (all collectively referred to herein as "minerals"), known or unknown, of any nature, kind or description whatsoever (whether gaseous, liquid, or solid) lying in, on, under, or within or below the Property, together with the perpetual and irrevocable right, privilege, and easement for ingress and egress from all such minerals and use of the surface incident to the Property for all reasonable and appropriate purposes in any manner related to the exploration and prospecting for, mining, drilling for, development, production of, removal of, processing of, storage of, and transportation and marketing of such reserved minerals.

SUBJECT TO:

    1.    Any taxes and assessments applicable to the Property for the year 2013 and thereafter.

    2.    All interests or matters of record applicable to the Property (including any conditions, easements, rights-of-way, licenses, covenants, restrictions, indentures, patents, reservations, and any and all other interests or matters of record), including those shown on any recorded Plats and all those shown and listed on any Commitment for Title Insurance and/or any Owner's (or Contract Purchaser's) Title Policy provided to Grantee in connection with the conveyance of the Property from Grantor to Grantee.

    3.    Grantor hereby expressly disclaims any forms of covenant or warranty as to (and the special warranty covenants of Grantor are limited to exclude) any matters applicable to the Property pertaining to or arising out of:

*Special Warranty Deed*
*Page 1 of 3*

SFC CLERK RECORDED 09/11/2013

*Exhibit 12*
*Pg 1*

(a)     Rights or claims of parties in possession not shown by the public records, and easements, or claims of easements, not shown by the public record.

(b)     Encroachments, roadways, overlaps, conflicts in boundary lines, shortages in area, or other matters which might be disclosed by survey or visual inspection of the Property.

(c)     Unpatented mining claims; reservations or exceptions in patents or in acts authorizing the issuance thereof; water rights, claims or title to water.

(d)     Taxes or assessments which are not shown as existing liens by the public record, or any assessments against the Property.

(e)     Any easement rights as a result of any roadways or rights-of-way affecting the Property.

4.     A deed restriction created by this instrument that prohibits the sale of any of the Groundwater Rights separate from the sale of the entire Property without prior written approval and consent of the Grantor and/or its successors and/or assigns.

5.     A right of first refusal for the benefit of Grantor, its successors and assigns as provided in the Purchase and Sale Agreement between Grantor and Grantee and otherwise identified in that certain Notice and Memorandum of LifeWay Right of First Refusal filed of record on _____ at Book _____, page ___ records of the Santa Fe County Clerk, Santa Fe, New Mexico. This right of first refusal runs with the land and is binding upon all successors, assigns, or transferees of the Property and/or Groundwater Rights and upon Grantee, its successors and/or assigns.

6.     A right to resale proceeds for the benefit of Grantor, its successors and assigns, as provided in the Purchase and Sale Agreement between Grantor and Grantee and otherwise identified in that certain Notice and Memorandum of LifeWay Right to Resale Proceeds filed of record on _____ at Book _____, page ___ records of the Santa Fe County Clerk, Santa Fe, New Mexico. This right of resale proceeds runs with the land and is binding upon all successors, assigns, or transferees of the Property and/or Groundwater Rights and upon Grantee, its successors and/or assigns

With special warranty covenants.

*Special Warranty Deed*
*Page 2 of 3*

SFC CLERK RECORDED 09/11/2013

Exhibit 12
Pg 2

Witness its hand and seal this 10th day of September, 2013.

LifeWay Christian Resources of the Southern Baptist
Convention

By: _Jerry RRyne_

Name: Jerry Rhyne
Title: CFO
Vice President, Finance and Business Services
Division

## ACKNOWLEDGEMENT

STATE OF                     )
                            ) ss.
COUNTY OF                    )

This instrument was acknowledged before me on September 10, 2013, by Jerry Rhyne, as CFO and Vice President, Finance and Business Services Division, of LifeWay Christian Resources of the Southern Baptist Convention, formerly known as The Sunday School Board of the Southern Baptist Convention, a Tennessee non-profit corporation.

