IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**L. KIRK TOMPKINS and SUSIE TOMPKINS,**

          **Plaintiffs,**

**v.**                                   **13cv840 JB/RHS**

**EXECUTIVE COMMITTEE OF THE**
**SOUTHERN BAPTIST CONVENTION (ECSBC) et al.,**

          **Defendants.**

## AMENDED REPORT AND RECOMMENDATION

THIS MATTER comes before the Court on an Order of Reference (Doc. 4) from the trial court directing the undersigned to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend an ultimate disposition of the case. On June 19, 2014, the undersigned presided over an evidentiary hearing relative to all pending dispositive motions. Following the hearing, Plaintiffs *pro se* and counsel of record were invited to submit Requested Findings of Fact and Conclusions of Law all of which are now filed. The undersigned has considered and reviewed all of the pleadings on file in the above-captioned cause together with the arguments and authorities propounded by the respective parties and hereby enters the Court's Findings of Fact and Conclusions of Law together with recommended disposition of the pending pre-trial motions.

## GENERAL FINDINGS AND CONCLUSIONS

1. Plaintiffs appeared *pro se* during the course of these proceedings, however the Court allowed Plaintiffs to have seated next to them a "legal advisor" who was a non-attorney. This legal advisor was not allowed to present argument or participate in the case at her request. Plaintiff Susie Tompkins was excused from personal appearance.

2.  Plaintiffs have agreed and represented to the Court that they are residents and citizens of the State of Arkansas and this stipulation became the law of the case.

3.  Plaintiff L. Kirk Tompkins conducted himself in a respectful and courteous manner at all times which was greatly appreciated by the Court.

4.  Respectfully, the Court does not believe that Plaintiffs' pleadings were prepared by Plaintiffs as *pro se* litigants but rather prepared by an un-named person(s) assisting Plaintiffs..

5.  The arguments presented by Plaintiffs, including Plaintiffs' Proposed Findings of Fact and Conclusions of Law (Doc. 169) were for the most part very difficult to understand and were not supported by fact or law.

6.  Defendants also submitted their respective Requested Findings of Fact and Conclusions of Law (See Docs. 167, 166, 165, 162, 168, 164, 163) which the undersigned has reviewed and considered. These Requested Findings of Fact and Conclusions of Law are all supported by fact and law and the undersigned adopts them as modified by the Court.

**I.**
**MOTION TO DISMISS VERIFIED THIRD AMENDED COMPLAINT**
**BY LIFEWAY CHRISTIAN RESOURCES, GLORIETA 2.0, INC.,**
**LARRY D. CANNON, JERRY RHYNE, THOM RANIER, TERRY BRASWEEL,**
**DAVID WEEKLEY, LEONARD RUSSO AND TERRY LOOPER (Doc. 137)**

**FINDINGS OF FACT**

**A.  Lack of Standing/First Amendment Establishment Clause**

1.  Plaintiffs lack standing to assert that LifeWay (sometimes also referred to as LCR) was not able or authorized to sell the Glorieta Conference Center to Glorieta 2.0.

2.  LifeWay owned the Glorieta Conference Center and therefore had the authority to sell its property.

3.  Plaintiffs' only interest at the Glorieta Conference Center was under a ground lease that expired September 30, 2013.

4. Plaintiffs lack the requisite standing to object to the sale of the Conference Center.

5.  The lot (with improvements) that Plaintiffs previously leased (and which lease expired September 30, 2013) was not included in the sale to Glorieta 2.0 and is still retained by LifeWay.

6.  Plaintiffs have no standing to complain about the dealings between Glorieta 2.0 and any other lessees at Glorieta Conference Center who leased lots that were sold to Glorieta 2.0.

7.  Plaintiffs do not have standing to assert other leaseholders' possible claims against LifeWay and its trustees, officers and directors.

8.  Plaintiffs do not allege any wrongdoing or improper action by Defendants Glorieta 2.0 or the Glorieta 2.0 Directors.

9.  Plaintiffs do not allege any relationship to Glorieta 2.0 or to the Glorieta 2.0 Directors through contract, tort, or otherwise.

10.  Plaintiffs do not allege that Glorieta 2.0 did anything other than purchase property from LifeWay.

11.  Plaintiffs do not allege that the Glorieta 2.0 Directors acted outside of their capacity as Directors of Glorieta 2.0.

12.  Plaintiffs have no standing to assert any claims against these Defendants, who have raised no objections to the sale.

13.  Plaintiffs do not allege and did not submit any evidence that (1) they are members of any Southern Baptist Church; (2) that they were designated as messengers; or (3) had any right or capacity to speak on behalf of the LifeWay, the SBC, or the ECSC.

14.  The SBC consists of "cooperating churches" a term defined in the SBC constitution.

15.  Cooperating churches send messengers to the two-day annual convention to elect the trustees of some of the entities, hear reports, and vote on matters brought to the floor under Roberts Rules of Order.

16.  When the two-day convention ends those messengers have no further duties or authority. Id. No individual, except a trustee or officer of an SBC entity, controls the decisions of those entities.

17.  The Plaintiffs are not trustees or officers of the SBC or any SBC entity, including LifeWay.

18.  The Plaintiffs merely leased land at the Glorieta conference center and Plaintiffs' lease expired September 30, 2013.

19.  Plaintiffs in this action do not have standing to assert non-compliance with ecclesiastical rules and regulations of LifeWay, or the SBC, or the ECSBC as Plaintiffs are not members of any of those entities or boards.

20.  Plaintiffs claim in Count I that the actions of Defendants ECSBC, SBC, and LifeWay in selling the property to Glorieta 2.0 were contrary to their charters, constitutions, ecclesiastical rules and regulations, or doctrines and principles of these religious organizations.  The Court finds that all of these claims involve activities that are in the exclusive domain of religious organizations to make their own determinations on interpretation of their rules, regulations, charters, constitutions, and religious objectives and doctrines, and that this Federal Court, by reason of the First Amendment to the United States Constitution, does not have jurisdiction to adjudicate and rule on such disputes.  This Federal Court also does not have jurisdiction on the claims against any officers and directors of these organizations since they were acting solely in their official capacities on behalf of the religious organizations.

4

21.  Defendant LifeWay Christian Resources of the Southern Baptist Convention, formerly known as the Sunday School Board of the Southern Baptist Convention, is a Tennessee religious non-profit corporation ("LCR" or "LifeWay").

22.  The Southern Baptist Convention ("SBC") is the name of a religious body, and also the name of the annual meeting of messengers constituting that religious body.  It is also the name of the Georgia corporation which gave the religious body its corporate status.

23.  The Executive Committee of the Southern Baptist Convention ("ECSBC") is a Tennessee nonprofit public benefit religious corporation.

24.  The SBC religious body was created by the adoption of a Constitution on May 8, 1845.  It has from time to time amended the Constitution, and it has established Bylaws.

25.  Later in 1845, on December 27, the SBC religious body was established as a Georgia nonprofit religious corporation by virtue of an Act of the Georgia legislature.

26.  This corporation is not subject to modern Georgia nonprofit corporation statutes because of its incorporation by the legislature by a special Act which proceeded, and remained unaffected by, any such statutes.

27.  The SBC has officers.  It has as its members messengers from churches.  Those messengers constitute the SBC religious body's annual meeting in which the messengers act to govern the SBC religious body and the Georgia religious corporation. The SBC has no board of directors.

28.  The purposes of the SBC religious body and of the SBC religious corporation are identical, to wit: "eliciting, combining, and directing the energies of the denomination for the propagation of the gospel."

29.  The "denomination" is that of Southern Baptists.  The denomination consists of independent, autonomous churches which choose to act in friendly cooperation with the SBC, Baptist general bodies (the SBC, affiliated state conventions, and local associations), and ministries fostered by those churches, and Baptist general bodies.

30.  The SBC and ECSBC are religious organizations which claim and have consistently claimed their right to enjoy the protection of the First Amendment to the United States Constitution which assures the free exercise of their religion and which prohibits excessive entanglement by government in their internal affairs, including but not limited to their establishment of ecclesiastical rules by which they will govern themselves, and their sole right to interpret those ecclesiastical rules.

31.  Plaintiffs' Verified Third Amended Complaint contests the interpretation of the SBC By-Laws and ecclesiastical actions of SBC and ECSBC.  SBC and ECSBC (and LCR) assert their First Amendment right that prohibits civil courts from interfering with their own interpretation of ecclesiastical rules and their own governance.  SBC and ECSBC take the position that no action has or can be taken by them in regard to the sale of GCC by LCR according to their interpretation of their own ecclesiastical rules and governing documents .

32.  The ecclesiastical duties of ECSBC are described in SBC Bylaw 18.  That Bylaw explicitly declares, however, that "The Executive Committee shall not have authority to control or direct the several boards, entities, or institutions of the Convention.  This is the responsibility of trustees elected by the Convention and accountable directly to the Convention."

33.  One of the "entities" of the Convention, referred to in the quoted provision above and specifically identified in SBC Bylaw 14, is LifeWay Christian Resources of the Southern Baptist Convention (LCR).

34.  LCR is governed by its board of directors ("trustees").  Those directors are appointed by the SBC, which is the sole member of LCR.  (Articles 6 and 7)  The SBC has no rights or powers in regard to LCR except those which it exercises as the sole member of LCR.

35.  The SBC's rights and powers vis-à-vis LCR are enumerated in LCR's charter. (Article 6)  Those rights are only:  "to elect the trustees of the corporation; to remove the trustees of the corporation; to approve an amendment to the corporation's charter, to approve any merger by the corporation; to approve the sale, lease, exchange, or other disposition of all, or substantially all, of the corporation's property, not in the regular course of its activities; and to approve the dissolution of the corporation."  In all other respects, the board of directors of LCR governs the corporation.  (Article 7).

36.  This division of governance between the corporation's board and the corporation's member is allowed by the Tennessee Nonprofit Corporation Act.  Tennessee Code Annotated (T.C.A.) §48-51-101 et seq.

37.  The right of the sole member to approve the sale, lease, exchange, or other disposition of all, or substantially all, of the corporation's property, not in the regular course of its activities, is authorized by T.C.A. §48-62-102.

38.  The SBC has a right to approve a sale by LCR of its property only when the sale rises to the level of being "all or substantially all" LCR's property.

39.  ECSBC has no right of any kind to approve a sale by LCR of its property and has no role of any kind in the governance of LCR.

40.  LCR has sold portions of Glorieta Conference Center (GCC) from time to time, and each such sale occurred without the necessity of and without Convention approval.

41. In regard to the sale by LCR of that portion of GCC to the defendant Glorieta 2.0, Inc. effectuated by LCR by the execution and delivery to Glorieta 2.0 of the Special Warranty Deed on September 10, 2013, there was no necessity for Convention approval, nor right in the Convention to approve.

42. The SBC's general counsel specifically opined that the property being conveyed to Glorieta 2.0 belonged exclusively to LCR and that the SBC had no right to and was not required to approve the sale, the sale not rising to the level of a sale of "substantially all" of the property of LCR.

43. The SBC general counsel's opinion, issued originally orally, was reduced to writing on August 21, 2013. The directors of ECSBC and the SBC, in reliance on that opinion, took no action in regard to the sale which occurred September 10, 2013.

44. ECSBC and SBC have determined that LCR's sale of GCC was not prohibited under the ecclesiastical and governance rules of their religious organizations.

45. In regard to the original acquisition by LCR of ownership of that portion of the GCC which was the subject of that conveyance, that acquisition occurred by deed executed on behalf of ECSBC, and delivered by ECSBC on June 14, 1950 to the Sunday School Board of the Southern Baptist Convention, the Tennessee religious nonprofit corporation which subsequently changed its name to LifeWay Christian Resources of the Southern Baptist Convention.

46. At the SBC annual session in 1950, the Sunday School Board made a report, and the recommendation (No. 10) contained in that report was adopted by the SBC, in part to wit: "That the Convention authorize and instruct the Executive Committee of the Southern Baptist Convention to transfer to the Sunday School Board of the Southern Baptist Convention ... by proper deed of conveyance the said property being the same property conveyed by the Baptist

8

Convention of New Mexico to the Executive Committee of the Southern Baptist Convention by deed dated January 10, 1950 . ..."

47.  Since 1950 the SBC and LCR have operated on the basis that the Glorieta property was exclusively owned by the LCR and that the establishment of the Glorieta Assembly, and the conveyance to LCR of the real property owned by the ECSBC, were accomplished pursuant to the Convention's Constitution and Bylaws.

48.  The SBC understands that there are only three acts which its ecclesiastical rules require to be taken in two successive annual meetings.  Those are:  (1) To amend the Constitution; (2) To amend Bylaw 14 which names the "entities" of the Convention; and (3) To authorize a "new enterprise" or to discontinue ("abolish") an "entity" of the Convention.

49.  The SBC deems that there has never been anything related to Glorieta that involved any of these three acts.

50.  Neither Glorieta's establishment nor anything regarding its property has involved the amendment of the Constitution, the enumeration of the SBC's "entities," a "new enterprise," or the discontinuance of an "entity."

51.  The SBC understands its Constitution has not been amended and need not have been amended in regard to anything related to Glorieta.  The Convention understands that Glorieta Baptist Assembly is not an "entity" of the Convention and Bylaw 14 is irrelevant to all matters touching on Glorieta.  The Convention understands that the creation of Glorieta was not a "new enterprise."  The Convention understands that its ecclesiastical rule regarding the discontinuance of an entity of the Convention is irrelevant.

52.  In 1944, the Convention acted to transfer the property it owned in North Carolina, known as Ridgecrest Baptist Assembly, to the Sunday School Board of the Southern Baptist

Convention (the previous name of LCR).  The SBC did not deem this action triggered what is now Bylaw 25, and the "new enterprise" requirement of approval in two successive annual conventions.

53.  In 1949, and 1950, when the Convention acted to establish Glorieta Baptist Assembly, the SBC and ECSBC did not deem the event to be a "new enterprise."  The SBC and ECSBC do not presently deem, and have never deemed at any time, that the SBC Bylaw provision regarding "New Enterprises," was relevant to the establishment of this second Assembly at Glorieta by the actions of the 1949 and 1950 annual sessions, or to the SBC's directive to ECSBC to convey the property from ECSBC to LCR.

54.  The SBC and ECSBC never deemed the LCR's conveyance of the property from LCR to Glorieta 2.0 to be in any way relevant to the "new enterprise" provision of the SBC's bylaws.

55.  The Convention's interpretations of its own governing documents has consistently been that neither the "New Enterprise" provision presently at Section 25 of the Bylaws of the SBC, nor any other provision of any bylaw or of the SBC Constitution, was violated on any occasion in regard to Glorieta.  The Convention has always been of the opinion, and remains of the opinion, that its governing documents have been fully complied with in regard to Glorieta. The Executive Vice President and General Counsel of the ECSBC expressed that opinion as general counsel of the ECSBC, and the directors of ECSBC have relied on that opinion.

56.  Neither the SBC nor the ECSBC has played any role in any lease, and has no rights or duties in regard to any lease, which may have been entered into between the plaintiffs and LCR.

10

57.   Neither the SBC nor the ECSBC has played any role in regard to any options which may have been offered to plaintiffs, as lease holders, and neither has any rights in regard to that matter and have no duty to the Plaintiffs in that regard.

58.   The Plaintiffs have no relationship whatsoever with the SBC or the ECSBC, whose ecclesiastical rules the Plaintiffs would have the Court interpret in a manner contrary to the interpretation of the SBC and ECSBC, and then enforced by decree of the Court.

