IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

L. KIRK TOMPKINS and SUSIE TOMPKINS,

      Plaintiffs,

vs.                                                                                                          No. CIV 13-0840 JB/CG

EXECUTIVE COMMITTEE OF THE
SOUTHERN BAPTIST CONVENTION;
SOUTHERN BAPTIST CONVENTION;
LIFEWAY CHRISTIAN RESOURCES OF
THE SOUTHERN BAPTIST CONVENTION;
LIFEWAY CHRISTIAN RESOURCES OF
THE SOUTHERN BAPTIST CONVENTION,
INC.; GLORIETA 2.0, INC.; DAVID
WEEKLEY, LEONARD RUSSO, and TERRY
LOOPER, Directors of Glorieta 2.0, Inc.;
THOM RAINER, President, Lifeway Christian
Resources of the Southern Baptist Convention;
JERRY L. RHYNE, CFO, Lifeway Christian
Resources of the Southern Baptist Convention;
LARRY D. CANNON, Secretary, Lifeway
Christian Resources of the Southern Baptist
Convention; TERRY S. BRASWELL, TRAVIS
BEST, and CRAIG CARSLILE, Directors,
Lifeway Christian Resources of the Southern
Baptist Convention; FRANK S. PAGE,
President and CEO, Executive Committee of the
Southern Baptist Convention; and D. AUGUST
BOTO, Executive VP, Executive Committee of
the Southern Baptist Convention,

      Defendants.

## MEMORANDUM OPINION AND ORDER

      **THIS MATTER** comes before the Court on Travis Best and Charles Craig Carlisle's Motion to Dismiss Verified Third Amended Complaint (Doc. 125) Pursuant to Rules 12(b)(2) and 12(b)(6), filed May 8, 2014 (Doc. 139)("Motion").  Having reviewed the parties' briefings and the relevant law, the Court concludes that it does not have personal jurisdiction over

Defendants Travis Best and Charles Craig Carlisle ("the moving Defendants"), and that the Court should grant the Motion.

## FACTUAL BACKGROUND

This case involves the transfer of land known as the Glorieta Conference Center in Glorieta, Santa Fe County, New Mexico. See Verified Amended Complaint and Motions for Temporary Restraining Order and Preliminary Injunctive Relief for Protection from Unlawful Sale and Disposition and Breach of Quiet Enjoyment ¶¶ 20-39, at 16-22, filed September 18, 2013 (Doc. 16)("FAC").  The Tompkins contend that they own a piece of this land, and that the Defendants have conspired or otherwise acted to fraudulently convey the Glorieta Conference Center to Defendant Glorieta 2.0, Inc.  See FAC ¶¶ 20-39, at 16-22.  The Tompkins further allege that the Defendants disregarded SBC's internal procedures in effectuating this transaction. See, e.g., FAC ¶ 32, at 19.

## PROCEDURAL BACKGROUND

On September 4, 2013, the Tompkins, proceeding pro se, filed their Verified Complaint and Motions for Temporary Restraining Order and Preliminary Injunctive Relief for Protection from Unlawful Sale and Disposition and Breach of Quiet Enjoyment, filed September 4, 2013 (Doc. 1)("Original Complaint"), naming approximately 127 Defendants and seeking to stop the sale of any of the Glorieta Conference Center property.  The Original Complaint also sought a temporary restraining order and preliminary injunction to stop the planned sale to Glorieta 2.0. See Original Complaint ¶¶ 40-45, at 22-24.  The Tompkins then filed their FAC.  The FAC sought to invalidate the sale to Glorieta 2.0, and also sought damages of $300,000.00 on account of the loss of quiet enjoyment of the lot.  See Amended Complaint ¶¶ 57-64, at 27-29.

Thereafter, the Tompkins agreed to dismiss 113 of the 127 named Defendants. See Order Dismissing Certain Defendants, filed November 21, 2013 (Doc. 102).