_Lori Morrison_

Notary Public

My Commission Expires:

_July 6, 2015_

Y:\don\client79487\0115\GENERAL\W1956627.DOCX (TPH Rev. 9/6/13)

*LORI MORRISON*
*STATE*
*OF*
*TENNESSEE*
*NOTARY*
*PUBLIC*
*DAVIDSON COUNTY*

SFC CLERK RECORDED 09/11/2013

*Special Warranty Deed*
*Page 3 of 3*

Exhibit 12
Pg 3

Exhibit A

The North Parcel - 111 Tracts/Lots (North of I-25) 2227.443 Ac.+/-, together with 105 Lot Subdivision (31.585 Ac.+/-), together with South Parcel - 5 Existing Tracts + 2 Tracts which can be added, 7 total tracts (South of I-25) 142.382 Ac.+/- (including the designated Tract A 2164.556 Ac.+/-), all as shown on that certain Lot of Record Composite Sheet, Plat of Survey for LifeWay Christian Resources of the Southern Baptist Convention for the Glorieta Conference Center at Glorieta, New Mexico (Sheet 2A of 18), together with the Gray Copper Lode (20.661 Ac. +/-) as shown on that certain Boundary Survey of The Gray Copper Lode Mine (Sheet 8 of 18), all as shown on that certain Lot Line Adjustment Survey for LifeWay Christian Resources of the Southern Baptist Convention for the Glorieta Conference Center of 105 Lease Lots plat filed of record September 9, 2013, in Plat Book 763, page 6-24 of the records of Santa Fe County, New Mexico (the "Filed Plat")—

Less and excepting the following parcels:

1.      A parcel, containing 3.014 acres, more or less, generally situated in the area described as Tract 4 (Sheet 5 of 18 of the Filed Plat), comprising the old Glorieta Baptist Church and described as follows: Commencing at the Point of Beginning, being the Northeast corner of the tract, from whence a USGLOS Brass Cap stamped Tr 3/58/334, bears North 86°12'04" East, a distance of 198.71'; Thence from said point of beginning South 49°57'15" West, a distance of 224.08'; Thence North 47°28'53" West, a distance of 235.50'; Thence North 47°26'12" West, a distance of 310.67'; Thence North 67°08'11" East, a distance of 327.92'; Thence South 37°37'49" East, a distance of 445.13' to the Point of Beginning.

2.      The following lots as shown and described on Sheets 1, 2A, 7A and 10A-10F of 18 of the Filed Plat: Block 1, Lots 19, 21, 39, 41, 44, 47, 64 and 71, and Block 2, Lots 31, 32 and 69.

The conveyance under this Deed further incorporates all calls, distances, and monuments as shown on the Filed Plat.

<div style="float:right">SFC CLERK RECORDED 09/11/2013</div>



COUNTY OF SANTA FE     )            SPECIAL WARRANTY DEED
STATE OF NEW MEXICO    ) ss         PAGES: 7

I Hereby Certify That This Instrument Was Filed for
Record On The 11TH Day Of September, 2013 at 11:28:00 AM
And Was Duly Recorded as Instrument # 1717740
Of The Records Of Santa Fe County

                                    Witness My Hand And Seal Of Office
                                              Geraldine Salazar
Deputy_____ County Clerk, Santa Fe, NM

Exhibit 12
Pg 4

## NOTICE AND MEMORANDUM OF RIGHT TO RESALE PROCEEDS

STATE OF NEW MEXICO     )
                           )

COUNTY OF SANTA FE     )

NOTICE IS HEREBY GIVEN that pursuant to the terms of that certain Purchase and Sale Agreement ("Agreement"), executed and delivered on May 31, 2013, between LifeWay Christian Resources of the Southern Baptist Convention, a Tennessee nonprofit corporation ("LifeWay"), and Glorieta 2.0, Inc., a New Mexico nonprofit corporation ("Glorieta 2.0"), LifeWay acquired certain rights and interests in and to a portion of any proceeds ("Right to Resale Proceeds") attributable to any future sale, assignment, transfer, or conveyance of the property, including the Groundwater Rights that run with the property, as described in the Deed attached as Exhibit 1 hereto (the "Property"), and such Right to Resale Proceeds is also binding on any successors, assigns, grantees or transferees of the Property.