59.   At no time prior to the anticipated sale by LCR of its Glorieta property, have the Plaintiffs made any assertion to the SBC or to the ECSBC of Plaintiffs' opinion that the lease which Plaintiffs' entered into for a portion of that property was void or fraudulently made by LCR, or that LCR had misrepresented its ownership of the property, or that the SBC had violated its ecclesiastical rules when it determined it would establish Glorieta, or when it directed ECSBC to convey to LCR the Glorieta property.

60.   LCR opened the Glorieta Conference Center (GCC) in 1952 and over the years primarily operated the GCC as a religious retreat and related activities.  For a number of years, the operation and maintenance of the GCC has been a substantial financial drain on the resources of LifeWay.  The GCC has only achieved financial break even once in the last twenty-six years. During the last ten years financial losses have averaged $1,123,000 annually.  For fiscal year 2013 the loss is projected to total approximately $1,600,000.  For many years, multiple ideas and concepts were explored to try to bring the Conference Center up to a break even financial situation.  Those efforts were unsuccessful.  About four years ago, significant cutbacks were initiated and the days and months of operation were curtailed.  Notwithstanding these cost-saving efforts, the financial drain of the Glorieta Conference Center has approximated $1.5 million per year for the past 4 years.

61.  The current infrastructure of buildings, roadways, water systems, and wastewater treatment systems now require significant maintenance and upgrading.  Further investment in the operation of the GCC was not considered prudent.

62.  The recommendation to pursue options to dispose of the GCC was presented to LifeWay trustees in a September 2011 meeting and was approved.

63.  LifeWay desired that ministry continue at the property if possible.  It was recognized that any new owner would need to spend a significant amount of funds on needed maintenance and infrastructure repairs if this were to be possible.

64.  Negotiations began with the group that would later form Glorieta 2.0, Inc., a New Mexico nonprofit corporation.  Glorieta 2.0, Inc. committed to immediately make almost $10,000,000 of improvements to the property to assure viability of continued operation as a Christian youth camp and retreat center.

65.  After many months of effort and because of the commitment of Glorieta 2.0, Inc. to continue ministry at the location, a decision was reached to convey the GCC to Glorieta 2.0, Inc. for $1.00.

66.  The motion to sell the campus to Glorieta 2.0, Inc. was approved unanimously by LCR trustees in June of 2013.

67.  The general counsel for LCR has opined and stated in sworn testimony that the actions of LCR in selling the property were consistent with the requirements of the religious organizations identified in this lawsuit.

68.  By the Stipulated Order of Dismissal (Doc. 102) all but 11 other remaining Defendants were dismissed with prejudice by the Plaintiffs.

69. The Court twice directed Plaintiffs to amend their Verified Amended Complaint to comply with the Federal Rules of Civil Procedure and clearly identify the Defendants against whom each claim is directed and; to state what each Defendant allegedly did together with facts supporting Plaintiffs' claims against (and personal jurisdiction over) each of the individual Defendants.

70.  Plaintiffs' Verified Third Amended Complaint does not comply with these orders. Plaintiffs have failed to state which claims are directed against which Defendants; they have not stated what each Defendant did; they have not alleged facts supporting Plaintiffs' claims against the individual Defendants; and they have not identified any basis for exercising personal jurisdiction over those individual Defendants who have challenged this Court's personal jurisdiction.

71.  Count I of the Verified Third Amended Complaint is directed at alleged violations of the Southern Baptist Convention's corporate charter, constitution, and bylaws.

72.  In Count I, Plaintiffs allege that Defendants Rainer, Rhyne, and Cannon, committed acts of fraud and negligence while working in concert with other Defendants, but they do not actually identify any particular acts of fraud or negligence allegedly committed by these Defendants.

73.  In Count I, Plaintiffs also allege that Defendants Weekley, Looper, and Russo conspired and assisted with the fraud, but do not explain with particularity the circumstances constituting fraud.

74.  Plaintiffs' allegations of fraud in Count I do not set forth the time, place, or contents of any fraudulent misrepresentations allegedly made by Messrs. Rainer, Rhyne, Cannon, Braswell, Weekley, Russo, and Looper.

75.   With respect to the allegations of fraud and negligence in Count I, Federal Rule of Civil Procedure 8(a)(2) provides that a plaintiff's complaint "must contain … a short and plain statement of the claim showing the pleader is entitled to relief." A complaint must contain enough allegations of fact "to state a claim that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

76.   Plaintiffs have not satisfied these standards with respect to the individual LifeWay and Glorieta 2.0 Defendants. Count I of the Verified Third Amended Complaint contains only conclusory allegations that these individuals have committed fraud or negligence. The Verified Third Amended Complaint contains no factual allegations whatsoever explaining the time, place, and contents of the false representations allegedly made by Defendants Rainer, Rhyne, Cannon, Braswell, Weekley, Looper, and Russo as asserted in Count I. With respect to the negligence allegations in Count I, Plaintiffs do not allege that Defendants Rainer, Rhyne, Cannon, Braswell, Weekley, Looper, and Russo owed a duty to anyone, and do not allege how, why, when, or where they might have breached a duty of care to anyone.

77.   Count I also fails to allege essential elements, and requests relief not allowed by law. With respect to the fraud allegations in Count I, the Verified Third Amended Complaint fails to allege that individual Defendants acted with any intent to deceive Plaintiffs, and fails to allege that Plaintiffs relied to their detriment based on any alleged false statements of fact made by these individuals. Because intent to deceive and detrimental reliance on false statements of fact are essential elements of a fraud claim under New Mexico law, Plaintiffs' fraud claim fails.

14

78.  Count I is ambiguous.  Plaintiffs appear to be requesting emotional distress damages as a result of the alleged fraud. See (Doc. 125, at ¶ 13) (alleging that Defendants' acts caused Plaintiffs "severe anxiety").  Under New Mexico law, emotional distress damages may not be recovered for fraud.

79.  Count II of the Verified Third Amended Complaint is a claim for "fraudulent conveyance."

80.  In Count II, Plaintiffs name only Defendants Rainer, Rhyne, Cannon, and Weekley as Defendants for "fraudulent conveyance." It is unclear whether Count II is directed at Defendants Braswell, Looper, and Russo.

81.  Assuming that Count II is directed against all of these Defendants, it fails because it does not contain any factual content that would allow one to draw a reasonable inference that these Defendants should be held liable for the alleged fraudulent conveyance.  Count II does not identify the time, place, or contents of any allegedly false statements made by these Defendants.

82.  Count III of the Verified Third Amended Complaint is labeled as a claim for breach of implied contract.

83.  In Count III, Plaintiffs only mention Defendants Rainer, Rhyne, Weekley, and Cannon, and it is unclear whether Count III is also directed at Defendants Braswell, Looper, and Russo.

84.  Assuming that Count III is directed at all of these Defendants, it fails because it contains no factual allegations describing how these individuals might have been involved in the supposed breaches of the alleged "implied contract." Count III does not allege that these Defendants were parties to the lease contract between LifeWay and Plaintiffs; it does not allege these Defendants made any statements that could have reasonably caused Plaintiffs to believe

15

that an implied contract existed; and it does not explain what part these Defendants played in any claim for breach of any implied contract.

**B.  Claim for Relief under Count III of Verified Third Amended Complaint (Breach of Implied Contract)**

85.  Plaintiffs' only connection with the Glorieta Conference Center (GCC) was as a groundlease tenant under a lease agreement that expired of its terms September 30, 2013.

86.  Plaintiffs seem to allege that two implied contracts existed between them and LifeWay, and that LifeWay breached those implied contracts.

87.  Under New Mexico law, an implied contract is created only where a defendant creates a "reasonable expectation" in the plaintiff, and the reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation or conduct relied upon.

88.  A plaintiff's vague impression, general feeling, or hope is insufficient to support the creation of an implied contract.

89.  Language constituting a declaration of defendant's general approach to the subject matter discussed is likewise insufficient to support an implied contract.

90.  Plaintiffs allege that an implied contract arose in 1960 or at some point thereafter, the gist of which prohibited LifeWay from selling Glorieta Conference Center absent the vote of two consecutive annual meetings of the SBC.

91.  This claim fails to satisfy Federal Rule of Civil Procedure 8(a)(2).  Plaintiffs have failed to allege sufficient facts in Count III that would permit this Court to determine that their claim is plausible – they do not describe any conduct or statements on LifeWay's part that could have led Plaintiffs to believe that LifeWay could not sell the Glorieta Conference Center without the permission of two annual meetings of the SBC.

16

92.   Plaintiffs may be alleging a second implied contract based on statements that a LifeWay representative made to the press in 2009, when LifeWay announced changes in the operation of Glorieta Conference Center. At that time, Byron Hill, LifeWay's executive director of conference operations, stated "We've been here for more than 50 years and we believe the changes we are making will position Glorieta for the next 50 years."

93.   Mr. Hill's remarks could not have created a reasonable expectation in Plaintiffs of a contractual right to continue leasing the lot that they formerly leased at Glorieta Conference Center.  Mr. Hill's remarks could not have created an implied contract under New Mexico law because they were merely an expression of his personal opinions.

94.   Mr. Hill's remarks did not make any commitment to renew Plaintiffs' lease.

95.   Plaintiffs' implied contract theories are contradicted by the terms of the written leases between Plaintiffs and LifeWay. The five-year lease in effect from October 1, 2006 through September, 20, 2011 provided that the decision whether to renew the lease was at LifeWay's sole option; that neither LifeWay nor any of its agents had made any promise or commitment that the lease would be renewed; and that the lease could only be modified in writing.

96.   The terms of the last Lease Agreement between LifeWay and Plaintiffs expressly contradict any asserted "implied contract" claim of Plaintiffs that they are entitled to further indefinite lease extensions.  The Lease Agreement expressly states it is fully integrated agreement representing the final and entire understanding of the parties.  The sole interest of Plaintiffs at the Glorieta Conference Center was as lessee under a ground lease (Lease Agreement) they executed with LifeWay.  The effective date of the last Lease Agreement was October 1, 2012 for a one-year term ending September 30, 2013.  The last Lease Agreement

further contains the following express acknowledgement between the parties regarding any future lease of the premises:

> "17.e.  Acknowledgement Regarding Future Lease of Premises. This Lease may, at Glorieta's sole option, be nonrenewable and permanently lapse upon expiration or earlier termination hereof. Lessee acknowledges that neither Glorieta nor any agent of Glorieta has made any promise or commitment whatsoever regarding any continuation or extension of this Lease or issuance of any new Lease subsequent to the expiration or earlier termination hereof." [Doc. 31-2, Ex. 3, ¶ 17.e]

Exhibit 4 to the Rhyne Affidavit [Doc. 31-2] is a copy of the letter sent to Plaintiff on September 11, 2013 confirming that LifeWay would not extend or renew the current Lease Agreement that expired September 30, 2013.  The Lease Agreement expired by its terms effective October 1, 2013.  Plaintiffs therefore by the express terms of the Lease Agreement have no right or interest in the lot they previously leased and any asserted "implied contract" for further extensions or renewals cannot contradict these express written provisions.

97.  Plaintiffs' claims that they have an implied contract that would allow them to indefinite extensions of their lease based on alleged statements made by representatives of LifeWay prior to the last Lease Agreement fail because the alleged implied contract terms would contradict the express terms of the integrated last written lease agreement.

98.  Any claims of Plaintiffs that they are entitled to further lease extensions of the expired lease or that they are entitled to lease their former lot under any basis is barred by reason of the statute of frauds, because Plaintiffs' allegations involve a claimed interest in real estate, which by law must be evidenced in writing.

99.  Plaintiffs have not produced, or even alleged the existence of, any writing signed by LifeWay evidencing any agreement for further lease extensions.

18

100.  Plaintiffs repeatedly entered into written leases which provided that LifeWay was under no obligation whatsoever to renew them. Plaintiffs are now attempting to rewrite the terms of those written leases. The Statute of Frauds is intended precisely to preclude this sort of claim.

101.  Plaintiffs stated in open court at the hearing of June 19, 2014 that "this lawsuit is not about the lease."  Plaintiffs have abandoned any claims based on their prior lease of their lot.

102.  In Count III, Plaintiffs also alleged that Defendants Jerry Rhyne and David Weekley committed "violations of Constitutional Rights and New Mexico State Statutes," and earlier they also seem to assert a claim under 42 U.S.C. § 1983.

103.  Plaintiffs' claims do not satisfy Rule 8(a)(2) because they do not identify what constitutional rights or state statutes Mr. Rhyne or Mr. Weekley allegedly violated, and do not allege any facts to support an inference that Mr. Rhyne or Mr. Weekley were state actors. In addition, these allegations violate the Court's Second Order for More Definite Statement," in which this Court warned Plaintiffs that alleging violations of the "United States Constitution and United States Code" was "entirely too broad" to provide proper notice to Defendants."

104.  In Count III, Plaintiffs also alleged that after LifeWay announced its intention to sell Glorieta Conference Center, Plaintiffs wrote letters to the LifeWay Defendants informing them of what Plaintiffs believed to be their obligations, but that the LifeWay Defendants ignored the letters and did not "negotiate with clean hands."  These allegations do not state a cognizable claim because Plaintiffs have not identified any legal basis for requiring Defendants to answer Plaintiffs' letters or to negotiate with them.

105.  In Count III, Plaintiffs assert that LifeWay's sale of the Glorieta Conference Center to Glorieta 2.0, Inc. violated several New Mexico and Tennessee statutes.  Plaintiffs lack

standing to raise these claims. They have no ownership interest in the land that was sold, and no ownership interest in either LifeWay or Glorieta 2.0, Inc.

106.   The claims also lack merit. Plaintiffs allege that the sale violated the New Mexico and Tennessee versions of the Uniform Fraudulent Transfer Act.  But that Act exists to prohibit debtors from conveying their property to third persons in order to avoid obligations to their creditors.  Plaintiffs do not allege that they are a creditor of LifeWay, so the Act is not implicated. This claim should be dismissed for failure to state a claim.

107.   Plaintiffs next allege that Defendants have violated the New Mexico and Tennessee versions of the Uniform Commercial Code.  Plaintiffs do not explain how the sale could have violated the Uniform Commercial Code, which does not apply to real estate transactions.  This claim should be dismissed for failure to state a claim.

108.   Plaintiffs also allege that Defendants violated New Mexico Stat. Ann. 1978, § 30-16-6, a criminal statute proscribing fraud.  In New Mexico criminal statutes do not create a private right of action unless the legislature includes express language to do so. Plaintiffs have not identified any allegedly fraudulent misrepresentations, so this allegation also fails to satisfy Federal Rule of Civil Procedure 9(b).

109.   At the hearing of June 19, 2014, Plaintiff Kirk Tompkins made a statement that these Defendants engaged in a pattern of deception like a "shell game."  He later advised the Court that he withdrew his "shell game" commentary.  Plaintiffs have abandoned any purported claims against these Defendants for money laundering, racketeering, Florida corporations, condominiums, conspiracies, etc. (i.e., the "shell game").  There is no basis in fact for such allegations against these Defendants.

## CONCLUSIONS OF LAW

110.  The Court lacks jurisdiction as to all Defendants over the claims in the Verified Third Amended Complaint (except Count III) because Plaintiffs have no standing to assert such allegations.  Therefore, Counts I and II of the Verified Third Amended Complaint should be dismissed with prejudice.

111.  The Court lacks jurisdiction to hear the matters in the Verified Third Amended Complaint by reason of the First Amendment's religion clauses and the Verified Third Amended Complaint should be dismissed with prejudice.