Subsequently, on March 24, 2014, the Honorable Robert H. Scott, United States Magistrate Judge for the District of New Mexico, entered, sua sponte, an Order for More Definite Statement, filed March 24, 2014 (Doc. 122), directing the Tompkins to amend their FAC to state what each remaining Defendant did to the Tompkins, when each Defendant did it, how the Defendant's action harmed the Tompkins, and what specific legal rights the Tompkins believe each Defendant violated. See Order for More Definite Statement at 1, 4-7. Judge Scott also ordered the Tompkins to state the basis for the Court's personal jurisdiction over each of the individual and institutional Defendants. See Order for More Definite Statement at 5.

After the Tompkins filed their Verified Second Amended Complaint and Motions for Temporary Restraining Order and Preliminary Injunctive Relief for Protection from Unlawful Sale and Disposition and Breach of Quiet Enjoyment; Twelve Million, Four Hundred Thousand ($12,400,000.00) United States Dollars, filed April 8, 2014 (Doc. 123)("SAC"), Judge Scott entered, sua sponte, a Second Order for More Definite Statement, filed April 11, 2014 (Doc. 124) ("Second Order"), in which he found that the SAC did not clearly state what cause of action the Tompkins wished to pursue against each named Defendant. See Second Order at 1, 5. Judge Scott explained that, although the Tompkins had enumerated claims, it remained unclear what legal rights the Tompkins were pursuing under each count and against which Defendant. See Second Order at 2. He reiterated that the Tompkins must respond to the Defendants' argument that the Court lacks personal jurisdiction over certain Defendants and that their failure to do so could result in the dismissal of the case. See Second Order at 4-5.

In response to Judge Scott's Second Order, the Tompkins filed their Verified Third Amended Complaint and Motions for Temporary Restraining Order and Preliminary Injunctive Relief for Protection from Unlawful Sale and Disposition and Breach of Quiet Enjoyment; Twelve Million, Four Hundred Thousand ($12,400,000.00) United States Dollars, filed April 17, 2014 (Doc. 125)("TAC"). The TAC alleges three counts against several individual and institutional Defendants, including the moving Defendants. See TAC at 4-5. Count I alleges that the moving Defendants, in concert with others, failed to abide by the SBC charter, bylaws, and constitution in allowing the Glorieta property to be sold. See TAC at 5-7. Count II alleges that all Defendants participated in the fraudulent conveyance of the Glorieta property. See TAC at 7-9. Finally, Count III alleges a breach of an implied contract between the Tompkins and the Defendants that the Glorieta property would exist for another fifty years. See TAC at 9-12.

The moving Defendants now move the Court to dismiss the TAC on several grounds. The moving Defendants primarily argue that the Court does not have personal jurisdiction, as they are both out-of-state defendants who lack sufficient contacts with New Mexico to satisfy the New Mexico long-arm statute and due-process requirements. See Motion at 3-10. The Tompkins' failure to state the basis for personal jurisdiction, the moving Defendants contend, was also in violation of the Court's Second Order for a more definite statement. See Motion at 2. Second, the moving Defendants maintain that the Court otherwise lacks subject matter jurisdiction, or that the Tompkins fail to state a claim upon which relief can be granted, because the Tompkins lack standing to bring any of their claims. See Motion at 2. Finally, the moving Defendants argue that the Tompkins' factual allegations as to them are insufficient to satisfy federal pleading standards. See Motion at 10-13.