The terms and conditions of the Right to Resale Proceeds are set forth in the Agreement and are available by contacting LifeWay, Attention: Legal Counsel, One LifeWay Plaza, Nashville, Tennessee 37234, Fax 615/251-3727. The term of the Right to Resale Proceeds is for an undetermined number of years.

Capitalized terms used in this Memorandum of Right to Resale Proceeds and not defined herein shall have the definitions assigned to them in the Agreement and in the Deed.

This Memorandum of Right to Resale Proceeds (a) is executed for purposes of recordation in the office of the Clerk of Santa Fe County, New Mexico, in order to give notice of the existence of the Right to Resale Proceeds contained in the Agreement, reference to which is hereby made for any and all purposes, and (b) does not amend, modify or change any of the terms and provisions of the Agreement, and terms and conditions of the Agreement shall prevail, in the event of any inconsistency, over any statements contained herein.

IN WITNESS WHEREOF, the Parties herein have executed this Memorandum of Right to Resale Proceeds, to be effective as of the Effective Date.

| LifeWay Christian Resources of the Southern Baptist Convention | Glorieta 2.0, Inc. |
|---|---|
| By: | By: |
| Name: Jerry Rhyne | Name: David Weekley |
| Title: CFO, Vice President, Finance and Business Services Division | Title: Chairman of the Board |

*Memorandum of LifeWay Right to Resale Proceeds 2013-09-10*
*Page 1 of 3*

EX<sub></sub>hiBiT 12
P3 5

## NOTICE AND MEMORANDUM OF LIFEWAY RIGHT OF FIRST REFUSAL

STATE OF NEW MEXICO          )
                             )
COUNTY OF SANTA FE           )

NOTICE IS HEREBY GIVEN that pursuant to the terms of that certain LifeWay Right of First Refusal Agreement ("Agreement"), executed and delivered on September 10, 2013, between LifeWay Christian Resources of the Southern Baptist Convention, a Tennessee nonprofit corporation ("LifeWay"), and Glorieta 2.0, Inc., a New Mexico nonprofit corporation ("Glorieta 2.0"), Glorieta 2.0 granted to LifeWay the right of first refusal ("LifeWay Right of First Refusal") to purchase the property, including the Groundwater Rights that run with the property, as described in the Deed attached as Exhibit 1 hereto ("Property"), and such LifeWay Right of First Refusal is also binding on any successors, assigns, grantees or transferees of the Property.

The terms and conditions of the LifeWay Right of First Refusal are set forth in the Agreement and are available by contacting LifeWay, Attention:  Legal Counsel, One LifeWay Plaza, Nashville, Tennessee 37234, Fax 615/251-3727. The LifeWay Right of First Refusal must be exercised pursuant to the terms of said Agreement. The term of the LifeWay Right of First Refusal is for an undetermined number of years.

Capitalized terms used in this Memorandum of LifeWay Right of First Refusal and not defined herein shall have the definitions assigned to them in the Agreement and in the Deed.

This Memorandum of LifeWay Right of First Refusal (a) is executed for purposes of recordation in the office of the Clerk of Santa Fe County, New Mexico, in order to give notice of the existence of the LifeWay Right of First Refusal contained in the Agreement, reference to which is hereby made for any and all purposes, and (b) does not amend, modify or change any of the terms and provisions of the Agreement, and terms and conditions of the Agreement shall prevail, in the event of any inconsistency, over any statements contained herein.

IN WITNESS WHEREOF, the Parties herein have executed this Memorandum of LifeWay Right of First Refusal, to be effective as of the Effective Date.

| LifeWay Christian Resources of the Southern Baptist Convention | Glorieta 2.0, Inc. |
|---|---|
| By: | By: |
| Name: Jerry Rhyne | Name: David Weekley |
| Title: CFO Vice President, Finance and Business Services Division | Title: Chairman of the Board |

*Memorandum of LifeWay Right of First Refusal 2013-09-10*
*Page 1 of 3*

EXhibiT 12
Pg.6