112.  Because the Verified Third Amended Complaint falls far short of the requirements of Rule 8(a)(2) and Rule 9(b), fails to comply with the pleading standards of Twombly and Iqbal, and fails to allege essential elements of certain claims, Plaintiffs' claims against Defendants Thom Rainer, Jerry Rhyne, Larry D. Cannon, Terry S. Braswell, David Weekley, Leonard Russo, and Terry Looper should be dismissed with prejudice under Rule 12(b)(6).

113.  Count III in the Verified Third Amended Complaint should be dismissed with prejudice based on the pleadings and other undisputed facts of record. Plaintiffs have failed to identify any statements or conduct that would support the existence of an implied contract. The implied contract theory asserted fails because under either Tennessee or New Mexico law (the only two possible state laws governing that claim), the asserted implied contract claims are invalid because they contradict the express terms of the Lease signed and entered into between Plaintiffs and LifeWay.

114.  Furthermore, as to Count III of the Verified Third Amended Complaint, any claims of Plaintiffs that they are entitled to extensions of the expired lease, or any other claims that they

are entitled to lease the property covered by the expired lease, are barred by reason of the statute of frauds and the same should be dismissed with prejudice.

115.  Plaintiffs' vague allegations in Count III (which is labeled as a breach of implied contract claim) that Defendants violated unspecified constitutional provisions and New Mexico state laws should be dismissed with prejudice for failure to state a claim. The claims that Defendants violated the New Mexico and Tennessee versions of the Uniform Fraudulent Transfer Act, the Uniform Commercial Code, and a New Mexico criminal statute should also be dismissed with prejudice for failure to state a claim.

116.  Plaintiffs have abandoned any claims pertaining to the Lease, and have abandoned all claims related to the purported "shell game" and to the extent any such claims have been asserted, they should be dismissed with prejudice.

## II.
### MOTION TO STRIKE PLAINTIFFS' VERIFIED
### THIRD AMENDED COMPLAINT AS A SANCTION (Doc. 136)

### FINDINGS OF FACT

1.  At all times material hereto, Kirk and Susie Tompkins (hereinafter "the Tompkins") were Lessees of Block 1, Lot No. 71 in the LifeWay Glorieta Conference Center Grounds, Santa Fe County, New Mexico, for the period of October 1, 2012 through September 30, 2013.

2.  At all times material hereto, Kirk and Susie Tompkins were Lessees of Block 1, Lot No. 71 in the LifeWay Glorieta Conference Center Grounds, Santa Fe County, New Mexico, for the period of October 1, 2011 through September 30, 2012.

3.  At all times material hereto, Kirk and Susie Tompkins were Lessees of Block 1, Lot No. 71 in the LifeWay Glorieta Conference Center Grounds, Santa Fe County, New Mexico, for the period of October 1, 2006 through September 30, 2011.

4.   Each of the leases contained the following terms:

This Homeowner Lease Agreement ("Agreement") is made and entered into by and between LifeWay Christian Resources of the Southern Baptist Convention, a nonprofit corporation organized under the laws of the State of Tennessee, and doing business in connection herewith as LifeWay Glorieta Conference Center, hereafter designated as "Glorieta", and the above named "Lessee."

* * *

13.   Expiration and Termination Agreement.  This Agreement will expire on the date indicated above unless the Lessee (all persons listed as Lessee if more than one) becomes deceased, at which time the Agreement will expire immediately.  The decision to allow lessee to renew the Agreement under the same or different terms is at the sole option of Glorieta.

* * *

14.   Surrender upon Termination.  Upon the expiration or termination of this Agreement, Lessee agrees to surrender all right, claim, and interest in the Premises and to deliver immediate possession of the Premises and the improvements thereon.  Glorieta, at its option, shall have the right to purchase the improvements on the Premises.  In the event the parties cannot agree upon the value of such improvements, the value shall be fixed by a board of two (2) appraisers, one to be selected by Glorieta and one by Lessee, and if said two appraisers cannot agree on the value or compensation, then the matter of value or compensation shall be referred to an arbiter or umpire to be appointed by said two appraisers, for determination and decision, and the decision of said arbiter or umpire shall be final and conclusive and binding on both parties.  If Glorieta does not exercise its option to purchase the improvements, Lessee agrees to remove said improvements from the Premises within six (6) months, and upon failure to do so Lessee shall surrender and forfeit all right, title and claim to the premises and facilities, and said improvements and facilities shall become the absolute property of Glorieta.

* * *

17.   Miscellaneous

* * *

d.   Merger; Modification.   This Agreement and the attachments hereto contain the final and entire understanding of the parties regarding the subject matter hereof, supersedes all prior written and oral agreements, and may be modified only by writing executed by all parties hereto.

e.    Acknowledgement Regarding Future Lease of Premises.
This Lease may, at Glorieta's sole option, be nonrenewable and
permanently lapse upon expiration or earlier termination hereof.  Lessee
acknowledges that neither Glorieta nor any agent of Glorieta has made any
promise or commitment whatsoever regarding any continuation or
extension of this Lease or issuance of any new Lease subsequent to the
expiration or earlier termination hereof.

5.   By early September, 2013, the Tompkins personally knew and were aware that LifeWay was planning to sell most or all of the Glorieta Conference Center grounds to Glorieta 2.0, Inc., a corporation, for operation as a Christian youth camp.

6. On September 4, 2013, Kirk Tompkins and Susie Tompkins, acting pro se, filed their Verified Complaint against approximately 127 named Defendants, seeking to stop the sale of any of the Glorieta Conference Center property.   The Complaint also sought a Temporary Restraining Order and Preliminary Injunction to stop the planned sale to Glorieta 2.0, Inc.

7.   The named Defendants in the original Verified Complaint included past and present directors of LifeWay, directors of Glorieta 2.0, Inc., the Southern Baptist Convention, its Executive Committee and officers.

8. On or about September 10, 2013, LifeWay executed and delivered a Special Warranty Deed conveying most of the Glorieta Conference Center grounds to Glorieta 2.0, Inc.  However, the deed did not include transfer of Block 1, Lot No. 71 (the real estate still then leased to the Tompkins), which LifeWay retained.

9.  On or about September 11, 2013, LifeWay informed the Tompkins that it would not be renewing the Tompkins' Lease when it expired on September 30, 2013. LifeWay also announced that it did not wish to purchase the structure (a small house) on the leased lot.  As provided by the lease, the Tompkins had six months after September 30, 2013, to remove improvements from the premises if they chose to do so.

24

10.   On September 18, 2013, the Tompkins filed their Verified Amended Complaint and Motions for Temporary Restraining Order and Preliminary Injunctive Relief For Protection From Unlawful Sale and Disposition and Breach of Quiet Enjoyment. The Amended Complaint sought to invalidate the sale to Glorieta 2.0, Inc.  Also, it sought damages of $300,000 because of loss of quiet enjoyment of their leased lot, based on a 2009 story in the Baptist Press, which stated: "'There have been some rumors and erroneous reports out there that Glorieta is closing,' said (Byron) Hill, LifeWay's executive director of conference centers.  'Nothing could be further from the truth.  We are making changes that adjust the way we operate Glorieta, but nothing about our ministry or the mission will change.  We've been here for more than 50 years and we believe the changes we are making will position Glorieta for the next 50 years.'"  There were approximately 131 named Defendants.  On September 20, 2013, the Court entered an Order providing that the "merits of the Petition are held in abeyance until Plaintiff has served the Verified Amended Complaint and Motions for Temporary Restraining Order and Preliminary Injunctive Relief for Protection from Unlawful Sale and Disposition and Breach of Quiet Enjoyment (Doc. 16) and Petition the Court for Emergency Hearing for Temporary Restraining Order (Doc. 18) on all Defendants that have been sued . . . and Defendants have had a reasonable opportunity to respond. . . ." (Doc. 20).

11.   On November 21, 2013, the Tompkins agreed to an order dismissing 113 of the Defendants.

12.   However, the Tompkins specifically declined to dismiss the following Defendants:

- Travis Best
- D. August Boto
- Terry Braswell
- Charles "Craig" Carlisle
- Larry D. Cannon
- Terry Looper

- Frank S. Page
- Thom Rainer
- Jerry Rhyne
- Leonard Russo
- David Weekley
- The Executive Committee of the Southern Baptist Convention
- The Southern Baptist Convention
- LifeWay Christian Resources of the Southern Baptist Convention
- Glorieta 2.0, Inc.

13.  On March 24, 2014, the Court entered an Order For More Definite Statement (Doc. 122), which provided, in part:

> In this case, Plaintiffs appear to raise fraud as a claim. Fraud allegations have special pleading requirements.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

<u>Individual Defendants</u>

The individual Defendants who are currently party to the litigation are:

1.    David Weekley, a director of Glorieta 2.0, Inc., a resident of Texas (Doc. 77-1).

2.    Leonard Russo, a director of Glorieta 2.0, Inc., a resident of Texas (Doc. 60-1).

3.    Terry Looper, a director of Glorieta 2.0, Inc., a resident of Texas (Doc. 60-2).

4.    Thom Rainer, President of Lifeway Christian Resources of the Southern Baptist Convention, a citizen of Tennessee (Doc. 120-1).

5.    Jerry Rhyne, Chief Financial Officer of Lifeway Christian Resources of the Southern Baptist Convention, a citizen of Tennessee (Doc. 120-1).

6.    Larry D. Cannon, General Counsel and Corporate Secretary of Lifeway Christian Resources of the Southern Baptist Convention, a citizen of Tennessee (Doc. 120-1).

7.    Terry S. Braswell, a Trustee of Lifeway Christian Resources of the Southern Baptist Convention, a citizen of Georgia (Doc. 69-1).

8.    Travis Best, a citizen of Idaho (Doc. 120-1).

9.    Charles "Craig" Carlisle, a citizen of Alabama (Doc. 120-1).

10.    Frank S. Page, President and Chief Executive Officer of the Executive Committee of the Southern Baptist Convention, a citizen of Tennessee (Doc. 119).

11.     D. August Boto, Executive Vice President and General Counsel of the Executive Committee of the Southern Baptist Convention, a citizen of Tennessee (Doc. 119).

For each of these individual Defendants, Plaintiffs must amend their Complaint to state what "defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated," consistent with *Nasious*, 492 F.3d 1158, 1163 (10th Cir. 2007).   Plaintiffs must limit their allegations to what any individual Defendant did to Plaintiffs, and not digress into any allegation of what any individual Defendant did to any other party who is not a named plaintiff.  Any supporting affidavits must state with specificity what Defendants did to Plaintiffs, not what any Defendant did to the affiant.

Additionally, Plaintiffs must separately state the basis for the Court's personal jurisdiction over each of these individual Defendants.  Several individual Defendants (Russo, Looper (Docs. 60), Braswell (Doc. 69), and Weekley (Doc. 77)) have asserted that the Court does not have personal jurisdiction over them, and Plaintiff has not responded to this argument.   None of the eleven (11) individual Defendants are citizens of New Mexico, thus the Court requires that Plaintiffs provide some basis for the Court asserting personal jurisdiction over them.

Plaintiffs have chosen to sue individuals associated with various entities, and those same entities.   In preparing the Amended Complaint, Plaintiffs are requested to pay close attention to their allegations, and to the best of Plaintiffs' abilities, make clear what Plaintiffs allege any one of the individual Defendants did as individuals to harm Plaintiffs, versus any allegations that are more appropriately directed at the institutional Defendants.

If Plaintiffs wish to voluntarily dismiss any or all individual Defendants, such dismissal will constitute compliance with this Order for More Definite Statement as to the dismissed Defendant.  Plaintiffs may file a short and simple notice of voluntarily dismissal and state the name of the individual Defendant(s) Plaintiffs wish to dismiss from the litigation. Once a notice of voluntary dismissal is filed regarding a Defendant, Plaintiffs will be relieved of their obligation to explain what that Defendant did to Plaintiffs, when they did it, how the action harmed Plaintiffs, what legal right Plaintiffs believe that Defendant violated, and how the Court has personal jurisdiction over that Defendant.

<u>Institutional Defendants</u>

The individual Defendants who are currently party to the litigation are:

1.     The Executive Committee of the Southern Baptist Convention
2.     The Southern Baptist Convention

   3.    LifeWay Christian Resources of the Southern Baptist Convention
   4.    Glorieta 2.0, Inc.

        As above, Plaintiffs must amend their Complaint to state what each
   institutional Defendant did to Plaintiffs, when the Defendant did it, how the
   Defendant's action harmed Plaintiffs, and what specific legal rights the Plaintiffs
   believe the Defendant violated.  If Plaintiffs determine that it is appropriate to
   dismiss any institutional Defendant, Plaintiffs may do so and then be relieved of
   their obligation to supply a more definite statement for any dismissed Defendant.

        Plaintiffs must file their Amended Complaint with a more definite
   statement on or before April 8, 2014.  "If the court orders a more definite
   statement and the order is not obeyed within 14 days after notice of the order or
   within the time the court sets, the court may strike the pleading or issue any other
   appropriate order." Fed. R. Civ. P. 12.

   14.  On April 8, 2014, the Tompkins filed their Verified Second Amended Complaint and

Motions for Temporary Restraining Order and Preliminary Injunctive Relief.  It sought to

invalidate the sale to Glorieta 2.0, Inc. and damages of $430,000 because of loss of their personal

dwelling.  It had several hundred pages of attachments (Doc. 123), the majority of which seemed

irrelevant to these proceedings.

   15.  On April 11, 2014, the Court *sua sponte* entered a Second Order for More Definite

Statement (Doc. 124).  It provided, in part:

        After reviewing the Second Amended Complaint (Doc. 123), the Court
   concludes that a more definite statement is necessary to address Plaintiffs' claims
   as to each and every individual and institutional Defendant.  Despite its length,
   the Verified Second Amended Complaint does not clearly state what cause of
   action Plaintiffs wish to pursue against each named Defendant.  Plaintiffs do
   enumerate claims, but it is still not entirely clear what legal right Plaintiffs are
   pursuing under each count and which Defendant(s) allegedly violated the legal
   right in question.

        For Count I, Plaintiffs allege "Violations Corporate Charter, By-Laws and
   Subterfuge" (Doc. 123 at 10-22).  Since this Count covers 12 pages and mentions
   various Defendants, the Court requests that Plaintiffs amend so that the heading of
   Count I lists each and every Defendant who Plaintiffs allege violated the
   corporate charter and by-laws and who committed subterfuge so that those
   Defendants are on notice to respond to Count I.  Simple sentences may assist
   Plaintiffs in making their allegations, such as "Defendant X violated

_____by _____." Plaintiffs are reminded that every detail need not be repeated in a complaint since a complaint is only the beginning of a lawsuit and not the proof stage; a short and plain statement will suffice.

For Count II, Plaintiffs allege "Fraudulent Conveyance" (Doc. 123 at 23-29) and again mention various Defendants, but it is difficult to decipher whether a Defendant is mentioned as background or if Plaintiffs are alleging that every Defendant mentioned under Count II fraudulently conveyed something.   The Court requests that Plaintiffs amend so that the heading of Count II lists each and-every Defendant who Plaintiffs-allege fraudulently conveyed something.  Under Count II, Plaintiffs appear to raise fraud as a claim.  Fraud allegations have special pleading requirements.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

For Count III, Plaintiffs allege "Inurement" (Doc. 123 at 29-30).  Plaintiff must amend so that the heading lists each and every Defendant who Plaintiffs allege is liable for inurement and the action(s) that makes that Defendant liable for inurement.