The Tompkins respond to the Motion by generally restating the allegations in their TAC. With regard to the moving Defendants' challenge to personal jurisdiction, they allege that the Court has personal jurisdiction over the Defendants, but do not provide specific facts connecting the Defendants to New Mexico. In addition, they argue that the moving Defendants are the alter ego of "Lifeway, Inc.," and that the corporate veil of "Lifeway, Inc." should be pierced. See Verified Plaintiffs' Response to Travis Best and Charles Craig Carlisle's Motion to Dismiss Verified Third Amended Complaint (Doc. 125) Pursuant to Rules 12(b)(2) and 12(b)(6) (Doc #139) at 5-6, filed May 12, 2014 (Doc. 143)("Response"). The Tompkins also suggest that Defendants' Motion is not timely, as they state that the Defendants have been "in default over 5-months." Response at 1. The moving Defendants reply that their Motion was timely, since it was filed within the deadline set by Judge Scott's Second Order. See Reply Brief in Support of Travis Best and Charles Craig Carlisle's Motion to Dismiss Verified Third Amended Complaint (Doc. 125) Pursuant to Rules 12(b)(2) and 12(b)(6) at 1, filed May 29, 2014 (Doc. 147) ("Reply").

The Tompkins further respond to the Reply with a surreply, see Plaintiffs' Verified Rebuttal to Defendants' Doc. # 147, Ref. Doc. 139 - "Reply Brief in Support of Travis Best and Charles Craig Carlisle's Motion to Dismiss Verified Third Amended Complaint (Doc. 125) Pursuant to Rules 12(b)(2) and 12(b)(6)", filed June 11, 2014 (Doc. 156)("Surreply"). Under the District of New Mexico Local Rules of Civil Procedure, a party may not file a surreply as of right, and must seek leave of the Court to do so. See D.N.M. LR-Civ. 7.4(b). Usually, leave to file a surreply is granted only where a new argument is made in a closing motion. See Navajo Nation v. Urban Outfitters, Inc., 918 F. Supp. 2d 1245, 1252 (D.N.M. 2013). Here, the Tompkins have neither requested leave from the Court to file a surreply, nor identified any new

arguments made in the Reply.  Although a "pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers," Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991), a pro se party "nevertheless must follow the same rules of procedure that govern other litigants," Okla. Federated Gold and Numismatics, Inc. v. Blodgett, 24 F.3d 136, 139 (10th Cir. 1994).  Therefore, the Court will not consider the Sur-reply.

## ANALYSIS

The Court first concludes that the Motion is timely.  Second, the Court grants the Motion, as it concludes that it lacks personal jurisdiction over the moving Defendants.

**I.    THE MOTION IS TIMELY.**

The Tompkins suggest in their Response that the Motion is untimely; they assert that the Defendants were in default for over five months.  See Response at 1.  To the extent that the Tompkins argue the Motion is untimely, that argument lacks merit.

As the moving Defendants state in their Reply, the FAC was served on them on November 12, 2013 -- in Best's case -- and on November 14, 2013 -- in Carlisle's case.  See Summons in a Civil Action, filed November 19, 2013 (Doc. 89); Summons in a Civil Action, filed November 19, 2014 (Doc. 90).  The Court then issued an Order Imposing Temporary Stay, filed November 21, 2013 (Doc. 104).  The stay was lifted on March 20, 2014.  See Order Regarding Subject Matter Jurisdiction & Lifting Stay, filed March 20, 2014 (Doc. 121).  Soon thereafter, the Court entered two orders for a more definite statement, and ultimately ordered that the Defendants file a responsive pleading twenty-one days after the Tompkins filed their TAC.  The Tompkins filed their TAC on April 17, 2014, making the Defendants' responsive pleading

due May 8, 2014.  Defendants filed this Motion on May 8, 2014.  Therefore, Defendants Best and Carlisle's Motion was timely filed.

## II.  THE COURT LACKS PERSONAL JURISDICTION OVER THE MOVING DEFENDANTS.

Where a defendant raises a timely challenge to personal jurisdiction, the plaintiff bears the burden of establishing personal jurisdiction.  See Overton v. United States, 925 F.2d 1282, 1283 (10th Cir. 1991).  To defeat a defendant's motion to dismiss pursuant to rule 12(b)(2), a plaintiff is required only to make a prima facie showing of personal jurisdiction.  Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1069 (10th Cir. 2008)("Dudnikov")(citing Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000)); Coyazo-Hernandez v. Davis & Feder, No. CIV 04-1207 JB/WDS, at *14 (D.N.M. Aug. 17, 2005).