For Count IV, Plaintiffs allege "United States Constitution and United States Code" (Doc. 123 at 32-33).  This is entirely too broad in order to provide Defendants notice of the allegations against them.  Plaintiffs must amend Count IV to state with specificity what right given by the United States Constitution has been violated and must name each and every Defendant who allegedly violated that right or provision of the United States Constitution so that the appropriate Defendant can formulate a response.  If Plaintiffs also contend that Defendants have violated United States Code, which is voluminous, Plaintiffs must state which part of the Code, or at the very least, the specific legal principle that Defendants violated and also name the Defendant(s) who violated that section of the Code.  The Code occupies many shelves in the law library, and the Court cannot spend its time guessing as to what part of the Code Plaintiffs allege any particular Defendant violated.  It is insufficient for Plaintiff state general legal principles elsewhere in the Second Amended Complaint (Doc. 123 at 36-39) without linking those laws to what a specific Defendant did to violate Plaintiffs' rights.

Count V is a request for injunctive relief rather than a claim that any Defendant violated any legal right and as such the Court will hold the request in abeyance until Plaintiffs' claims against Defendants are more clear.

<u>Personal Jurisdiction Over Individual Defendants</u>

In the previous Order for More Definite Statement (Doc. 122), the Court instructed Plaintiffs to separately state the basis for the Court's personal

jurisdiction over each of the individual Defendants.   Several individual Defendants, (Russo, Lower (Docs. 60), Braswell Doc. 69), and Weekley. (Doc. 77)) have asserted that the Court does not have-personal jurisdiction over them, and Plaintiff has not responded to this argument.   None of the eleven (11) individual Defendants are citizens of New Mexico, thus the Court requires that Plaintiffs provide some basis for the Court asserting personal jurisdiction over them.  The Second Amended Complaint mentions jurisdiction (Doc. 123 at 7) and proceeds to list the individual Defendants, but there is still not any basis for the Court's personal jurisdiction over these individuals.  The Court cautions Plaintiffs that the Court may dismiss individual Defendants without further notice to Plaintiffs if Plaintiffs cannot provide a basis for the Court's jurisdiction.

Plaintiffs are reminded that they may voluntarily dismiss any or all individual Defendants, and/or Plaintiffs may voluntarily dismiss any or all institutional Defendants, and such dismissal would constitute compliance with the Court's Second Order for More Definite Statement as to any Defendants voluntarily dismissed by Plaintiffs.

<u>Next Steps</u>

Plaintiffs must file their Third Amended Complaint with a more definite statement on or before April 25, 2014.   "If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order." Fed. R. Civ. P. 12.

16.  The Verified Second Amended Complaint and Motions for Temporary Restraining Order and Preliminary Injunctive Relief was a major violation of the Court's Order for More Definite Statement.  (Doc. 122).

17.  On April 17, 2014, the Plaintiffs filed a Verified Third Amended Complaint (Doc. 125) and Motions for Temporary Restraining Order and Preliminary Injunctive Relief.   The Third Amended Complaint alleged that the conveyance to Glorieta 2.0, Inc., violated LifeWay's Corporate Charter, Constitution and Bylaws, was also fraudulent and that the Tompkins had an implied contract for a renewal of their now expired lease, which had been breached causing damages of over $430,000.  It named 16 Defendants and had 58 pages of attachments.

18.   Count I of the Verified Third Amended Complaint was a rambling generalized protest of the sale of property in which the Tompkins had no legal interest.

19.   In Count I, paragraph 11 alleged that the sale was a violation by all Defendants of LifeWay's corporate charter, constitution and bylaws, but paragraph 13 only alleged that "individual Defendants Rainer, Boto, Rhyne, Page, Cannon, Best, Carlisle, and Brasswell [sic] worked in concert with 'SBC', its entities 'LifeWay', 'EC', and 'LifeWay, Inc.' as created in 2013, and during the years of 2009-2013 said Defendants did pursuant to their conducts of false representations of facts, willful, wanton and/or gross negligence did ignore the 'SBC Charter Constitution and Bylaws. . . .'"  Paragraph 14 alleged that "Individual Defendants Rainer, Boto, Thyne, Page, Cannon, Best, Carlisle, and Braswell and Institutional Defendants 'SBC', 'LifeWay', 'EC', and 'LifeWay Inc.' should be held separately and individually responsible for the fraudulent liquidation of 'GCC' to co-conspirator Glorieta 2.0, Inc. who without 'G2.0' assistance by and through its Directors, Defendants Weekly, Looper, and Russo, the $150,000,000.00 asset known as Glorieta Conference Center. . . ."

20.   In Count I, Plaintiffs allege that Defendants Rainer, Rhyne, and Cannon, committed acts of fraud and negligence while working in concert with other Defendants, but they do not actually identify any particular acts of fraud or negligence committed by these Defendants.

21.   In Count I, Plaintiffs also allege that Defendants Weekley, Looper, and Russo conspired and assisted with the fraud, but do not explain how they did so.

22.   Count I of the Verified Third Amended Complaint contains only conclusory allegations that these individuals have committed fraud or negligence. The Verified Third Amended Complaint contains no factual allegations whatsoever explaining the time, place, and contents of the false representations allegedly made by Defendants Rainer, Rhyne, Cannon,

Braswell, Weekley, Looper, and Russo as asserted in Count I. With respect to the negligence allegations in Count I, Plaintiffs do not allege that Defendants Rainer, Rhyne, Cannon, Braswell, Weekley, Looper, and Russo owed a duty to anyone, and do not allege how, why, when, or where they might have breached a duty of care to anyone.

23. Count I also fails to allege essential elements, and requests relief not allowed by law. With respect to the fraud allegations in Count I, the Verified Third Amended Complaint fails to allege that individual Defendants acted with any intent to deceive Plaintiffs, and fails to allege that Plaintiffs relied to their detriment based on any alleged false statements of fact made by these individuals. Because intent to deceive and detrimental reliance on false statements of fact are essential elements of a fraud claim under New Mexico law, Plaintiffs' fraud claim fails.

24. The Verified Third Amended Complaint did not amend Count II so that the heading "lists each and every Defendant who Plaintiffs allege fraudulently conveyed something."

25. In Count II, Plaintiffs name only Defendants Rainer, Rhyne, Cannon, and Weekley as defendants for "fraudulent conveyance." The Court cannot determine whether Count II is directed at Defendants Braswell, Looper, and Russo.

26. Count II does not contain any factual content that would allow one to draw a reasonable inference that these Defendants should be held liable for the alleged fraudulent conveyance. Count II also does not identify the time, place, or contents of any allegedly false statements made by these Defendants.

27. In Count III, the Verified Third Amended Complaint did not have a heading that "lists each and every Defendant who Plaintiffs allege is liable. . . ."

28. In Count III, paragraph 23 made breach of implied contracts and fraudulent conveyance allegations against "Defendants Jerry Rhyne and David Weekley. . . ." Paragraph 25

made representation allegations against "Defendants Thom Rainer, D. August Boto, Jerry Rhyne, Frank S. Page and Larry D. Cannon's promotion. . . ." Paragraph 26 first alleged "all Defendants" and then alleged "specific Individual Defendants: Thom Rainer, D. August Boto, Jerry Rhyne, Frank S. Page, and Larry D. Cannon."

29.  Count III contains no factual allegations describing how these individuals might have been involved in the supposed breaches of the alleged "implied contract." Count III does not allege that these Defendants were parties to the lease contract between LifeWay and Plaintiffs; it does not allege these Defendants made any statements that could have reasonably caused Plaintiffs to believe that an implied contract existed; and it does not explain what part these Defendants played in any claim for breach of any implied contract.

30.  The Verified Third Amended Complaint does not comply with the Court's Second Order for More Definite Statement.

## CONCLUSIONS OF LAW

31.  Federal Rule of Civil Procedure 9(b) provides that "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Plaintiffs did not do so in their Verified Second Amended Complaint or their Verified Third Amended Complaint despite the Court's Order.

32.  Federal Rule of Civil Procedure 12(e) provides that "If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order."

33.  Plaintiffs' Verified Second Amended Complaint did not comply with the Court's previous Order For More Definite Statement and Plaintiffs' Verified Third Amended Complaint did not comply with the Court's previous Second Order For More Definite Statement.

34.    Because of these violations of the Court's Orders, Plaintiffs' Verified Third Amended Complaint is dismissed with prejudice.

### III.
### LEONARD RUSSO AND TERRY LOOPER'S MOTION TO DISMISS VERIFIED AMENDED COMPLAINT (Doc. 60); TERRY BRASWELL'S MOTION TO DISMISS VERIFIED AMENDED COMPLAINT (Doc. 69); AND DAVID WEEKLEY'S MOTION TO DISMISS  VERIFIED AMENDED COMPLAINT (Doc. 77)

### FINDINGS OF FACT

**A.  Defendants Terry Looper's and Leonard Russo's Motion to Dismiss (Doc. 60)**

1. Defendant, Terry Looper, is a resident and citizen of Texas.

2.  Defendant, Leonard Russo, is a resident and citizen of Texas.

3.  In their motion to dismiss (Doc. 60), Mr. Looper and Mr. Russo have submitted sworn affidavits supporting their argument that they lack minimum contacts with New Mexico.

4.  This motion to dismiss (Doc. 60) was originally directed against the Plaintiffs' Verified Amended Complaint (Doc. 16), and argued for dismissal on other grounds in addition to the lack of personal jurisdiction. The other arguments are now either moot, or have been raised in a motion to dismiss (Doc. 137) that is directed against the Verified Third Amended Complaint (Doc. 125). Thus, the only live issue in this motion (Doc. 60) is whether personal jurisdiction exists over Defendants Terry Looper and Leonard Russo. Both Defendants and Plaintiffs have treated the personal jurisdiction issue raised by this motion to dismiss as being equally applicable to the Verified Third Amended Complaint.

5.  Mr. Looper is a Director of Defendant Glorieta 2.0, Inc., a New Mexico corporation formed in May 2013.

6.  Before the formation of Glorieta 2.0, Inc., Mr. Looper visited New Mexico to tour the Glorieta Conference Center property and to gather information about LifeWay's operations and plans for divestiture.

7.  Mr. Looper has not had any personal dealings with Plaintiffs apart from his service as a Director of Glorieta 2.0, Inc.

8.  Other than the single visit described above, Mr. Looper traveled to New Mexico about 25 years ago on the business of another company.

9.  Mr. Looper has never conducted any personal, individual, or independent business in New Mexico.

10.  Mr. Looper has never maintained an office, post office box, place of business, or telephone account or number in New Mexico.

11.  Mr. Looper has never owned, rented, occupied, or leased any real or personal property in New Mexico.

12.  Mr. Looper does not maintain any personal bank account in New Mexico.

13.  Mr. Looper has never voted or paid taxes in New Mexico.

14.  Mr. Russo is a Director of Defendant Glorieta 2.0, Inc., a New Mexico corporation formed in May 2013.

15.  Before the formation of Glorieta 2.0, Inc., Mr. Russo visited New Mexico to tour the Glorieta Conference Center property and to gather information about LifeWay's operations and plans for divestiture.

16.  Mr. Russo has not had any personal dealings with Plaintiffs apart from his service as a Director of Glorieta 2.0, Inc.

17.  Other than the single visit described above, Mr. Russo traveled to New Mexico once for vacation.

18.  Mr. Russo has never conducted any personal, individual, or independent business in New Mexico.

19.  Mr. Russo has never maintained an office, post office box, place of business, or telephone account or number in New Mexico.

20.  Mr. Russo has never owned, rented, occupied, or leased any real or personal property in New Mexico.

21.  Mr. Russo does not maintain any personal bank account in New Mexico.

22.  Mr. Russo has never voted or paid taxes in New Mexico.

23.  In their response to these Defendants' motion to dismiss (see Doc. 135), and their brief in support of that response (see Doc. 135-1), Plaintiffs did not offer any evidence to contradict the affidavits of Mr. Looper or Mr. Russo.

24.  The uncontradicted affidavits of Mr. Looper and Mr. Russo establish that they are not "essentially at home" in New Mexico and, therefore, this Court cannot exercise general personal jurisdiction over them.

25.  Moving on to consider whether specific personal jurisdiction exists, Plaintiffs do not allege that their claimed injuries arose from the trip that Mr. Looper and Mr. Russo took to New Mexico for the purpose of visiting Glorieta Conference Center before Glorieta 2.0, Inc. was formed, nor do they allege that Mr. Looper or Mr. Russo engaged in any intentional acts on those trips with the knowledge that such acts would harm Plaintiffs in New Mexico.

26.  The sole allegation of the Verified Third Amended Complaint that mentions Mr. Looper and Mr. Russo is Plaintiffs' allegation that Glorieta 2.0, Inc. could not have bought

Glorieta Conference Center without "assistance by and through its Directors, Defendants Weekly, Looper, and Russo." This allegation does not explain what Mr. Russo or Mr. Looper allegedly did, nor how, if at all, their alleged actions might be connected with New Mexico.

27. Plaintiffs also generally allege that Defendants in this case have violated Plaintiffs' due process rights; engaged in a conspiracy to "abuse and violate" Plaintiffs' rights under unspecified federal and state constitutional provisions and laws; committed fraud; and violated the internal constitution, charter, and by-laws of the Southern Baptist Convention. The Court cannot determine whether these allegations are aimed at Mr. Looper and Mr. Russo, but if they are, then they also do not explain specifically what Mr. Looper or Mr. Russo allegedly did, nor how, if at all, those actions might be connected to New Mexico.

28. In their response to this motion to dismiss, Plaintiffs argue that Mr. Looper and Mr. Russo can and should be held responsible for their alleged personal acts of "fraud and misrepresentation." Plaintiffs do not identify any specific acts of fraud or misrepresentation by Mr. Looper or Mr. Russo, and do not explain how any such acts of fraud or misrepresentation might be connected to New Mexico.

29. Plaintiffs have failed to allege, or provide evidence of, any facts that would support a finding that Mr. Looper or Mr. Russo engaged in any purposeful direction of their activities towards New Mexico. Therefore, Mr. Looper and Mr. Russo have no minimum contacts with New Mexico sufficient to support an exercise of specific personal jurisdiction over them with respect to Plaintiffs' claims.

30. Plaintiffs also suggest (see Doc. 135, at 2-3) that personal jurisdiction over Mr. Looper and Mr. Russo may attach simply because they are Directors of Glorieta 2.0, Inc., or because the corporate veil should be pierced.

37

31.  Under the no-imputed-contacts rule, the fact that a forum state has personal jurisdiction over a corporation does not necessarily give the forum state personal jurisdiction over a corporation's officers or employees.  Plaintiffs have failed to demonstrate that Mr. Looper and Mr. Russo have sufficient minimum contacts with New Mexico to support an exercise of personal jurisdiction over them.

32.  Plaintiffs' effort to invoke the doctrine of piercing the corporate veil also fails, because the Verified Third Amended Complaint does not contain any allegations that would support piercing the corporate veil of Glorieta 2.0, Inc. to reach Defendants Looper and Russo.

**B.  Defendant Terry Braswell's Motion to Dismiss (Doc. 69)**

33. Defendant, Terry Braswell, is a resident and citizen of Georgia.

34.  In his motion to dismiss (Doc. 69), Mr. Braswell has submitted an affidavit supporting his argument that he lacks minimum contacts with New Mexico.