For the purposes of determining whether a plaintiff has made a prima facie showing of personal jurisdiction, the court must accept as true all factual allegations in the complaint.  See AST Sports Sci., Inc. v. CLF Distrib. Ltd., 514 F.3d 1054, 1057 (10th Cir. 2008); Dudnikov, 514 F.3d at 1070; Pytlik v. Prof'l Res., Ltd., 887 F.2d 1371, 1376 (10th Cir. 1989).  "Similarly, any factual disputes in the parties' affidavits must be resolved in the plaintiff's favor."  Dudnikov, 514 F.3d at 1070 (citing FDIC v. Oaklawn Apts., 959 F.2d 170, 174 (10th Cir. 1992)).  See also AST Sports Sci., Inc., 514 F.3d at 1057.  However, "[t]he plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading."  Pytlik v. Prof'l Res. Ltd., 887 F.2d at 1376 (citing Becker v. Angle, 165 F.2d 140, 141 (10th Cir. 1947)).  See also AST Sports Sci., Inc., 514 F.3d at 1057 ("The plaintiff may make this prima facie case showing by

demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." (citations omitted)).

Here, it is undisputed that Defendants Best and Carlisle are out-of-state defendants. See TAC at 2-4. Specifically, Best is a citizen of Idaho, and Carlisle is a citizen of Alabama. See TAC at 4. Thus, for the Court to exercise jurisdiction over Best and Carlisle, the Tompkins must meet their burden of showing that the moving Defendants have sufficient minimum contacts with New Mexico to satisfy due-process requirements and fall within New Mexico's long-arm statute.

"Federal courts sitting in diversity have personal jurisdiction over nonresident defendants to the extent permitted by the law of the forum." Smith v. Cutler, 504 F. Supp. 2d 1162, 1165-66 (D.N.M. 2007)(citing Benally v. Amon Carter Museum of W. Art, 858 F.2d 618, 621 (10th Cir. 1988)(citations omitted)).  In New Mexico, courts apply the following three-part test to determine whether personal jurisdiction exists over a particular out-of-state defendant: (i) whether the defendant committed an act or omission specifically set forth in New Mexico's long-arm statute, N.M. Stat. Ann. § 38-1-16; (ii) whether the plaintiff's cause of action arises out of the alleged acts or omissions; and (iii) whether the defendant has established sufficient minimum contacts with New Mexico to satisfy due-process concerns. See Tercero v. Roman Catholic Diocese of Norwich, Conn., 132 N.M. 312, 316 (2002)("Tercero").

New Mexico's long arm statute provides, in pertinent part:

A.  Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:

  (1)  The transaction of any business within this state;

  . . .

      (3)    The commission of a tortious act within this state.

N.M. Stat. Ann. § 38-1-16.  "This statute extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible."  Tercero, 132 N.M. at 316 (citations omitted).  As a result, in applying the three-part test, the analysis of whether the defendant transacted business or committed a tortious act within New Mexico merges with the constitutional inquiry as to whether such activity constitutes minimum contacts in accordance with due process.  See Tercero, 132 N.M. at 316.  See also Dudnikov, 514 F.3d at 1070.

      To satisfy due-process requirements, a defendant must have sufficient "minimum contacts" with the forum state, such that having to defend a lawsuit there would not "offend traditional notions of fair play and substantial justice."  Dudnikov, 514 F.3d at 1070 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)); AST Sports Sci., Inc., 514 F.3d at 1057 (citations omitted).  A defendant may have "minimum contacts" with the forum state in one of two ways, providing a court with either general jurisdiction or specific jurisdiction.  Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1532-33 (10th Cir. 1996)(citations omitted).  A court has general jurisdiction over an out-of-state defendant when the defendant's contacts with the forum state are "continuous and systematic," even if the suit is unrelated to the defendant's contacts with the state.  Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d at 1532-33 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 & n.9 (1984)).  There is specific jurisdiction over an out-of-state defendant where that defendant has "purposefully directed" its activities at residents of the forum state, and the plaintiff's injuries "arise out of" the defendant's forum-related activities.  Dudnikov, 514 F.3d at 1071 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).