35.  This motion to dismiss (Doc. 69) was originally filed by Defendants Terry Braswell, Michael Deahl, and Jerry Webb, and was directed against the Plaintiffs' Verified Amended Complaint (Doc. 16). It argued for dismissal on other grounds in addition to the lack of personal jurisdiction. The other arguments are now either moot, or have been raised in a motion to dismiss (Doc. 135) that is directed against the Verified Third Amended Complaint (Doc. 125). In addition, Plaintiffs voluntarily dismissed Defendants Deahl and Webb. (Doc. 102). Thus, the only live issue in this motion (Doc. 69) is whether personal jurisdiction exists over Defendant Terry Braswell. Defendant Braswell and Plaintiffs have treated the personal jurisdiction issue raised by this motion to dismiss as being equally applicable to the Verified Third Amended Complaint.

36.  Mr. Braswell is a Trustee of LifeWay.

38

37.  Mr. Braswell has traveled to New Mexico twice. In 1999 he visited Las Cruces on a mission trip with his church. In 2010 he visited New Mexico to attend a meeting of LifeWay's Trustees at the Glorieta Conference Center.

38.  In his capacity as a Trustee, Mr. Braswell has participated in discussions and votes regarding the Glorieta Conference Center in committees and plenary sessions during meetings of the Trustees, but he had no other involvement in the sale of Glorieta Conference Center.

39.  Mr. Braswell has never had any personal dealings with Plaintiffs.

40.  Mr. Braswell has never conducted any personal, individual, or independent business in New Mexico.

41.  Mr. Braswell has never maintained an office, post office box, place of business, or telephone account or number in New Mexico.

42.  Mr. Braswell has never owned, rented, occupied, or leased any real or personal property in New Mexico.

43.  Mr. Braswell does not maintain any personal bank account in New Mexico.

44.  Mr. Braswell has never voted or paid taxes in New Mexico.

45.  In their response (see Doc. 133) to Defendant Braswell's motion to dismiss, and in their supporting brief (see Doc. 133-1), Plaintiffs did not offer any evidence to contradict Mr. Braswell's affidavit.

46.  The uncontradicted affidavit of Mr. Braswell establishes that he is not "essentially at home" in New Mexico and, therefore, this Court cannot exercise general personal jurisdiction over him.

47.  Plaintiffs do not allege that their claimed injuries arose from either of Mr. Braswell's visits to New Mexico, nor do they allege that Mr. Braswell engaged in any intentional acts on

those trips with the knowledge that such acts would harm Plaintiffs in New Mexico, nor do they

allege that Mr. Braswell did anything during any meeting of the Trustees that was directed at

Plaintiffs in New Mexico.

48.  The sole allegation of the Verified Third Amended Complaint that mentions Mr.

Braswell is contained in Paragraph 27, which reads:

> Whereas, no replies, nor interest to negotiate with clean hands with
> Plaintiffs, as quoting "Rhyne said one of the most important
> requirements for any sale of Glorieta was that new Owners provide
> options that are fair, reasonable and prudent for individuals and
> churches that lease land at Glorieta for residential homes and small
> group facilities" citing from Baptist Press, June 13, 2013 at
> http://www.bpnews.net/bpnews.asp?id=40521 ; further specific
> Defendants Rainer, Boto, Rhyne, Page, and Cannon blatantly
> ignored Plaintiffs [sic] presentment of the Corporate Charter
> Constitution and Bylaws requirements on all entities of the "SBC",
> their agents, assigns and all of "SBC" entities elected Leadership
> specifically Rainer, Boto, Rhyne, Page, Cannon, Braswell, Best
> and Carlisle.

(Doc. 125, ¶ 27).

49.  This paragraph alleges either that certain Defendants ignored the fact that Plaintiffs

sent information about the Southern Baptist Convention's constitution, charter, and bylaws to

Defendant Braswell, or it may be alleging that Defendant Braswell ignored the information that

Plaintiffs sent to him. However construed, Paragraph 27 does not allege that Mr. Braswell

committed any intentional acts, but only that he passively received or ignored information that

Plaintiffs sent to him, and nothing in Paragraph 27 suggests that its allegations have anything to

do with New Mexico.

50.  Plaintiffs also generally allege that Defendants in this case have violated Plaintiffs'

due process rights; engaged in a conspiracy to "abuse and violate" Plaintiffs' rights under

unspecified federal and state constitutional provisions and laws; committed fraud; and violated

40

the internal constitution, charter, and by-laws of the Southern Baptist Convention. See Doc. 125, at ¶ 7. It is not clear whether these allegations are aimed at Mr. Braswell, but if they are, then they also do not explain specifically what Mr. Braswell allegedly did, nor how, if at all, those actions might be connected to New Mexico.

51.  In their response to this motion to dismiss, Plaintiffs argue that Mr. Braswell allegedly conspired in the supposedly illegal sale of Glorieta Conference Center through a pattern of racketeering activity.  Plaintiffs, however, do not identify any specific acts of racketeering, or acts in furtherance of the alleged conspiracy. Nor do they explain how Mr. Braswell's alleged involvement in the sale of Glorieta Conference Center could have hurt Plaintiffs, since the lot that they formerly leased was not sold.

52.  In their response to this motion to dismiss, Plaintiffs also argue that Mr. Braswell was involved in some unspecified financial dealings and fraud in Florida and Georgia, or because of his alleged involvement in a "Florida LifeWay Inc."  Plaintiffs provide no details about this alleged conduct, nor do they explain how this alleged conduct might be connected with New Mexico.

53.  There is no separate corporate entity called "Florida LifeWay, Inc.," but even if there was such an entity, Plaintiffs fail to explain how Mr. Braswell's involvement with it would be connected with New Mexico.

54.  Plaintiffs have failed to allege, or provide evidence of, any facts that would support a finding that Mr. Braswell engaged in any purposeful direction of his activities towards New Mexico. Therefore, Mr. Braswell has no minimum contacts with New Mexico sufficient to support an exercise of specific personal jurisdiction over him with respect to Plaintiffs' claims.

55.   Plaintiffs also suggest that personal jurisdiction over Mr. Braswell may attach simply because he is a Trustee of LifeWay, or because the corporate veil should be pierced.

56.   Under the no-imputed-contacts rule, however, the fact that a forum state has personal jurisdiction over a corporation does not necessarily give the forum state personal jurisdiction over a corporation's officers or employees.  Plaintiffs have failed to demonstrate that Mr. Braswell has sufficient minimum contacts with New Mexico to support an exercise of personal jurisdiction over him.

57.  Plaintiffs' effort to invoke the doctrine of piercing the corporate veil also fails, because the Verified Third Amended Complaint does not contain any allegations that would support piercing the corporate veil of LifeWay to reach Mr. Braswell. See Doc. 125.

### C.   Defendant David Weekley's Motion to Dismiss (Doc. 77)

58.   Defendant, David Weekley, is a resident and citizen of Texas.

59.   In his motion to dismiss (Doc. 77), Mr. Weekley has submitted an affidavit supporting his argument that he lacks minimum contacts with New Mexico.

60.   This motion to dismiss (Doc. 77) was originally directed against the Plaintiffs' Verified Amended Complaint (Doc. 16), and argued for dismissal on other grounds in addition to the lack of personal jurisdiction. The other arguments are now either moot, or have been raised in a motion to dismiss (Doc. 135) that is directed against the Verified Third Amended Complaint (Doc. 125). Thus, the only live issue in this motion (Doc. 60) is whether personal jurisdiction exists over Defendant David Weekley. Both Defendant Weekley and Plaintiffs have treated the personal jurisdiction issue raised by this motion to dismiss as being equally applicable to the Verified Third Amended Complaint.

61. Mr. Weekley is a Director of Defendant Glorieta 2.0, Inc., a New Mexico corporation formed in May 2013.

62. Mr. Weekley has traveled to New Mexico twice on the business of Glorieta 2.0, Inc. The first visit was to meet with leaseholders at the Glorieta Conference Center.  The second visit was after the title of Glorieta Conference Center was transferred to Glorieta 2.0 for the purpose of reviewing with the Executive Director the status of the property and the actions to be taken to commence operations.  These visits were undertaken by Mr. Weekley solely in his capacity as a Director of Glorieta 2.0, Inc. and solely for the purpose of furthering its business.

63. Other than the two visits described in the previous paragraph, Mr. Weekley has occasionally traveled to New Mexico on vacation.

64. Mr. Weekley has not had any personal dealings with Plaintiffs apart from his service as a Director of Glorieta 2.0, Inc.

65. Mr. Weekley has never conducted any personal, individual, or independent business in New Mexico.

66. Mr. Weekley has never maintained an office, post office box, place of business, or telephone account or number in New Mexico.

67. Mr. Weekley has never owned, rented, occupied, or leased any real or personal property in New Mexico.

68. Mr. Weekley does not maintain any personal bank account in New Mexico.

69. Mr. Weekley has never voted or paid taxes in New Mexico.

70. In their response (see Doc. 134) to Defendant Weekley's motion to dismiss, and their brief in support of that response (see Doc. 134-1), Plaintiffs did not offer any evidence to contradict Mr. Weekley's affidavit.

71. The uncontradicted affidavit of Mr. Weekley establishes that he is not "essentially at home" in New Mexico and, therefore, this Court cannot exercise general personal jurisdiction over him.

72. Moving on to consider whether specific personal jurisdiction exists, Plaintiffs do not allege that their claimed injuries arose from the trips that Mr. Weekley took to New Mexico for the purpose of visiting Glorieta Conference Center, nor do they allege that Mr. Weekley engaged in any intentional acts on those trips with the knowledge that such acts would harm Plaintiffs in New Mexico.

73. In the Verified Third Amended Complaint, Plaintiffs allege that (a) Mr. Weekley enabled Glorieta 2.0, Inc. to buy the Glorieta Conference Center; (b) Mr. Weekley engaged in fraud; (c) Mr. Weekley signed the special warranty deed acknowledging the conveyance of Glorieta Conference Center to Glorieta 2.0, Inc.; (d) Mr. Weekley participated in the allegedly fraudulent conveyance of Glorieta Conference Center to Glorieta 2.0, Inc.; and (e) Mr. Weekley signed the special warranty deed in Tennessee, which was then delivered to New Mexico.

74. These allegations, while they relate to New Mexico, fail to establish minimum contacts. All of these allegations relate to the sale of Glorieta Conference Center. But Plaintiffs' claimed injuries do not arise from the sale of Glorieta Conference Center to Glorieta 2.0, Inc., because the lot that they formerly leased was not included in the sale, and is still owned by LifeWay.

75. Plaintiffs also generally allege that Defendants in this case have violated Plaintiffs' due process rights; engaged in a conspiracy to "abuse and violate" Plaintiffs' rights under unspecified federal and state constitutional provisions and laws; committed fraud; and violated the internal constitution, charter, and by-laws of the Southern Baptist Convention.  It is not clear

whether these allegations are aimed at Mr. Weekley, but if they are, then they also do not explain specifically what Mr. Weekley allegedly did, nor how, if at all, those actions might be connected to New Mexico.

76.  In their response to this motion to dismiss, Plaintiffs argue that Mr. Weekley can and should be held responsible for his alleged personal acts of "fraud and misrepresentation" and engaged in a pattern of racketeering activity. (Doc. 134, at 5, 7). But Plaintiffs do not identify any specific acts of fraud or misrepresentation by Mr. Weekley, or any alleged acts of racketeering, and do not explain how any such acts might be connected to New Mexico.

77.  Plaintiffs' injuries did not arise from any of Mr. Weekley's activities directed towards New Mexico, no minimum contacts exist that would support the exercise of specific personal jurisdiction over Mr. Weekley.

78.  Plaintiffs also suggest (see Doc. 134, at 3, 5) that personal jurisdiction over Mr. Looper and Mr. Russo may attach simply because they are Directors of Glorieta 2.0, Inc., or because the corporate veil should be pierced.

79.  Under the no-imputed-contacts rule, however, the fact that a forum state has personal jurisdiction over a corporation does not necessarily give the forum state personal jurisdiction over a corporation's officers or employees.  Plaintiffs have failed to demonstrate that Mr. Weekley has sufficient minimum contacts with New Mexico to support an exercise of personal jurisdiction over him.

80.  Plaintiffs' effort to invoke the doctrine of piercing the corporate veil also fails, because the Verified Third Amended Complaint does not contain any allegations that would support piercing the corporate veil of Glorieta 2.0, Inc. to reach Defendant Weekley.

## CONCLUSIONS OF LAW

81. To adjudicate Plaintiffs' claims against Mr. Looper, Mr. Russo, Mr. Weekley, or Mr. Braswell, this Court must have personal jurisdiction over them.

82. In order to find that personal jurisdiction exists, Mr. Looper, Mr. Russo, Mr. Weekley, or Mr. Braswell must have minimum contacts with New Mexico, such that requiring them to defend a lawsuit in New Mexico would not offend traditional notions of fair play and substantial justice.

83. General personal jurisdiction exists when a party has "continuous and systematic general business contacts with the forum state." See Newsome v. Gallacher, 722 F.3d 1257, 1264 (10th Cir. 2013). These contacts must "render [the defendant] essentially at home in the forum State." Daimler AG v. Bauman, 134 S.Ct. 746, 754 (2014).

84. If general personal jurisdiction over a defendant does not exist, this Court may still exercise specific personal jurisdiction over a defendant. To evaluate whether a defendant has minimum contacts sufficient to support an exercise of specific personal jurisdiction over him, courts usually ask (i) whether the defendant purposefully directed his activities at the forum state; and (ii) whether the plaintiff's injuries arose from those purposefully directed activities. See Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1071 (10th Cir. 2008).

85. Purposeful direction involves (i) intentional actions; which are (ii) expressly aimed at the forum state; and done with (iii) knowledge that the brunt of the injury would be felt in the forum state. See Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1072 (10th Cir. 2008).

86.  It is Plaintiffs' burden to demonstrate that this Court has personal jurisdiction over Mr. Looper, Mr. Russo, Mr. Weekley, and Mr. Braswell. See Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1069 (10th Cir. 2008).

87.  Plaintiffs have failed to allege or prove that general personal jurisdiction exists over Defendants Terry Looper, Leonard Russo, David Weekley, or Terry Braswell in New Mexico.

88.  Plaintiffs have failed to allege or prove that Defendants Terry Looper, Leonard Russo, David Weekley, or Terry Braswell have sufficient minimum contacts with New Mexico to allow this Court to exercise specific personal jurisdiction over them.

89.  Even if Mr. Weekley has purposefully directed some activities towards New Mexico, they are not sufficient to support specific personal jurisdiction over him because Plaintiffs' injuries did not arise from those purposefully directed activities.

90.  The fact that Defendants Terry Looper, Leonard Russo, and David Weekley are Directors of Glorieta 2.0, Inc. does not allow this Court to exercise specific personal jurisdiction over them.

91.  The fact that Defendant Terry Braswell is a Trustee of LifeWay does not allow this Court to exercise specific personal jurisdiction over him.

92.  Plaintiffs' claims in the Verified Third Amended Complaint against Defendants Terry Looper, Leonard Russo, David Weekley, and Terry Braswell should be dismissed for lack of personal jurisdiction.

## IV.

**EXECUTIVE COMMITTEE OF THE SOUTHERN BAPTIST CONVENTION, SOUTHERN BAPTIST CONVENTION, AND D. AUGUST BOTO'S MOTION TO DISMISS PLAINTIFFS' VERIFIED AMENDED COMPLAINT (Doc. 36); EXECUTIVE COMMITTEE OF THE SOUTHERN BAPTIST CONVENTION, SOUTHERN BAPTIST CONVENTION, FRANK S. PAGE AND D. AUGUST BOTO'S MOTION TO DISMISS VERIFIED THIRD AMENDED COMPLAINT (Doc. 131)**

### FINDINGS OF FACT

1.  SBC is a religious body established as a non-profit religious corporation and the name of annual two day meeting of Messengers which constitutes that body.