In their Motion, the moving Defendants argue that the Tompkins have not alleged a basis for personal jurisdiction for either Best or Carlisle, and that, as a result, this case should be dismissed. First, Defendants argue that there is no general jurisdiction over either Best or Carlisle because neither Defendant is a citizen or resident of New Mexico. See Motion at 4-5. Defendants attach declarations to their Motion in which Defendants Best and Carlisle further state that they have had no significant contacts in New Mexico, as they own no property, have never maintained bank accounts or offices, and have never conducted any business in the state. See Declaration of Travis Best at 1, filed May 8, 2014 (Doc. 139-1); Declaration of Charles Craig Carlisle at 1, filed May 8, 2014 (Doc. 139-2). In addition, both moving Defendants declare that they have visited New Mexico infrequently, if at all, in the past few decades. See Declaration of Travis Best at 1, filed May 8, 2014 (Doc. 139-1); Declaration of Charles Craig Carlisle at 1, filed May 8, 2014 (Doc. 139-2).

The moving Defendants further contend that there is no specific jurisdiction over them because the Tompkins cannot show that Best and Carlisle individually purposefully availed themselves of the privilege of conducting activities in New Mexico. See Motion at 6-10. In their declarations, the moving Defendants state that, while they participated in discussions and votes regarding the Glorieta property in their capacities as Trustees of LifeWay, they personally had no other involvement in the sale of the Glorieta property. See Declaration of Travis Best at 1, filed May 8, 2014 (Doc. 139-1); Declaration of Charles Craig Carlisle at 1, filed May 8, 2014 (Doc. 139-2). The moving Defendants argue that, under the no-imputed contacts and fiduciary shield doctrine, the fact that the Court has personal jurisdiction over LifeWay does not necessarily confer personal jurisdiction over them merely because they are Trustees of LifeWay. See Motion at 7-10.

The Tompkins do not directly respond to these contentions, and generally restate the allegations from their TAC.  While the Tompkins allege in their TAC that the moving Defendants are out-of-state defendants for the purpose of establishing subject matter jurisdiction through diversity of citizenship, they do not allege that the moving Defendants have sufficient contacts with New Mexico to provide the Court with personal jurisdiction.

The Court acknowledges that where, as here, a party is proceeding pro se, his "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  Hall v. Bellmon, 935 F.2d at 1110.  However, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant."  Hall v. Bellmon, 935 F.2d at 1110.  Indeed, a "broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts," Hall v. Bellmon, 935 F.2d at 1110, and the plaintiff "nevertheless must follow the same rules of procedure that govern other litigants," Okla. Federated Gold and Numismatics, Inc., 24 F.3d at 139.

Even a broad reading of the TAC and the Response does not provide a prima facie showing of personal jurisdiction over the moving Defendants.  The Tompkins have not alleged that the moving Defendants' contacts with New Mexico are "continuous and systematic," or that their claims arise out of the Defendants' few contacts with New Mexico.  The Tompkins have simply failed to provide facts supporting a connection between the moving Defendants and the state of New Mexico, besides the Tompkins' general allegation that the moving Defendants are directors of LifeWay, and have acted in concert with others to fraudulently convey the Glorieta property in that capacity.  See TAC at 4, 6-7; Response at 6.