2.  The only members of SBC are the Messengers at the annual meeting, which are individuals selected annually by cooperating, autonomous churches.

3.  SBC establishes boards, entities and institutions as identified in the Bylaws to carry out its purposes of "propagation of the gospel".

4.  ECSBC is a separate corporate religious entity established by SBC Bylaw 18.

5.  Frank S. Page is the President and Chief Executive Officer of ECSBC.

6.  D. August Boto is the Executive Vice President and General Counsel of ECSBC.

7.  The ecclesiastical duties of ECSBC are described in SBC Bylaw 18 and the Bylaw includes the following language: "The Executive Committee shall not have authority to control or direct the several boards, entities, or institutions of the Convention. This is the responsibility of Trustees elected by the Convention and accountable directly to the Convention."

8.  The "entities" of the Convention are identified in SBC Bylaw 14.

9.  LCR, previously known as the Sunday School Board of the Southern Baptist Convention, is one of the separate corporate religious non-profit entities.

10.  SBC has no rights or powers in regard to LCR except those which it exercises as the sole member of LCR. Those rights are limited to electing and removing Trustees, approving

Charter amendments, approving mergers, approving the disposition of all or substantially all of the corporation's property not in the regular course of its activities, and approving dissolution of the corporation. In all other respects, the Board of Directors of LCR govern the corporation.

11.  Glorieta Conference Center (GCC) is not an entity identified in the SBC Bylaws but was a property owned and operated by LCR as part of its regular activities until the sale of GCC in 2013 (excluding Plaintiffs' previously leased lot).

12.  The 1950 SBC annual session acknowledged receipt by ECSBC of a warranty deed for the Glorieta site and instructed the Executive Committee to transfer the property to the Sunday School Board of the Southern Baptist Convention (now known as LCR).

13.  Pursuant to the instruction, ECSBC conveyed the property to LCR on June 14, 1950 by executing and delivering the deed to LCR.

14.  Since 1950, LCR has been the exclusive owner and operator of GCC.

15.  ECSBC, SBC, Page and Boto have had no connection to the operation and sale of GCC other than the conveyance of title by ECSBC to LCR in 1950.

16.  Plaintiffs leased a lot within GCC from LCR.

17.  Plaintiffs' lease expired.

18.  LCR sold GCC to Glorieta 2.0, Inc. but the lot Plaintiffs previously leased from LCR was not sold and is still owned by LCR.

19.  Plaintiffs' Verified Third Amended Complaint is a challenge to LCR's sale of GCC (which does not even include the property previously leased from LCR by Plaintiffs).

20.  LCR exclusively owned GCC and is the only entity authorized to sell it.

21.  Neither the SBC nor ECSBC has the right to approve the sale of GCC according to the governing documents of the entities.

22.  Plaintiffs have sued ECSBC, SBC, Page and Boto solely in their representative capacities as President/CEO and Executive Vice President of ECSBC.

23.  Plaintiffs do not allege that ECSBC, SBC, Page or Boto are parties to any contract or lease involving GCC and specifically Plaintiffs' previously leased lot.

24.  Plaintiffs' allegations against ECSBC, SBC, Page and Boto are that they ignored the SBC Charter, Constitution and Bylaws mandating that the Messengers of the SBC "be honestly informed and resolutions brought before them through 'trustees' of the 'EC' for two consecutive yearly convention [sic] to vote on all matters. . . ."

25.  Plaintiffs are not members of SBC. SBC members are Messengers from churches that constitute the annual meeting.

26.  Plaintiffs are not members of ECSBC.

27.  Plaintiffs are not members of LCR since the sole member is SBC.

28.  Plaintiffs are not Directors of SBC since SBC has no Board of Directors.

29.  Plaintiffs are not Directors of ECSBC.

30.  Plaintiffs are not parties that can challenge an act of a corporation or a transfer of real property under the New Mexico Non-Profit Corporation Act, NMSA 1978, § 53-8-6.

31.  Plaintiffs are not parties that may challenge the validity of a non-profit corporation action under the Tennessee Non-Profit Corporation Act, § 48-53-104.

32.  The basis of Plaintiffs' Third Amended Complaint against these Defendants is that they have violated the internal governing documents of the SBC religious entity, i.e. SBC Charter, Constitution and Bylaws, by failing to cause LCR's sale of GCC to be voted on at two consecutive annual SBC Conventions.

50

33.  SBC and ECSBC are separate legal entities constituted as religious organizations and exempt from taxes under the Internal Revenue Code.

34.  SBC and ECSBC have consistently claimed their right to enjoy the protections of the First Amendment to the United States Constitution which assures the free exercise of religion and prohibits excessive entanglement by government in their internal affairs.

35.  The ecclesiastical duties of ECSBC are described in SBC Bylaw 18 which expressly prohibits control or authority over Boards and entitles including LCR.

36.  The SBC Bylaws, and the SBC interpretation of those Bylaws, state that the only acts for which action must be taken at two successive annual meeting are: To amend the Constitution, to amend Bylaw 14 which names the entities of the Convention, to authorize a new enterprise, or to abolish an entity of the Convention (the entities are specifically listed in Bylaw 14).

37.  The religious entities have always determined that Glorieta is not, and never was, an entity or new enterprise as defined by the SBC, but rather one property owned by LCR.

38.  SBC deems that its governing documents have been fully complied with in regard to Glorieta.

39.  Plaintiffs' Third Amended Complaint requests the Court to review the SBC governing documents and the protected ecclesiastical actions of the Defendant religious organizations and to enforce them in a manner contrary to the documents' clear language and contrary to practice, procedure and interpretation of those documents by the religious bodies and entities themselves.

40.  Plaintiffs' Third Amended Complaint requests the Court to interpret the Defendants' ecclesiastical rules, regulations, practices and polity.

41. Count I of the Third Amended Complaint alleges violations of the ecclesiastical documents and polity of SBC, specifically alleged violations of SBC Charter, Constitution and Bylaws.

42. SBC and ECSBC are religious organizations who interpret and execute their own ecclesiastical documents and rules.

43. Plaintiffs are not members of SBC or ECSBC.

44. SBC and ECSBC are legal entities constituted as religious organizations and have consistently claimed their right to enjoy the protections of the First Amendment to the United States Constitution.

45. Plaintiffs' request for civil court interpretation of the SBC Bylaws and practices is not a claim upon which relief can be granted by a civil court.

46. Count II and ¶15 of Count I generally allege a fraudulent conveyance and fraud.

47. The Third Amended Complaint does not allege fraud with particularity of the circumstances constituting fraud.

48. The Third Amended Complaint fails to allege any misrepresentation of fact by ECSBC, SBC, Page or Boto that was known to be untrue, made with an intent to deceive and induced Plaintiffs to act with reliance thereon to their detriment.

49. There was no conveyance of the lot previously leased by Plaintiffs from LCR.

50. The lot previously leased to Plaintiffs by LCR is owned by LCR.

51. Plaintiffs have no property interest in GCC which was conveyed by LCR to Glorieta 2.0, Inc.

52. There is no violation of the Uniform Fraudulent Transfer Acts of New Mexico or Tennessee by ECSBC, SBC, Page or Boto.

53  ECSBC, SBC, Page and Boto are not debtors as defined by the Uniform Fraudulent Transfer Acts of New Mexico and Tennessee.

54.  The transfer of GCC by LCR is not a fraudulent transfer.

55.  Plaintiffs are not creditors of ECSBC, SBC, Page and Boto as defined by the Uniform Fraudulent Transfer Act.

56.  Facts alleged by Plaintiffs in the Third Amended Complaint do not constitute fraud by ECSBC, SBC, Page or Boto.

57.  Count III of the Third Amended Complaint alleges breach of implied contract.

58.  Plaintiffs have no implied or express contract with SBC, ECSBC, Page or Boto.

59.  There is no written contract nor any written memorandum referring to a contract signed by SBC or ECSBC concerning a real estate transaction with Plaintiffs.

60.  ECSBC, SBC, Page and Boto have no contract concerning GCC or the lot previously leased by Plaintiffs from LCR because LCR had the sole and exclusive right to contract concerning GCC.

61.  The Third Amended Complaint fails to specify the terms of an alleged implied contract between ECSBC, SBC, Page or Boto with Plaintiffs.

62.  Defendants Page and Boto are citizens and residents of Tennessee.

63.  Defendants Page and Boto have not conducted individual or independent business in New Mexico; maintained an office, mailing address, place of business or telephone number in New Mexico; owned or leased property in New Mexico; voted or paid income taxes in New Mexico; had any personal dealings with Plaintiffs.

64.  SBC and ECSBC do not maintain an office in New Mexico and have never met in New Mexico.

65.  ECSBC does not own property in New Mexico.

66.  ECSBC received a Warranty Deed from the Baptist Convention of New Mexico dated January 10, 1950 conveying to ECSBC the Glorieta site.

67.  SBC is a Georgia non-profit corporation.

68.  ECSBC is a Tennessee non-profit corporation.

69.  ECSBC, SBC, Page and Boto do not transact business in the State of New Mexico.

70.  ECSBC, SBC, Page and Boto have not committed a tortious act within the State of New Mexico and there is no such allegation.

71.  ECSBC, SBC, Page and Boto do not have the minimum contacts with New Mexico required by due process for personal jurisdiction in this matter.

## CONCLUSIONS OF LAW

72.  There is no subject matter jurisdiction.

73.  This Court does not have subject matter jurisdiction to interpret the SBC Charter, Constitution, Bylaws and religious organization polity and therefore this action should be dismissed with prejudice.

74.  Plaintiffs lack standing to bring the action alleged in the Third Amended Complaint and the Third Amended Complaint should be dismissed with prejudice.

75.  This Court lacks personal jurisdiction over Boto and Page.

76.  The Court lacks personal jurisdiction over SBC and ECSBC.

77.  The Third Amended Complaint fails to state a claim upon which relief can be granted against ECSBC, SBC, Page and Boto and therefore Counts I, II and/or III should be dismissed with prejudice.

78.   The Court lacks subject matter jurisdiction to become involved in a dispute between Plaintiffs and religious bodies SBC and ECSBC involving the interpretation of the SBC ecclesiastical rules including the SBC Bylaws.

79.   The Third Amended Complaint against SBC, ECSBC, Boto and Page should be dismissed with prejudice.

**V.**

**TRAVIS BEST AND CHARLES CRAIG CARLISLE'S MOTION TO DISMISS VERIFIED THIRD AMENDED COMPLAINT (Doc. 139)**

**FINDINGS OF FACTS**

**A.      Timeliness of Motion**

1.   Plaintiffs' Verified Amended Complaint (Doc. 16) was served on Mr. Best and Mr. Carlisle on November 12 and 14, 2013.

2.   This Court issued an Order Imposing Temporary Stay (Doc. 104) on November 21, 2013.

3.   The stay was not lifted until March 20, 2014.

4.   After that, the Court entered two orders for more definite statement, which pushed back Mr. Best's and Mr. Carlisle's obligation to file a responsive pleading until May 8, 2014. 6.

5.   Mr. Best and Mr. Carlisle timely filed the present Motion to Dismiss (Doc. 139) on May 8, 2014.

6.   Mr. Best and Mr. Carlisle's Motion to Dismiss was timely filed.

7.   Mr. Best and Mr. Carlisle are not, and have never been, in default for failure to respond to the pleadings in this lawsuit.

**B.  Lack of Compliance with Second Order for More Definite Statement (Doc. 124)**

8.  In its Second Order for More Definite Statement, this Court required Plaintiffs to "provide some basis for the Court asserting jurisdiction" over Defendants, who are not citizens of New Mexico.

9.  The Court "caution[ed] Plaintiffs that the Court may dismiss individual Defendants without further notice to Plaintiffs if Plaintiffs cannot provide a basis for this Court's jurisdiction."

10.  The Verified Third Amended Complaint fails to sets forth any basis for the Court to exercise personal jurisdiction over Defendants Travis Best and Charles Craig Carlisle.

11.  Plaintiffs' Verified Third Amended Complaint (Doc. 125) does not comply with this Court's Second Order for More Definite Statement (Doc. 124).

12.  Defendant, Travis Best, is a resident and citizen of Idaho.

13.  Defendant, Charles Craig Carlisle, is a resident and citizen of Alabama.

14.  In their motion to dismiss (Doc. 139), Mr. Best and Mr. Carlisle have submitted declarations supporting their argument that they lack minimum contacts with New Mexico.

15.  Mr. Best and Mr. Carlisle are both Trustees of LifeWay.

16.  Mr. Best has not had any personal dealings with Plaintiffs.

17.  Mr. Best has never conducted any personal, individual, or independent business in New Mexico.

18.  Mr. Best has never maintained an office, post office box, or place of business in New Mexico.

19.  Mr. Best was born in New Mexico in 1945, and lived in New Mexico until 1966.

20.  Mr. Best moved to Washington state in 1966, and since then has lived in Colorado and Idaho.

21.  Mr. Best has not owned, rented, occupied, or leased any real property in New Mexico since moving away from the state in 1966.

22.  Mr. Best has not maintained any personal bank account in New Mexico since leaving the state in 1966.

23.  Mr. Best has not paid income taxes in New Mexico since leaving the state in 1966.

24.  Mr. Best has never voted in New Mexico.

25.  Since moving away from New Mexico in 1966, Mr. Best has returned to the state around a dozen times to visit family members.

26.  From 1980 to 1988, Mr. Best visited New Mexico around a dozen times on business for his employer.

27.  Around three or four years ago, Mr. Best attended a meeting of LifeWay Trustees held in New Mexico, but that meeting had nothing to do with the sale of Glorieta Conference Center.

28.  Mr. Carlisle, in his capacity as a Trustee of LifeWay, has participated in discussions and votes regarding Glorieta Conference Center in committee meetings and plenary sessions during meetings of the Trustees, but had no other involvement in the sale of Glorieta Conference Center.

29.  Mr. Carlisle has never had any personal dealings with Plaintiffs.

30.  Mr. Carlisle has visited New Mexico on one occasion, to attend a meeting of the LifeWay Trustees at Glorieta Conference Center in 2010 or 2011; he does not recall discussing the sale of Glorieta Conference Center at that meeting.

31.  Mr. Carlisle has never conducted any personal, individual, or independent business in New Mexico.

32.  Mr. Carlisle has never maintained an office, post office box, or place of business in New Mexico.

33.  Mr. Carlisle has never owned, rented, occupied, or leased any real property in New Mexico.

34.  Mr. Carlisle has never maintained a personal bank account in New Mexico.

35.  Mr. Carlisle has never paid income taxes or voted in New Mexico.

36.  Plaintiffs did not offer any evidence to contradict the declarations of Mr. Best or Mr. Carlisle.

37.  The uncontradicted affidavits of Mr. Best and Mr. Carlisle establish that they are not "essentially at home" in New Mexico and, therefore, this Court cannot exercise general personal jurisdiction over them.

38.  Plaintiffs do not allege that their claimed injuries arose from the visits by Mr. Best or Mr. Carlisle to Glorieta Conference Center to attend a meeting of the LifeWay Trustees, nor do they allege that Mr. Best or Mr. Carlisle engaged in any intentional acts on those trips with the knowledge that such acts would harm Plaintiffs in New Mexico.

39.  The sole paragraph of the Verified Third Amended Complaint that mentions Mr. Best and Mr. Carlisle is Paragraph 14, which alleges that they "should be held separately and individually responsible for the fraudulent liquidation" of Glorieta Conference Center, and they committed "willful negligence" by ignoring the Southern Baptist Convention's charter, constitution, and by-laws.  This paragraph does not explain what Mr. Best or Mr. Carlisle allegedly did, nor how, if at all, their alleged actions might be connected with New Mexico.