To the extent that the Tompkins argue that this Court may exercise personal jurisdiction over Best and Carlisle by virtue of their connection to LifeWay alone, this argument is

misplaced. Indeed, as the Defendants argue, "jurisdiction over a corporation in a particular forum does not automatically confer jurisdiction over that corporation's employees." Newsome v. Gallacher, 722 F.3d 1257, 1275 (10th Cir. 2013). Under the constitutional "no-imputed-contacts rule," even if a court has jurisdiction over a corporation, personal jurisdiction over an employee of that corporation must nevertheless be based on that individual employee's activities in the forum state. Newsome v. Gallacher, 722 at 1275-76. In addition, New Mexico recognizes the "fiduciary shield doctrine," which provides that a "corporation's contacts generally cannot be attributed to the officers, directors or employees of the corporation when the individuals' acts were carried out solely in their corporate or representative capacities." Smith v. Cutler, 504 F. Supp. 2d at 1169. See Newsome v. Gallacher, 722 F.3d at 1275. An employee of a corporation, however, will not be protected by the fiduciary shield doctrine "if he or she is a primary participant in the alleged wrongdoing intentionally directed the forum state, which activities formed the bases of the jurisdiction over the corporation." Smith v. Cutler, 504 F. Supp. 2d at 1169-70 (alterations omitted)(citations omitted).

Here, the Tompkins have not alleged a connection between the moving Defendants and New Mexico, except for their positions as "directors" of LifeWay, an entity that previously owned the Glorieta property, the conveyance of which is the subject of this lawsuit. The moving Defendants have declared that they had no personal involvement in the sale of the Glorieta property, and the Tompkins have not provided any information to the contrary. Thus, because the Tompkins have not alleged facts to suggest that the moving Defendants were the primary participants of the sale of the Glorieta property, or that they have otherwise established sufficient contacts with New Mexico, their position as Trustees or Directors with LifeWay alone is insufficient provide the Court with personal jurisdiction.

Therefore, in the face of the moving Defendants' declarations stating that they have, at most, sporadic and infrequent contacts with New Mexico, and were not involved in the sale of the Glorieta property, the Tompkins have not provided sufficient information for this Court to exercise personal jurisdiction over the moving Defendants. The Court notes that the Tompkins have had several opportunities to rectify this deficiency, as they were directed to do so by Judge Scott in both orders for a more definite statement, but they did not address the issue. As a result, the Court finds that the Tompkins have not met their burden of making a prima facie showing of personal jurisdiction over Defendants Best and Carlisle.

**IT IS ORDERED** that Travis Best and Charles Craig Carlisle's Motion to Dismiss Verified Third Amended Complaint (Doc. 125) Pursuant to Rules 12(b)(2) and 12(b)(6), filed May 8, 2014 (Doc. 139), is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Lawrence Kirk Tompkins
Little Rock, Arkansas

    *Plaintiff pro se*

James T. Roach
Albuquerque, New Mexico

    *Attorneys for Defendants Executive Committee of the Southern Baptist Convention, Southern Baptist Convention, Frank S. Page, and D. August Boto*

--and--

Olivia Neidhardt
Janet Santillanes, P.C.
Albuquerque, New Mexico

>  *Attorneys for Defendants Executive Committee of the Southern Baptist Convention, Southern Baptist Convention, and Frank S. Page*

--and--

James P. Guenther
Guenther, Jordan & Price, P.C.
Nashville, Tennessee

> *Attorneys for Defendants Executive Committee of the Southern Baptist Convention, Southern Baptist Convention, and D. August Boto*

Emil Kiehne
Rufus E. Thompson
Modrall Sperling Roehl Harris & Sisk, P.A.
Albuquerque, New Mexico

> *Attorneys for Defendants Lifeway Christian Resources of the Southern Baptist Convention, Lifeway Christian Resources of the Southern Baptist Convention, Inc., Glorieta 2.0, Inc., David Weekley, Leonard Russo, Terry Looper, Thom Rainer, Jerry L. Rhyne, Michael Deahl, Larry D. Cannon, Terry S. Braswell, Travis Best, and Charles Carlisle*