58

40.   Plaintiffs also generally allege that Defendants in this case have violated Plaintiffs' due process rights; engaged in a conspiracy to "abuse and violate" Plaintiffs' rights under unspecified federal and state constitutional provisions and laws; committed fraud; and violated the internal constitution, charter, and by-laws of the Southern Baptist Convention.  It is not clear whether these allegations are aimed at Mr. Best or Mr. Carlisle, but if they are, then they also do not explain specifically what Mr. Best or Mr. Carlisle allegedly did, nor how, if at all, those actions might be connected to New Mexico.

41.   In their response to this motion to dismiss, Plaintiffs argue that Mr. Best and Mr. Carlisle have "facilitated the misrepresentation of facts" to LifeWay Trustees and to the ECSBC. Plaintiffs, however, do not identify any specific misrepresentation by Mr. Best or Mr. Carlisle, and do not explain how any such acts of misrepresentation might be connected to New Mexico.

42.   Plaintiffs argue that Mr. Best and Mr. Carlisle are directors of an entity called "Lifeway, Inc.," incorporated in Florida, and have engaged in a pattern of tortious conduct in Idaho, Alabama, and Florida, including fraudulent misrepresentation and breach of fiduciary duty, such that the corporate veil should be pierced.  Plaintiffs do not identify any specific acts allegedly committed by Mr. Best or Mr. Carlisle, or explain how those alleged acts might be connected to New Mexico.  The Verified Third Amended Complaint does not contain any allegations that the corporate veil should be pierced.  The evidence is that there is no separate corporate entity called "Florida LifeWay, Inc.," but even if there was such an entity, Plaintiffs fail to explain how Mr. Best's or Mr. Carlisle's alleged involvement with it would be connected with New Mexico.

43.   Plaintiffs have failed to allege, or provide evidence of, any facts that would support a finding that Mr. Best or Mr. Carlisle engaged in any purposeful direction of their activities

towards New Mexico.  Mr. Best and Mr. Carlisle have no minimum contacts with New Mexico

sufficient to support an exercise of specific personal jurisdiction over them with respect to

Plaintiffs' claims.

44.  Plaintiffs also suggest (see Doc. 143, at 6) that personal jurisdiction over Mr. Best

and Mr. Carlisle may attach simply because they are Trustees of Lifeway.

45.  Under the no-imputed-contacts rule, the fact that a forum state has personal

jurisdiction over a corporation does not necessarily give the forum state personal jurisdiction

over a corporation's officers or employees.  Plaintiffs have failed to demonstrate that Mr. Best

and Mr. Carlisle have sufficient minimum contacts with New Mexico to support an exercise of

personal jurisdiction over them.

### C. Lack of Standing

46.  Mr. Best and Mr. Carlisle have incorporated by reference the proposed findings of

fact on Plaintiffs' lack of standing which are set forth at Paragraphs 1 through 7 of the Requested

Findings of Fact and Conclusions of Law in Support of the Motion to Dismiss Verified Third

Amended Complaint (Doc. 125) by LifeWay Christian Resources, Glorieta 2.0, Inc., Larry D.

Cannon, Jerry Rhyne, Thom Rainer, Terry Braswell, David Weekley, Leonard Russo, and Terry

Looper (Doc. 137) (Doc. 167).

### D. First Amendment Religion Clauses

47.  Mr. Best and Mr. Carlisle hereby have incorporated by reference the proposed

findings of fact which state the reasons why Plaintiffs' claims in Count I and II are barred by the

Religion Clauses of the First Amendment, which are set forth at Paragraphs 8 through 51 of the

Requested Findings of Fact and Conclusions of Law in Support of the Motion to Dismiss

Verified Third Amended Complaint (Doc. 125) by LifeWay Christian Resources, Glorieta 2.0,

Inc., Larry D. Cannon, Jerry Rhyne, Thom Rainer, Terry Braswell, David Weekley, Leonard Russo, and Terry Looper (Doc. 137) (Doc. 167).

### E.  Count III, Breach of Implied Contract

48.  Mr. Best and Mr. Carlisle have incorporated by reference the proposed findings of fact which explain why Count III should be dismissed, which are set forth at Paragraphs 69 through 94 of the Requested Findings of Fact and Conclusions of Law in Support of the Motion to Dismiss Verified Third Amended Complaint (Doc. 125) by LifeWay Christian Resources, Glorieta 2.0, Inc., Larry D. Cannon, Jerry Rhyne, Thom Rainer, Terry Braswell, David Weekley, Leonard Russo, and Terry Looper (Doc. 137) (Doc. 167).

### F. Failure to State a Claim on Which Relief May be Granted

49.  Count I of the Verified Third Amended Complaint is directed at alleged violations of the Southern Baptist Convention's corporate charter, constitution, and bylaws.

50.  In Count I, Plaintiffs allege that Mr. Best and Mr. Carlisle committed acts of fraud and negligence while working in concert with other defendants, but they do not actually identify any acts of fraud or negligence allegedly committed by Mr. Best or Mr. Carlisle.

51.  With respect to allegations of fraud, Federal Rule of Civil Procedure 9(b) provides that a party who alleges fraud "must state with particularity the circumstances constituting fraud or mistake," and the Tenth Circuit has stated that to satisfy Rule 9(b), a plaintiff must "set forth the time, place and contents of the false representation, the identity of the party making the false statements, and the consequences thereof." Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1252 (10th Cir. 1997).

52.  Plaintiffs' allegations of fraud in Count I do not satisfy the standards set forth in Rule 9(b) or in Schwartz. Plaintiffs' allegations do not set forth the time, place, or contents of any fraudulent misrepresentations allegedly made by Mr. Best or Mr. Carlisle.

53.  With respect to the allegations of fraud and negligence in Count I, under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain enough allegations of fact "to state a claim that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

54.  Count I of the Verified Third Amended Complaint contains only conclusory allegations that Mr. Best or Mr. Carlisle have committed fraud or negligence, and is therefore devoid of any factual content that would allow one to draw a reasonable inference that they have committed or should be held liable for any such conduct.

55.  Count I of the Verified Third Amended Complaint also fails to state essential elements of a fraud claim against Mr. Best and Mr. Carlisle; it does not allege that Mr. Best or Mr. Carlisle acted with any intent to deceive Plaintiffs, and does not allege that Plaintiffs relied on any statements made to them by Mr. Best or Mr. Carlisle.

56.  Count I requests relief that is not allowed by New Mexico law. Plaintiffs appear to ask for emotional distress damages as a result of the alleged fraud, but such damages are not recoverable for fraud in New Mexico.

57.  Count II of the Verified Third Amended Complaint is a claim for "fraudulent conveyance."

58.  Count II of the Verified Third Amended Complaint does not mention Mr. Best or Mr. Carlisle, and it is unclear whether it is directed against Mr. Best and Mr. Carlisle.

59.  Assuming that Count II is directed against Mr. Best and Mr. Carlisle, it does not contain any factual content that would allow one to draw a reasonable inference that Mr. Best and Mr. Carlisle should be held liable for the alleged fraudulent conveyance.  Count II also does not identify the time, place, or contents of any allegedly false statements made by Mr. Best or Mr. Carlisle.

60.  Count III of the Verified Third Amended Complaint is a claim for breach of implied contract.

61.  It is unclear whether Count III is directed at Mr. Best or Mr. Carlisle; it mentions both of these Defendants only by way of background information.

62.  Assuming that Count III is directed at Mr. Best or Mr. Carlisle, it does not contain any factual content that would allow one to draw a reasonable inference that Mr. Best or Mr. Carlisle should be held liable for any breach of an implied contract. Count III does not allege that Mr. Best or Mr. Carlisle were parties to the lease contract between LifeWay and Plaintiffs; it does not allege that Mr. Best or Mr. Carlisle made any statements that could have reasonably caused Plaintiffs to believe that an implied contract existed; and it does not explain what part Mr. Best or Mr. Carlisle played in the breach of any implied contract.

**CONCLUSIONS OF LAW**

63.  Defendants Travis Best and Charles Craig Carlisle timely filed the present motion to dismiss, and have not been in default at any time.

64.   Plaintiffs' Verified Third Amended Complaint does not comply with this Court's Second Order for More Definite Statement, because it does not set forth any basis for this Court to exercise personal jurisdiction over Defendants Travis Best and Charles Craig Carlisle.

65.   To adjudicate Plaintiffs' claims against Mr. Best or Mr. Carlisle, the Court must have personal jurisdiction over them.

66.   In order to find that personal jurisdiction exists, Mr. Best and Mr. Carlisle must have minimum contacts with New Mexico, such that requiring them to defend a lawsuit in New Mexico would not offend traditional notions of fair play and substantial justice.  See Newsome v. Gallacher, 722 F.3d 1257, 1264 (10th Cir. 2013).

67.   General personal jurisdiction exists when a party has "continuous and systematic general business contacts with the forum state."  See Newsome v. Gallacher, 722 F.3d 1257, 1264 (10th Cir. 2013). These contacts must "render [the defendant] essentially at home in the forum State."  Daimler AG v. Bauman, 134 S.Ct. 746, 754 (2014).

68.   If general personal jurisdiction over a defendant does not exist, this Court may still exercise specific personal jurisdiction over a defendant. To evaluate whether a defendant has minimum contacts sufficient to support an exercise of specific personal jurisdiction over him, courts usually ask (i) whether the defendant purposefully directed his activities at the forum state; (ii) whether the plaintiff's injuries arose from those purposefully directed activities.  See Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1071 (10th Cir. 2008).

69.   Purposeful direction involves (i) intentional actions; which are (2) expressly aimed at the forum state; and done with (iii) knowledge that the brunt of the injury would be felt in the forum state.  See Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1072 (10th Cir. 2008).

64

70.  It is Plaintiffs' burden to demonstrate that this Court has personal jurisdiction over Mr. Best or Mr. Carlisle.  See Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1069 (10th Cir. 2008).

71.  Plaintiffs have failed to allege or prove that general personal jurisdiction exists over Defendants Travis Best and Charles Craig Carlisle in New Mexico.

72.  Plaintiffs have failed to allege or prove that Defendants Travis Best and Charles Craig Carlisle have sufficient minimum contacts with New Mexico to allow this Court to exercise specific personal jurisdiction over them.

73.  The fact that Defendants Travis Best and Charles Craig Carlisle are Trustees of LifeWay does not allow this Court to exercise specific personal jurisdiction over them.

74.  Plaintiffs' claims in the Verified Third Amended Complaint against Defendants Travis Best and Charles Craig Carlisle should be dismissed for lack of personal jurisdiction.

75.  Plaintiffs lack standing to assert the claims in Counts I and II of the Verified Third Amended Complaint.

76.  Plaintiffs' claims in Count I and II of the Verified Third Amended Complaint are barred by the Religion Clauses of the First Amendment.

77.  Count III in the Verified Third Amended Complaint should be dismissed with prejudice based on the pleadings and other undisputed facts of record. Plaintiffs have failed to identify any statements or conduct that would support the existence of an implied contract. The implied contract theory asserted fails because under either Tennessee or New Mexico law (the only two possible state laws governing that claim), the asserted implied contract claims are invalid because they contradict the express terms of the Lease signed and entered into between Plaintiffs and LifeWay.

78.  Furthermore, as to Count III of the Verified Third Amended Complaint, any claims of Plaintiffs that they are entitled to extensions of the expired lease, or any other claims that they are entitled to lease the property covered by the expired lease, are barred by reason of the statute of frauds.

79.  Plaintiffs' vague allegations in Count III (which is labeled as a breach of implied contract claim) that Defendants violated unspecified constitutional provisions and New Mexico state laws should be dismissed for failure to state a claim. The claims that Defendants violated the New Mexico and Tennessee versions of the Uniform Fraudulent Transfer Act, the Uniform Commercial Code, and a New Mexico criminal statute should also be dismissed for failure to state a claim.

80.  With respect to allegations of fraud, Federal Rule of Civil Procedure 9(b) provides that a party who alleges fraud "must state with particularity the circumstances constituting fraud or mistake," and the Tenth Circuit has stated that to satisfy Rule 9(b), a plaintiff must "set forth the time, place and contents of the false representation, the identity of the party making the false statements, and the consequences thereof."  Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1252 (10th Cir. 1997).

81.  With respect to all allegations in the Verified Third Amended Complaint, under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain enough allegations of fact "to state a claim that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

82.   Count I fails to state a claim against Defendants Travis Best and Charles Craig Carlisle, because it does not set forth the time, place, and contents of any alleged fraud, and does not include any factual content that would allow one to reasonably infer that they are liable for any acts of negligence or fraud.

83.   Count II fails to state a claim against Defendants Travis Best and Charles Craig Carlisle for fraudulent conveyance, because it does not set forth the time, place, and contents of any alleged fraud, and does not include any factual content that would allow one to reasonably infer that they are liable for any acts of fraud.

84.   Count III fails to state a claim against Defendants Travis Best and Charles Craig Carlisle for breach of an implied contract, because it does not contain any factual content that would allow one to reasonably infer that they are liable for any breach of an implied contract.

85.   The Verified Third Amended Complaint should be dismissed with prejudice because it fails to state a claim on which relief could be granted against Defendants Travis Best and Charles Craig Carlisle.

**VI.**
**DEFENDANTS' LIFEWAY, GLORIETA 2.0, INC., THOM RANIER, JERRY RHYNE, LARRY CANNON, TERRY BRASWELL, DAVID WEEKLEY, LEONARD RUSSO, TERRY LOOPER, TRAVIS BEST, AND CHARLES CRAIG CARLISLE'S OBJECTIONS TO PLAINTIFFS' SECOND PETITION TO THE COURT FOR EMERGENCY HEARING FOR TEMPORARY RESTRAINING ORDER**

**FINDINGS OF FACT**

1.   Plaintiffs ask this Court to grant three forms of injunctive relief: (a) to stop or reverse the transfer of title of Glorieta Conference Center allegedly made "without authority of ECSBC in Convention pursuant to their Corporate Charter"; (b) that the Court allow Plaintiffs to "remain with free access to their home" at Glorieta Conference Center until at least 180 days after this

litigation concludes; and (c) that the Court ask the Federal Bureau of Investigation to investigate this matter.

2.   Plaintiffs allege that they are substantially likely to prevail on the merits because they claim (a) that LifeWay was not the owner of Glorieta Conference Center and thus could not sell it; (b) that LifeWay sold Glorieta Conference Center in violation of the Southern Baptist Convention's constitution, charter, and bylaws; and (c) that their lease was improperly terminated by LifeWay.

3.   Plaintiffs further allege that they will suffer the following kinds of irreparable harm if injunctive relief is not granted: (a) Irreparable harm to the lands at Glorieta Conference Center; (b) Failure to renew the lease of the lot that they formerly leased from LifeWay, with consequent loss of quiet enjoyment and loss of use; (c) denial of access to the lot that they leased from LifeWay; (d) destruction of their property at Glorieta Conference Center "before they have legally made arrangements to move said property"; and (e) other leaseholders' loss of their property.

4.   Plaintiffs allege that Defendants will suffer no harm if injunctive relief is granted.

5.   Plaintiffs claim that the harm they will suffer if injunctive relief is not granted outweighs any harm to the Defendants.

6.   Plaintiffs argue that the public interest weighs in favor of granting injunctive relief because (a) only grantors who actually own land should be able to convey it; and (b) corporations should follow their own corporate charters and rules.

7.   Plaintiffs, however, are extremely unlikely to prevail on the merits.

8.  Plaintiffs are also not likely to prevail on their claim that LifeWay did not own Glorieta Conference Center. LifeWay has presented uncontradicted evidence that it did indeed own Glorieta Conference Center.

9.  It is likely that Plaintiffs lack standing to raise such a claim. If it were true that LifeWay was not the real owner of Glorieta Conference Center, the injured party would be the buyer, Glorieta 2.0, Inc., not Plaintiffs. Moreover, the lot that Plaintiffs formerly leased from LifeWay was not included in the sale to Glorieta 2.0, Inc.

10.  Plaintiffs are also unlikely to prevail on their claim that LifeWay did not properly follow the charter, constitution, and bylaws of the Southern Baptist Convention in selling Glorieta Conference Center. The uncontradicted evidence in this case has been that LifeWay did not need the approval of the Southern Baptist Convention to sell the Glorieta Conference Center, and that the sale was not in violation of the Southern Baptist Convention's charter, constitution, or bylaws

11. Plaintiffs are unlikely to prevail on the merits of this claim because they likely lack standing to contest whether LifeWay had the authority to sell Glorieta Conference Center under the Southern Baptist Convention's charter, constitution, and bylaws. The uncontradicted evidence is that Plaintiffs are not members of the governing boards of, or trustees or officers of, LifeWay, the Southern Baptist Convention, or the Executive Committee of the Southern Baptist Convention.

12.  Even if Plaintiffs had standing (which they do not), they would still be unlikely to prevail on the merits because their claim is likely barred by the Establishment and Free Exercise Clauses of the First Amendment, which bar civil courts from interpreting the internal ecclesiastical rules of religious organizations. For this Court to rule in Plaintiffs' favor, it would

69

have to determine that LifeWay's, the SBC's, and the ECSBC's interpretation of their own charter, constitution, and bylaws was somehow incorrect. The First Amendment bars this Court from second-guessing these religious entities' interpretation of their own ecclesiastical rules.

13.  Plaintiffs are also unlikely to prevail on the merits of their claim that their lease was improperly terminated or should have been renewed.  The lease, by its own terms, expired on September 30, 2013, and provided that renewal was at LifeWay's sole option.  Plaintiffs specifically agreed to surrender the premises upon the lease's termination, and acknowledged that no one at LifeWay made any commitment or promise to them regarding any continuation, extension, or renewal of the lease.

14.  Plaintiffs have failed to show that they will suffer any irreparable harm if injunctive relief is not granted.

15.  Plaintiffs argue that Glorieta 2.0, Inc. is altering the premises and harming the land at Glorieta Conference Center (see Doc. 21, at ¶3), however Plaintiffs have not offered any proof that they have any interest in the land that is allegedly being altered or harmed.  The evidence is that they have no such interest. Plaintiffs' sole interest was in the lot that they formerly leased from LifeWay.

16.  Plaintiffs lack standing to contest the actions that Glorieta 2.0, Inc. may be taking on the land it owns at Glorieta Conference Center.

17.  Plaintiffs appear to argue that they are irreparably harmed by LifeWay's failure to renew their lease, with consequent loss of quiet enjoyment and loss of use (see Doc. 21, at ¶¶ 3, 7).  However, the evidence in this case is that Plaintiffs and LifeWay agreed that the decision about whether to renew the lease was at LifeWay's sole option, and that LifeWay had not made any commitment or promise to renew it.

18.   Plaintiffs have not suffered any legally cognizable harm.

19.   Plaintiffs allege they are being harmed by a denial of access to the lot that they leased from LifeWay.  After September 30, 2013, Plaintiffs' only right of access was for the purpose of removing the improvements on the lot within six months of the expiration of the lease, i.e. by March 31, 2014.   Plaintiffs have not offered any evidence that they ever tried to access the lot for the purpose of removing the improvements on it, or that they were denied access to it when they tried to do so. Nor are Plaintiffs entitled to injunctive relief now, because even their right to remove the improvements expired on March 31, 2014; the improvements now belong to LifeWay.

20.   Plaintiffs claim they will be irreparably harmed by destruction of their property at Glorieta Conference Center "before they have legally made arrangements to move said property."  Plaintiffs have not presented any evidence that anyone damaged or destroyed, or will damage or destroy, or has even threatened to damage or destroy, any property of theirs. Plaintiffs' right to enter the lot for the purpose of removing the improvements has expired.

21.   Plaintiffs allege that other leaseholders will suffer an irreparable loss of their property if injunctive relief is not granted.  Plaintiffs have no standing to seek injunctive relief on behalf of other leaseholders who are not parties to this lawsuit.

22.  Plaintiffs have failed to prove that Defendants will suffer no harm if injunctive relief is granted, or that Plaintiffs will suffer greater harm that outweighs any harm to the Defendants.

23.  Plaintiffs have offered no evidence that Defendants would not be harmed by the injunctive relief that Plaintiffs seek. Plaintiffs merely assert, in conclusory fashion, that no harm will result.

24.  The sale of Glorieta Conference Center from LifeWay to Glorieta 2.0, Inc. cannot be stopped, because it was completed on September 10, 2013.

25.  A reversal of the sale would harm Defendants.

26.  According to the uncontradicted evidence, the operation and maintenance of Glorieta Conference Center resulted in a financial drain to LifeWay of anywhere from $1,123,000 to $1,600,000 per year, and the current infrastructure at the property requires significant upgrades and maintenance.

27.  Requiring LifeWay to resume ownership of the property would cause significant financial harm to LifeWay.

28.  It was important to LifeWay that the buyer of Glorieta Conference Center continue to use it for Christian ministry, and it took a significant amount of time to find an appropriate buyer, Glorieta 2.0, Inc., with the resources to maintain the property and the commitment to use it for religious purposes.  Requiring LifeWay to resume ownership of the Glorieta Conference Center would also endanger these objectives.

29.  Plaintiffs acknowledge, and Glorieta 2.0, Inc. admits, that Glorieta 2.0, Inc. has made substantial changes to the Glorieta Conference Center property.  Glorieta 2.0, Inc. has spent millions on improvements, and a reversal of the sale would harm Glorieta 2.0, Inc. by causing it to lose the funds it has spent improving the property.

30.  Plaintiffs have failed to offer any evidence that they either were or will be harmed by the sale of Glorieta Conference Center. Plaintiffs' only connection with Glorieta Conference Center was their lease of a single lot. That lease has now expired, and the lot that Plaintiffs formerly leased was not sold to Glorieta 2.0, Inc.

31.  Allowing Plaintiffs "free access to their home" would harm Defendant LifeWay. As noted above, Plaintiffs' lease expired on September 30, 2013, and their right to remove the improvements expired six months later.  The improvements on the lot now belong to LifeWay. LifeWay's property rights would be unjustifiably infringed if this Court were to require LifeWay to allow Plaintiffs access to the lot they formerly leased from LifeWay.  Plaintiffs will suffer no legally cognizable harm from being denied access to the lot, because their leasehold expired months ago.

32.  Plaintiffs also ask that this Court ask the FBI to investigate Defendants' conduct. No conceivable reason exists to do so.  Although Plaintiffs have asserted throughout this case that Defendants have engaged in a fraudulent conveyance of land and made fraudulent misrepresentations, and have flung around vague accusations of money laundering, racketeering, conspiracy, and other unidentified misconduct, Plaintiffs have not come forward with any evidence to support these claims. Plaintiffs' allegations of fraud and criminal misconduct are baseless and have no foundation in the evidence.

33.  Finally, the public interest does not support any grant of injunctive relief. The public interest demands instead that real estate be freely alienable. No evidence has been presented that the sale of Glorieta Conference Center by LifeWay to Glorieta 2.0, Inc. was in any way improper or illegal, and no reason exists to reverse it.

34.  The public interest also demands that legal contracts be honored and enforced. When Plaintiffs signed the lease agreement with LifeWay, they gave their word that they would honor it. They agreed that LifeWay had the sole authority to decide whether or not to renew the lease, and they acknowledged that no one at LifeWay had promised them any different. This lawsuit is

nothing more than an effort by Plaintiffs to go back on their word, and find some way to escape from their agreement with LifeWay. The Court will not condone such conduct.

**CONCLUSIONS OF LAW**

35.  To obtain a temporary restraining order or a preliminary injunction, Plaintiffs must establish that (a) they have a substantial likelihood of prevailing on the merits; (b) that they will suffer irreparable injury if injunctive relief is denied; (c) that their threatened injury outweighs the harm that the opposing parties would suffer under an injunction; and (d) that an injunction would not be adverse to the public interest.

36.  Plaintiffs have failed to establish that they have a substantial likelihood of prevailing on the merits.

37.  Plaintiffs lack standing to assert their claims against Defendants.

38.  To grant injunctive relief, the Court would have to entangle itself in interpreting the internal rules of religious organizations in violation of the First Amendment. Plaintiffs' interpretation of the charter, constitution, and bylaws of the Southern Baptist Convention lacks merit.

39.  Plaintiffs have failed to establish that they will suffer any legally cognizable harm, much less irreparable harm, if injunctive relief is denied.

40.  Since the sale to Glorieta 2.0, Inc. took place on September 10, 2013, the request to stop the sale is now moot. Substantial harm would to both Glorieta 2.0, Inc. and LifeWay would occur if this Court were to nullify the sale. Therefore, any alleged injury to Plaintiffs caused by the sale is far outweighed by the harm that Glorieta 2.0, Inc. and LifeWay would incur if the sale were cancelled and the Glorieta Conference Center property reverted to LifeWay.

41.  An injunction would not be in the public interest.

42.  Plaintiffs' request for a temporary restraining order or preliminary injunction should be denied in its entirety.

**VII.**

**DEFENDANTS EXECUTIVE COMMITTEE OF THE SOUTHERN BAPTIST CONVENTION, SOUTHERN BAPTIST CONVENTION, FRANK S. PAGE, AND D. AUGUST BOTO'S OBJECTIONS TO PLAINTIFF'S SECOND PETITION TO THE COURT FOR EMERGENCY HEARING FOR TEMPORARY RESTRAINING ORDER**

**FINDINGS OF FACT**

1.  The real estate known as Glorieta Conference Center (GCC) was conveyed by ECSBC to LifeWay Christian Resources, formerly known as the Sunday School Board of the Southern Baptist Convention (LCR) by Deed on June 14, 1950.

2.  Since 1950, SBC and LCR have operated on the basis that the Glorieta property was exclusively owned by the LCR and that the establishment of the Glorieta Assembly, and the conveyance to LCR of the real property owned by ECSBC, were accomplished pursuant to the Convention's Constitution and Bylaws.

3.  Plaintiffs leased a lot within GCC from LRC and that lease has expired.

4.  LCR sold and transferred GCC to Glorieta 2.0, Inc. but has retained ownership of the lot previously leased to Plaintiffs.

5.  Plaintiffs' Second Petition for Temporary Restraining Order (Doc. 21) requests a temporary restraining order from transferring real estate to Glorieta 2.0, but the only land in which Plaintiffs had an interest at any time has not been transferred and is not a part of the transfer to Glorieta 2.0, Inc. that has taken place.

6.  Plaintiffs have no real estate interest of any kind in GCC.

7.  Plaintiffs seek to assert alleged rights of other property owners (Doc. 21) but have no authority to do so.

8.  ECSBC, SBC, Page and Boto have no authority over the conveyance of GCC by LCR to Glorieta 2.0.

9.  Plaintiffs base their request for a temporary restraining order on the failure of all Defendants to fulfill the corporate charter mandates by failing to submit the sale issue to two annual meetings of the Southern Baptist Convention.

10.  SBC and ECSBC are separate legal entitles and are religious organizations entitled to protections of the First Amendment to the United States Constitution which assures the free exercise of religion and prohibits excessive entanglement by government in their internal affairs.

11.  D. August Boto is the Executive Vice President and General Counsel of ECSBC.

12.  Frank S. Page is the President and Chief Executive Officer of ECSBC.

13.  Plaintiffs' Second Petition For Temporary Restraining Order seeks civil court interpretation of the internal religious documents of SBC.

14.  Plaintiffs have shown no irreparable harm to support the issuance of a Temporary Restraining Order.

15.  Plaintiffs have shown no basis for equitable relief in their request for a temporary restraining order.

16.  A civil court cannot base a temporary restraining order on a civil court interpretation of religious organizations' alleged failure to follow their own internal charter and mandates.

17.  Boto and Page have never had any personal dealings with Plaintiffs, never conducted any individual or independent business in the State of New Mexico, never maintained an office

or address in the State of New Mexico, never owned or leased property in New Mexico, never

voted or paid income taxes in New Mexico.

18.  ECSBC does not maintain an office in the State of New Mexico, does not own

property in the State of New Mexico, and has never met in the State of New Mexico.

19.  SBC does not maintain an office in the State of New Mexico and has never met in

the State of New Mexico.

## CONCLUSIONS OF LAW

20.  Plaintiffs' Second Petition for Temporary Restraining Order (Doc. 21) should be

denied.

21.  There is no basis for issuing a temporary restraining order against ECSBC, SBC,

Page and Boto.

22.  The Court lacks subject matter jurisdiction.

23.  The Court lacks personal jurisdiction over ECSBC, SBC, Boto and/or Page.

## VIII.
## RECOMMENDATION

It is respectfully recommended as follows:

1.  Motion To Dismiss Verified Third Amended Complaint By Lifeway Christian

Resources, Glorieta 2.0, Inc., Larry D. Cannon, Jerry Rhyne, Thom Ranier, Terry Brasweel,

David Weekley, Leonard Russo And Terry Looper (Doc. 137) should be granted and the

Verified Third Amended Complaint be dismissed with prejudice.

2.  Motion to Strike Plaintiffs' Verified Third Amended Complaint (Doc. 136) should be

granted and the Verified Third Amended Complaint be dismissed with prejudice.

3.  Leonard Russo And Terry Looper's Motion To Dismiss Verified Amended Complaint (Doc. 60) be granted and the Verified Third Amended Complaint be dismissed with prejudice.

4.  Terry Braswell's Motion To Dismiss Verified Amended Complaint (Doc. 69) should be granted and the Verified Third Amended Complaint be dismissed with prejudice.

5.  David Weekley's Motion To Dismiss Verified Amended Complaint (Doc. 77) should be granted and the Verified Third Amended Complaint be dismissed with prejudice.

6.  Executive Committee Of The Southern Baptist Convention, Southern Baptist Convention, And D. August Boto's Motion To Dismiss Plaintiffs' Verified Amended Complaint (Doc. 36) should be granted and the Verified Amended Complaint be dismissed with prejudice.

7.  Travis Best and Charles Craig Carlisle's Motion to Dismiss Verified Third Amended Complaint (Doc. 139) should be granted and the Verified Third Amended Complaint be dismissed with prejudice.

8.  Executive Committee Of The Southern Baptist Convention, Southern Baptist Convention, Frank S. Page and D. August Boto's Motion To Dismiss Verified Third Amended Complaint (Doc. 131) be granted and the Verified Third Amended Complaint be dismissed with prejudice.

9.  Plaintiffs' Second Petition To The Court For Emergency Hearing For Temporary Restraining Order (Doc. 21) be denied with prejudice.

Within fourteen (14) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to these proposed findings and recommended disposition.  A party must file any objections with the clerk of the District Court within the fourteen (14) day period allowed if that party would like

to have appellate review of the proposed findings and recommendations.  If objections are not filed, appellate review will not be allowed.

_____
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE