**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

L. KIRK TOMPKINS and SUSIE TOMPKINS,

       Plaintiffs,

vs.                                                                    No. CIV 13-0840 JB/CG

EXECUTIVE COMMITTEE OF THE
SOUTHERN BAPTIST CONVENTION;
SOUTHERN BAPTIST CONVENTION;
LIFEWAY CHRISTIAN RESOURCES OF
THE SOUTHERN BAPTIST CONVENTION;
LIFEWAY CHRISTIAN RESOURCES OF
THE SOUTHERN BAPTIST CONVENTION,
INC.; GLORIETA 2.0, INC.; DAVID
WEEKLEY, LEONARD RUSSO, and TERRY
LOOPER, Directors of Glorieta 2.0, Inc.;
THOM RAINER, President, Lifeway Christian
Resources of the Southern Baptist Convention;
JERRY L. RHYNE, CFO, Lifeway Christian
Resources of the Southern Baptist Convention;
LARRY D. CANNON, Secretary, Lifeway
Christian Resources of the Southern Baptist
Convention; TERRY S. BRASWELL, TRAVIS
BEST, and CRAIG CARSLILE, Directors,
Lifeway Christian Resources of the Southern
Baptist Convention; FRANK S. PAGE,
President and CEO, Executive Committee of the
Southern Baptist Convention; and D. AUGUST
BOTO, Executive VP, Executive Committee of
the Southern Baptist Convention,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Motion to Dismiss Verified Third

Amended Complaint (Doc. 125) by Lifeway Christian Resources, Glorieta 2.0, Inc., Larry D.

Cannon, Jerry Rhyne, Thom Rainer, Terry S. Braswell, David Weekley, Leonard Russo, and

Terry Looper, filed May 8, 2014 (Doc. 137)("Motion").  The primary issues are: (i) whether the

Verified Third Amended Complaint and Motions for Temporary Restraining Order and Preliminary Injunctive Relief for Protection from Unlawful Sale and Disposition and Breach of Quiet Enjoyment; Twelve Million, Four Hundred Thousand ($12,400,000.00) United States Dollars, filed April 17, 2014 (Doc. 125)("Third Complaint"), states plausible claims for relief against the Defendants; (ii) whether Plaintiffs L. Kirk Tompkins and Susie Tompkins have standing to assert claims against Defendants Lifeway Christian Resources of the Southern Baptist Convention ("Lifeway Christian") and Glorieta 2.0 (the "moving corporate Defendants"); and (iii) whether the Court should award attorney fees and costs to Lifeway Christian.  Having reviewed the parties' briefs and the relevant law, the Court concludes that the Tompkins have failed to assert claims upon which relief can be granted and lack standing to pursue their claims against the moving corporate Defendants.  The Court declines, however, to grant attorney fees or costs in favor of Lifeway Christian, and, thus, the Court will grant the Motion in part and deny it in part.

## FACTUAL BACKGROUND

This case involves the transfer of land known as the Glorieta Conference Center in Glorieta, Santa Fe County, New Mexico.  <u>See</u> Verified Amended Complaint and Motions for Temporary Restraining Order and Preliminary Injunctive Relief for Protection from Unlawful Sale and Disposition and Breach of Quiet Enjoyment ¶¶ 20-39, at 16-22, filed September 18, 2013 (Doc. 16)("FAC").  The Tompkins contend that they own a piece of this land, and that the Defendants have conspired or otherwise acted to fraudulently convey the Glorieta Conference Center to Defendant Glorieta 2.0, Inc.  <u>See</u> FAC ¶¶ 20-39, at 16-22.  The Tompkins further allege that the Defendants disregarded the Southern Baptist Convention's ("SBC") internal procedures in effectuating this transaction.  <u>See</u>, <u>e.g.</u>, FAC ¶ 32, at 19.

## PROCEDURAL BACKGROUND

On September 4, 2013, the Tompkins, proceeding pro se, filed their Verified Complaint and Motions for Temporary Restraining Order and Preliminary Injunctive Relief for Protection from Unlawful Sale and Disposition and Breach of Quiet Enjoyment, filed September 4, 2013 (Doc. 1)("Original Complaint"), naming approximately 127 Defendants and seeking to stop the sale of any of the Glorieta Conference Center property.  The Original Complaint also sought a temporary restraining order and preliminary injunction to stop the planned sale to Glorieta 2.0. See Original Complaint ¶¶ 40-45, at 22-24.  The Tompkins then filed their FAC.  The FAC sought to invalidate the sale to Glorieta 2.0, and also sought damages of $300,000.00 on account of the loss of quiet enjoyment of the lot.   See Amended Complaint ¶¶ 57-64, at 27-29. Thereafter, the Tompkins agreed to dismiss 113 of the 127 named Defendants.  See Order Dismissing Certain Defendants, filed November 21, 2013 (Doc. 102).

Subsequently, on March 24, 2014, the Honorable Robert H. Scott, United States Magistrate Judge for the District of New Mexico, entered, sua sponte, an Order for More Definite Statement, filed March 24, 2014 (Doc. 122), directing the Tompkins to amend their FAC to state what each remaining Defendant did to the Tompkins, when each Defendant did it, how the Defendant's action harmed the Tompkins, and what specific legal rights the Tompkins believe each Defendant violated. See Order for More Definite Statement at 1, 4-7.  Judge Scott also ordered the Tompkins to state the basis for the Court's personal jurisdiction over each of the individual and institutional Defendants.  See Order for More Definite Statement at 5.

After the Tompkins filed their Verified Second Amended Complaint and Motions for Temporary Restraining Order and Preliminary Injunctive Relief for Protection from Unlawful Sale and Disposition and Breach of Quiet Enjoyment; Twelve Million, Four Hundred Thousand

($12,400,000.00) United States Dollars, filed April 8, 2014 (Doc. 123)("SAC"), Judge Scott entered, sua sponte, a Second Order for More Definite Statement, filed April 11, 2014 (Doc. 124) ("Second Order"), in which he found that the SAC did not clearly state what cause of action the Tompkins wished to pursue against each named Defendant.  See Second Order at 1, 5.  Judge Scott explained that, although the Tompkins had enumerated claims, it remained unclear what legal rights the Tompkins were pursuing under each count and against which Defendant.  See Second Order at 2.  He reiterated that the Tompkins must respond to the Defendants' argument that the Court lacks personal jurisdiction over certain Defendants and that their failure to do so could result in the dismissal of the case.  See Second Order at 4-5.

In response to Judge Scott's Second Order, the Tompkins filed their Third Complaint. The Third Complaint alleges three counts against several individual and institutional Defendants, including Defendants LifeWay Christian, Glorieta 2.0, David Weekley, Leonard Russo, Terry Looper, Thom Rainer, Jerry Rhyne, Larry D. Cannon, and Terry S. Braswell (collectively, "the moving Defendants").  See Third Complaint at 4-5.  Count I alleges that the moving Defendants, in concert with others, failed to abide by the SBC charter, bylaws, and constitution in allowing the Glorieta Conference property to be sold.  See Third Complaint at 5-7.  Count II alleges that all Defendants participated in the fraudulent conveyance of the Glorieta Conference property. See Third Complaint at 7-9.  Finally, Count III alleges a breach of an implied contract between Tompkins and Defendants that the Glorieta Conference property would exist for another fifty years.  See Third Complaint at 9-12.

The moving Defendants move the Court to dismiss the Third Complaint for failure to state a claim upon which relief can be granted.  As to the moving corporate Defendants, they first argue that the Court should dismiss Counts I and II for lack of standing.  See Motion at 2, 7-12.

In addition, the moving Defendants contend, to the extent that the Tompkins argue that the sale of the Glorieta Conference property was not in accord with SBC's or Lifeway Christian's internal procedures or religious purposes, the Court should dismiss Counts I and II, because the First Amendment to the Constitution of the United States of America bars civil courts form interfering with the internal governance of a church.  See Motion at 12-13.  Third, the moving Defendants argue that the Court should dismiss Count III for failure to state a claim, as the Tompkins have failed to allege sufficient factual matter or define specific rights that have been violated for this Court to find an implied contract between the Tompkins and the moving corporate Defendants.  See Motion at 2, 13-23.

Defendants David Weekley, Leonard Russo, and Terry Looper are directors of Glorieta 2.0, and Thom Rainer, Jerry Rhyne, Larry D. Cannon, and Terry S. Braswell are officers and trustees of LifeWay Christian (collectively, the "moving individual Defendants").[1]   See Third Complaint at 4; Motion at 2.  As to the moving individual Defendants, the moving Defendants argue that all counts should be dismissed for failure to state a claim.  See Motion at 2, 23-26.  Specifically, the moving Defendants maintain that the Tompkins have failed to allege sufficient facts connecting them to their legal claims to satisfy federal pleading standards under rules 8(a)(2) and 9(b).  See Motion at 23-26.

---

[1]The Court notes that pursuant to its Order Adopting in Part and Not Adopting in Part the Magistrate Judge's Report and Recommendations as to Docs. 21, 36, 60, 69, and 77, and Overruling in Part and Sustaining in Part the Plaintiffs' Exceptions to the Magistrate Judge's Recommendations Supported by Verified Evidence with Plaintiffs' Findings of Fact and Conclusions of Law as to Docs. 21, 36, 60, 69, and 77, filed September 20, 2014 (Doc. 178), the Tompkins' claims against Defendants Weekley, Braswell, Russo, and Looper were dismissed for lack of personal jurisdiction.  As a result, the Court here considers the Tompkins' claims only as they relate to individual Defendants Cannon, Rhyne, and Rainer.

Finally, Defendant LifeWay Christian moves the Court to award attorney fees incurred defending against the Third Complaint. <u>See</u> Motion at 26. LifeWay Christian maintains that the lease agreement between the Tompkins and LifeWay Christian states that the prevailing party in a dispute, controversy, or claim arising out of or in relation to the Lease Agreement shall be entitled to costs, including reasonable attorney fees. <u>See</u> Motion at 26. In the event that the Court decides the Motion in the moving Defendants favor, LifeWay Christian urges the Court to order that the Tompkins pay LifeWay Christian's reasonable attorney fees incurred in defending this lawsuit. <u>See</u> Motion at 26.

The Tompkins respond to the Motion by generally restating the allegations in their Third Complaint. <u>See</u> Plaintiff's Verified Response in Opposition to Defendants Motion to Dismiss Verified Third Amended Complaint (Doc. 125) by Lifeway Christian Resources, Glorieta 2.0, Inc., Larry D. Cannon, Jerry Rhyne, Thom Rainer, Terry S. Braswell, David Weekley, Leonard Russo, and Terry Looper (Doc. 137), filed May 12, 2014 (Doc. 142)("Response"). The Tompkins continue to allege that the Defendants conspired to misinform LifeWay Christian trustees as to the financial losses associated with the Glorieta Conference property to obtain their votes to sell the property to Glorieta 2.0. <u>See</u> Verified Brief in Support of Plaintiff's Response in Opposition to Defendants Motion to Dismiss Verified Third Amended Complaint (Doc. 125) by Lifeway Christian Resources, Glorieta 2.0, Inc., Larry D. Cannon, Jerry Rhyye, Thom Rainer, Terry S. Braswell, David Weekley, Leonard Russo, and Terry Looper (Doc 137) at 3, 17, 19, 20, 22-23, filed May 12, 2014 (Doc. 142-1)("Response Supp."). By doing so, the Tompkins argue, the Defendants failed to abide by the SBC charter, constitution, and bylaws, causing the Tompkins' injuries. <u>See</u> Response Supp. at 4. In response to the Defendants' argument that courts are barred from involving themselves in the internal governance of a religious entity, the

Tompkins contend that their cause of action does not involve religious matter, but rather involves commerce.  See Response at 5.

The Tompkins further respond with a surreply, see Plaintiffs' Verified Rebuttal to Docket 145, Ref Doc. 137 "Reply Brief in Support of Motion to Dismiss Verified Third Amended Complaint (Doc. 125) by LifeWay Christian Resources, Glorieta 2.0 Inc., Larry D. Cannon, Jerry Rhyne, Thom Rainer, Terry S. Braswell, David Weekley, Leonard Russo, and Terry Looper", filed June 10, 2014 (Doc. 153)("Surreply").   Under the United States District Court for the District of New Mexico Local Rules of Civil Procedure, a party may not file a surreply as of right, and must seek leave of the Court to do so.  See D.N.M. LR-Civ. 7.4(b).  Usually, leave to file a surreply is granted only where a new argument is made in a closing motion.  See Navajo Nation v. Urban Outfitters, Inc., 918 F. Supp. 2d 1245, 1252 (D.N.M. 2013).  Here, the Tompkins have neither requested leave from the Court to file a surreply, nor identified any new arguments made in the Reply.  Although a "pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers," Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991), a pro se party "nevertheless must follow the same rules of procedure that govern other litigants," Okla. Federated Gold & Numismatics, Inc. v. Blodgett, 24 F.3d 136, 139 (10th Cir. 1994).  Therefore, the Court will not consider the Surreply.

## STANDARD OF REVIEW FOR RULE 12(b)(6) MOTIONS

The Federal Rules of Civil Procedure provide that a complaint must contain a "short and plain" statement of (i) the ground supporting the court's jurisdiction; (ii) the claim showing that the plaintiff is entitled to relief; and (iii) a demand for the relief sought.  Fed. R. Civ. P. 8(a).  A

defendant may move the court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To survive a rule 12(b)(6) motion to dismiss, the complaint must contain allegations of fact that, taken as true, "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012)(citations omitted). While the court must accept as true all of the allegations in the complaint, the court need not grant the same deference to conclusory statements. See Ashcroft v. Iqbal, 556 U.S. at 678. Moreover, "a formulaic recitation of the elements of a cause of action" will not suffice to state a claim. Bell Atlantic Corp. v. Twombly, 550 U.S. at 555. Dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile. See Brereton v. Bountiful City Corp., 434 F.3d 1213, 1219 (10th Cir. 2006).

The Court acknowledges that the Tompkins are proceeding pro se in this case. In reviewing a pro se complaint, the Court applies the same legal standards applicable to pleadings drafted by counsel, but liberally construes the allegations. See Northington v. Jackson, 973 F.2d 1518, 1520-21 (10th Cir. 1992). However, "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d at 1110.

## ANALYSIS

The Motion argues that the Tompkins' claims against both the moving individual and moving corporate Defendants should be dismissed for failure to state a claim. Because the analysis as to the moving individual and moving corporate Defendants differs, the Court will discuss each separately.

## I. THE COURT WILL DISMISS ALL CLAIMS AGAINST THE MOVING INDIVIDUAL DEFENDANTS.

With regard to the moving individual Defendants, the moving Defendants argue that Plaintiffs have failed to allege sufficient facts to state a plausible claim for relief in all three Counts of the Third Complaint. See Motion at 23. In addition, in Counts I and II, the moving Defendants contend that the Tompkins have failed to satisfy rule 9(b), requiring a party to state with particularity the circumstances constituting fraud or mistake. See Motion at 23.

The Tompkins respond to Defendants' Motion by generally restating the allegations in their Verified Third Amended Complaint. The Tompkins continue to allege that the Defendants conspired to misinform LifeWay Christian trustees as to the financial losses associated with the Glorieta Conference property in order to obtain a vote to sell the property to Glorieta 2.0. See Response Supp. at 3, 17, 19, 20, 22-23. By doing so, the Tompkins argue, the Defendants failed to abide by the SBC charter, constitution, and bylaws, causing the Tompkins' injuries. See Response Supp. at 4. The Third Complaint alleges three Counts. The Court will address each in turn.

Count I is titled "Violations of Corporate Charter, Constitution and Bylaws." Third Complaint at 5. It alleges that the moving individual Defendants, "pursuant to their conducts of false representations of facts, willful, wanton and/or gross negligence did ignore the SBC Charter Constitution and Bylaws," by ignoring the mandate that the SBC's messengers be honestly

informed, culminating in the "fraudulent liquidation of [the Glorieta Conference property] to co-conspirator Glorieta 2.0, Inc."  Third Complaint at 6.  The Tompkins allege that the Individual Defendants "perfected the 5 elements of fraud," and that their acts resulted in "severe anxiety and loss of the New Mexico home."  Third Complaint at 6-7.

The Court cannot find any factual allegations from which it can infer that the Individual Defendants are liable for the misconduct alleged.  Indeed, the Tompkins fail to identify an act by any of the moving individual Defendants to allow for such an inference.  They do not state a plausible claim.  Furthermore, claims alleging fraud are subject to a heightened pleading standard.  See SEC v. Goldstone, 952 F. Supp. 2d 1060, 1193 (D.N.M. 2013)(Browning, J.).  Under rule 9(b), parties alleging fraud must "state with particularity the circumstances constituting fraud or mistake."  The United States Court of Appeals for the Tenth Circuit has held that, to survive a motion to dismiss, "a complaint must 'set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'"  Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1252 (10th Cir. 1997)(quoting Lawrence Nat'l Bank v. Edmonds, 924 F.2d 176, 180 (10th Cir. 1991)); SEC v. Goldstone, 952 F. Supp. 2d at 1194-95.

Count I does not contain the particularity required to plead fraud.  The Tompkins have not identified the time, place, and contents of the alleged false representation.  See Schwartz v. Celestial Seasonings, Inc., 124 F.3d at 1252.  Conclusory allegations and declarations that the moving individual Defendants committed fraud are insufficient to state a claim.  See Bell Atl. Corp. v. Twombly, 550 U.S. at 555.  As a result, the Court will dismiss Count I as to all moving individual Defendants.

Count II is titled "Fraudulent Conveyance."   Third Complaint at 7.   In Count II, the Tompkins allege that the moving individual Defendants conspired to "liquidate ownership of [the Glorieta Conference property] through the use of misrepresentations of material facts concerning [the Glorieta Conference property] financials" to deceive LifeWay Christian's trustees, and obtain votes in favor of selling the Glorieta Conference property to Glorieta 2.0.   Third Complaint at 7.   See Response Supp. at 3, 17, 19, 20, 22-23.   The Tompkins further allege that these actions to deceive and fraudulently convey the Glorieta Conference property constitute gross negligence and a violation of the moving individual Defendants' fiduciary duties, causing the Tompkins to sustain financial losses and severe emotional distress.   See Third Complaint at 8.

Again, the Tompkins' allegations in Count II are insufficient to satisfy the particularity requirements for pleading fraud.   The Tompkins have not identified the time, place, or contents of the alleged false representations.   Indeed, the Tompkins have not identified any acts that the moving individual Defendants took at all, and thus any negligence claims are similarly lacking. Count II, therefore, must also fail.

Count III is a claim for "Breach of Implied Contract."   Third Complaint at 9.   Here, Tompkins allege that they relied on the moving individual Defendants' "promotion that Glorieta Conference Center would be around for 50 more years," and that as a result, they had extensively remodeled their dwelling, increasing the value to over $430,000.00.   Third Complaint at 9-10. The Tompkins refer to an article published in the Baptist Press on April 20, 2009, in which it was stated that changes being made to the Glorieta Conference property "will position Glorieta for the next 50 years."   Third Complaint at 10.   The Tompkins allege that they spent "large assets" on their property while the moving individual Defendants deceived the Tompkins and their

family.  Third Complaint at 10.  The Tompkins continue to claim that the sale of the Glorieta Conference property was fraudulent, that the moving individual Defendants ignored the SBC's charter, constitution and bylaws, and that the Tompkins' reliance on their activities caused them severe emotional anxiety and financial losses.  See Third Complaint at 11, 28-29.

  As with Counts I and II, Count III fails to state a claim upon which relief can be granted as to the moving individual Defendants.  The Tompkins do not identify any acts by the moving individual Defendants connecting them to a potential implied contract with the Tompkins.  To be sure, the Tompkins provide one newspaper article, quoted above.  However, the article quotes Mr. Byron Hill, LifeWay Christian's executive director of conference centers, and does not refer to the Tompkins' property or lease agreement.  As the moving Defendants state in their Motion, under New Mexico law, an implied contract is created only where a defendant creates a reasonable expectation in the plaintiff.  See Hartbarger v. Frank Paxton Co., 115 N.M. 665, 672 (1993).  The reasonableness of expectations depends on whether the representation or conduct relied upon is definite, specific, or explicit.  Hartbarger v. Frank Paxton Co., 115 N.M. at 672. Here, the Third Complaint is devoid of facts suggesting that Hill's statement created reasonable expectations in the Tompkins that they would have a contractual right to continue to lease their lot on the Glorieta Conference property for the next 50 years.  Hill does not specifically address the Tompkins, or imply an intent to renew any leases on the Glorieta Conference property. Without more, the facts alleged in the Third Complaint do not support an inference of an implied contract between the Tompkins and the moving individual Defendants.

  In sum, all three Counts in the Third Complaint fail to allege sufficient facts to state a claim against the moving individual Defendants upon which relief can be granted.  While the Court again notes that the Tompkins are proceeding pro se in this case, even a broad reading of

- 12 -

the Third Complaint does not comport with federal pleading standards.  Indeed, "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of alleging sufficient facts on which a recognized legal claim could be based."  Hall v. Bellmon, 935 F.2d at 1110. Furthermore, the Tompkins have had several opportunities to address the deficiencies of their Third Complaint, as Judge Scott has already issued two orders for a more definite statement in this case.  The Court will, therefore, dismiss the entire Third Complaint as to the moving individual Defendants.

## II.   THE COURT WILL DISMISS COUNTS I, II AND COUNT III AS THE CLAIMS ARE ASSERTED AGAINST LIFEWAY CHRISTIAN AND GLORIETA 2.0.

As to moving corporate Defendants LifeWay Christian and Glorieta 2.0, the moving Defendants argue that the Third Complaint should be dismissed for failure to state a claim.  See Motion at 7-23.  The moving Defendants first contend that the Court should dismiss Counts I and II of the Third Complaint for lack of standing, because the Tompkins do not have any ownership interest in LifeWay Christian or Glorieta 2.0.  See Motion at 7-13.  Second, they contend that Count III fails to allege sufficient facts to state a claim upon which relief can be granted.  See Motion at 13-23.

### A.   THE TOMPKINS LACK STANDING TO ASSERT COUNTS I AND II, AND THE COURT WILL DISMISS THOSE CLAIMS.

The moving Defendants maintain that the Tompkins do not have standing to assert Counts I and II of their Third Complaint because the Tompkins do not allege that they are owners, members, or shareholders in LifeWay Christian, Glorieta 2.0, or any other entity involved in this lawsuit.  See Motion at 8-9.  As such, the moving Defendants contend that any claims in which the Tompkins assert that LifeWay Christian did not properly follow its own internal procedures or religious purposes, or that LifeWay Christian officers or directors

- 13 -

committed corporate waste or breached their fiduciary duties must fail.  See Motion at 10.  The Tompkins do not respond to this argument.

"Article III of the United States Constitution restricts the judicial authority to deciding 'Cases' and 'Controversies.'"  Protocols, LLC v. Leavitt, 549 F.3d 1294, 1298 (10th Cir. 2008) (citing U.S. Const. art. III, § 2).  To present a "case or controversy," a plaintiff must have standing.  See Utah Animal Rights Coalition v. Salt Lake City Corp., 371 F.3d 1248, 1255-56 (10th Cir. 2004).  "[S]tanding depends on the plaintiff's showing (1) an injury in fact that is both concrete and particularized as well as actual or imminent; (2) a causal relationship between the injury and the challenged conduct; and (3) a likelihood that the injury would be redressed by a favorable decision."  Protocols, LLC v. Leavitt, 549 F.3d at 1298 (citations omitted).

"The party invoking federal jurisdiction bears the burden of establishing these elements."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)(citations omitted).  Indeed, "the elements of constitutional standing are not mere pleading requirements but rather are an indispensable part of the plaintiff's case."  State of Utah v. Babbitt, 137 F.3d 1193, 1204-05 (10th Cir. 1998)(citing Lujan v. Defenders of Wildlife, 504 U.S. at 561).  "Consequently, 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive states of the litigation.'"  State of Utah v. Babbitt, (quoting Lujan v. Defenders of Wildlife, 504 U.S. at 561).

Accordingly, at the pleading stage, a plaintiff must generally allege facts which support a finding of standing.  See State of Utah v. Babbitt, 137 F.3d at 1205.  Faced with a motion to dismiss, the court must accept as true all material allegations of the complaint, and construe the complaint in the plaintiff's favor.  See Ward v. Utah, 321 F.3d 1263, 1266 (10th Cir. 2003).

Nevertheless, if a plaintiff fails to make the necessary allegations, that plaintiff lacks standing. See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990); Phelps v. Hamilton, 122 F.3d 1309, 1326 (10th Cir. 1997)(explaining that standing cannot be inferred argumentatively from averments in the pleading but must affirmatively appear in the record)(citing FW/PBS, Inc. v. City of Dallas, 493 U.S. at 231).

As stated above, Count I is titled "Violations of Corporate Charter, Constitution and Bylaws." Third Complaint at 5. It alleges that LifeWay Christian, and the moving individual Defendants "pursuant to their conducts of false representations of facts, willful, wanton and/or gross negligence did ignore the SBC Charter Constitution and Bylaws," by ignoring the mandate that the Messengers of the SBC be honestly informed, culminating in the "fraudulent liquidation of [the Glorieta Conference property] to co-conspirator Glorieta 2.0, Inc." Third Complaint at 6. The Tompkins allege that the moving corporate Defendants "perfected the 5 elements of fraud," and that their acts resulted in "severe anxiety and loss of the New Mexico home." Third Complaint at 6-7. It is unclear whether the Tompkins allege that Glorieta 2.0 committed any wrongdoing, as they do not identify Glorieta 2.0 as having engaged in fraudulent or otherwise unlawful activity, but also refer to Glorieta 2.0 as a "co-conspirator." Third Complaint at 6.

Count II is titled "Fraudulent Conveyance." Third Complaint at 7. In Count II, the Tompkins allege that LifeWay Christian conspired with other Defendants to "liquidate ownership of [the Glorieta Conference property] through the use of misrepresentations of material facts concerning [the Glorieta Conference property] financials" to deceive LifeWay Christian trustees and to obtain votes in favor of selling the Glorieta Conference property to Glorieta 2.0, Inc. Third Complaint at 7. The Tompkins further allege that these actions to deceive and fraudulently convey the Glorieta Conference property constitute gross negligence

and a violation of Defendants' fiduciary duties, in violation of several New Mexico and Tennessee statutes, causing the Tompkins financial losses and severe emotional distress. See Third Complaint at 8.

Nowhere in their Third Complaint do the Tompkins allege that they are members, trustees, or officers of LifeWay Christian or Glorieta 2.0. Generally, when a corporation suffers an injury or incurs a loss, only the corporation may vindicate its rights. See Marchman v. NCNB Tex. Nat'l Bank, 120 N.M. 74, 81 (1995)(internal quotation marks omitted). Even where a direct injury to the corporation results in an indirect injury to other parties, those parties cannot individually assert the corporate cause of action. See Marchman v. NCNB Tex. Nat'l Bank, 120 N.M. at 81 (internal citations omitted). Two exceptions to this general rule exist where a shareholder of a corporation may sue individually for injuries to the corporation. See Marchman v. NCNB Tex. Nat'l Bank, 120 N.M. at 81. These "exceptions arise 'where there is a special duty, such as a contractual duty, between the wrongdoer and the shareholder,' and 'where the shareholder suffered an injury separate and distinct from that suffered by other shareholders.'" Marchman v. NCNB Tex. Nat'l Bank, 120 N.M. at 81-82 (quoting 12B William M. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations §§ 5911 (Charles R.P. Keating & Jim Perkowitz-Solheim perm. rev. ed. 1993)). Parties who are not shareholders of the corporation do not fall within these exceptions, and therefore have no legal right to assert actions alleging injury to the corporation. See Faniola v. Mazda Motor Corp., No. CIV-02-1011 JB/RLP, 2004 WL 1354471, at *9 (D.N.M. Apr. 22, 2004)(Browning, J.).

The moving Defendants are correct that "the real party in interest is the one who, under applicable substantive law, has the legal right to bring suit." Bower v. RISD, No. CIV 04-0913 JB/DJS, 2006 WL 4109666, at *6 (D.N.M. Aug. 31, 2006)(Browning, J.)(citations omitted). It

follows that "one who is not a real party in interest has no standing to bring suit on behalf of another individual because he cannot show an injury in fact of his own legally protected interest." Bower v. RISD, 2006 WL 4109666, at *6 (citing Fymbo v. State Farm Fire & Cas. Co., 213 F.3d 1320, 1321 (10th Cir. 2000)).

Because the Tompkins have not alleged that they are members, officers, or trustees of LifeWay Christian, they do not have the substantive legal right to bring any of the claims in Counts I and II, and are therefore not the real party in interest. Indeed, as outsiders to LifeWay Christian, the Tompkins do not have a legal right to bring any claims alleging that LifeWay Christian has failed to abide by its own internal procedures or religious purpose, as that is an injury to LifeWay Christian itself, not to the Tompkins. Similarly, they lack the legal right to assert any claims of waste or breaches of fiduciary duties on the part of the trustees and officers of LifeWay Christian, as they are not shareholders of LifeWay Christian and are not in a position to vindicate LifeWay Christian's legal rights. See Faniola v. Mazda Motor Corp., 2004 WL 1354471, at *8 ("A breach of fiduciary duty . . . is an injury to the corporation . . .").

Furthermore, with regard to their claims of fraud, Plaintiffs have not alleged that they relied on any misrepresentation by the Corporate Defendants, but that the trustees of LifeWay Christian relied on certain misrepresentations when they voted to sell the Glorieta Conference property. The Tompkins do not assert that their reliance on the moving corporate Defendants' representations of certain financial information regarding the Glorieta Conference property caused their injuries. Rather, they allege that the LifeWay Christian trustees relied on the financial information in voting on whether to sell the Glorieta Conference property. The Tompkins therefore have no substantive legal right in an action for fraud. See Unser v. Unser, 86 N.M. 648, 654-55 (1974)(defining actionable fraud as "a misrepresentation of a fact, known

to be untrue by the maker, and made with an intent to deceive and to induce the other party to act upon it with the other party relying upon it to his injury or detriment").   Again, because the Tompkins do not allege that they are LifeWay Christian members or trustees, they similarly do not have a substantive legal right to bring an action for fraud on behalf of the trustees or LifeWay Christian itself.

The Tompkins, as outsiders to LifeWay Christian and Glorieta 2.0, are thus not real parties in interest in their claims for any violations of the corporate charter, constitution and bylaws, breach of fiduciary duties, or fraud.  The Tompkins lack standing to assert those claims in Counts I and II of their Third Complaint, and the Court will, accordingly, dismiss Counts I and II as to the moving corporate Defendants.

## B.    COUNT III FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The moving Defendants argue that Count III should be dismissed for failure to state a claim because the Tompkins have failed to allege sufficient factual matter or define specific rights that have been violated for the Court to find an implied contract between the Tompkins and the moving corporate Defendants.  See Motion at 2, 13-23.  The Tompkins respond by restating their general allegations, emphasizing that there was an "implied lease" in addition to a written lease between LifeWay Christian and the Tompkins.  See Motion at 8.

Again, Count III is a claim for "Breach of Implied Contract."  With regard to LifeWay Christian, the Tompkins allege that while they were parties to a written lease with LifeWay Chritian, "Plaintiffs enjoyed the real intent 'Implied-in-fact Leases' would be ongoing and continued unless LifeWay, through its Charter Constitution Bylaws requirement to have the 'SBC' Messengers at 2 consecutive year 'SBC' yearly meeting favorably vote to sale Glorieta Conference Center . . . ."  Third Complaint at 9.

Simply put, the Tompkins do not allege sufficient facts for this Court to infer an implied lease between them and LifeWay Christian.   There are no facts describing the conduct or statements that led the Tompkins to believe there was an implied contract that LifeWay Christian would not sell the Glorieta Conference property.   The Tompkins allege nothing more than the conclusory statement that an implied lease existed, which "will not suffice to state a claim."  Bell Atl. Corp. v. Twombly, 550 U.S. at 555.

In Count III, the Tompkins also allege that they relied on the moving corporate Defendants' "promotion that Glorieta Conference Center would be around for 50 more years," and that as a result, they had extensively remodeled their dwelling, increasing the value to over $430,000.00.  Third Complaint at 9-10.  The Tompkins refer to an article published in the Baptist Press on April 20, 2009, in which it was stated that changes being made to the Glorieta Conference property "will position Glorieta for the next 50 years."  Third Complaint at 10.  They allege that they spent "large assets" on their property while the moving corporate Defendants deceived them and their family.  The Tompkins continue to claim that the sale of the Glorieta Conference property was fraudulent, that the moving corporate Defendants ignored the SBC charter, constitution and bylaws, and that the Tompkins' reliance on their activities caused the Tompkins severe emotional anxiety and financial losses.  See Third Complaint at 11-12.

Here, the Tompkins again fail to state a claim upon which relief can be granted, for largely the same reasons discussed previously with regard to Count III against the moving individual Defendants.  The Tompkins identify one act by LifeWay connecting it to a potential implied contract with the Tompkins -- Hill's statement in the Baptist Press on April 20, 2009, quoted above.  As explained above, Hill's statement does not refer to the Tompkins' property or lease agreement.  Under New Mexico law, an implied contract is created only where a defendant

creates a reasonable expectation in the plaintiff.  See Hartbarger v. Frank Paxton Co., 115 N.M. at 672.  The reasonableness of expectations depends on whether the representation or conduct relied upon is definite, specific, or explicit.  See Hartbarger v. Frank Paxton Co., 115 N.M. at 672.  Here, the Third Complaint is devoid of facts suggesting that Hill's statement created reasonable expectations in the Tompkins that they would have a contractual right to continue to lease their lot on the Glorieta Conference property for the next 50 years.  Hill does not specifically address the Tompkins, or imply an intent to renew any leases on the Glorieta Conference property.  Without more, the facts alleged in the Third Complaint do not support an inference of an implied contract between the Tompkins and LifeWay Christian for the Tompkins to continue leasing their lot on the Glorieta Conference property for the next 50 years.

In sum, Count III fails to state a claim against LifeWay Christian and Glorieta 2.0 upon which relief can be granted.  Again, even affording the Tompkins, as pro se Plaintiffs, a broad reading of their Third Complaint, the factual allegations do not state a plausible claim.  See Hall v. Bellmon, 935 F.2d at 1110.  Indeed, the Tompkins have had several opportunities to provide additional facts, as Judge Scott has already issued two orders for a more definite statement in this case, and have been unable to do so.  Therefore, Count III should also be dismissed.

## III.   THE COURT WILL DENY LIFEWAY CHRISTIAN'S REQUEST FOR ATTORNEY FEES.

Finally, LifeWay Christian urges this Court to award attorney fees to it for defending against the Third Complaint.  See Motion at 26.  LifeWay Christian argues that the lease agreement between the Tompkins and LifeWay Christian provides that with respect to "[a]ny dispute, controversy or claim arising under, out of, in connection with or in relation to this Agreement, or the breach termination, validity or enforceability of any provision of this Agreement," "the prevailing party shall be enttield to costs, including reasonable attorney fees."

- 20 -

See Motion at 26.  Lifeway Christian contends that the dispute before the Court "arises under, out of, in connection with or in relation to" the lease agreement, as the Tompkins have alleged that LifeWay Christian's actions have caused them the loss of their home and religious retreat. Motion at 26.  Lifeway Christian maintains the lease agreement is the sole legal connection between the Tompkins and the Glorieta Conference Center.  The Tompkins do not address this issue.

This Court is not inclined to award attorney fees to LifeWay Christian, as this Motion was not decided on the lease agreement's terms, but rather on questions of jurisdiction.  Indeed, the lease agreement's terms have not factored into the Court's analysis at any point.  As a result, the Court will not grant attorney fees to LifeWay Christian for expenses incurred defending against the Third Complaint.

For the reasons stated above, the Court finds that the Tompkins have failed to assert claims upon which relief can be granted, for lack of factual allegations to state a plausible claim, or for want of standing.  In addition, because the Court has decided this action on questions of jurisdiction, and not on the terms of the lease agreement, the Court will not award LifeWay Christian attorney fees for defending against Plaintiffs' Verified Third Amended Complaint.

**IT IS ORDERED** that Motion to Dismiss Verified Third Amended Complaint (Doc. 125) by Lifeway Christian Resources, Glorieta 2.0, Inc., Larry D. Cannon, Jerry Rhyne, Thom Rainer, Terry S. Braswell, David Weekley, Leonard Russo, and Terry Looper, filed May 8, 2014 (Doc. 137), is granted in part and denied in part.  The Court will dismiss all claims against Defendants Lifeway Christian Resources of the Southern Baptist Convention, Glorieta 2.0, Larry D. Cannon, Jerry Rhyne, Thom Rainer, Terry S. Braswell, David Weekley, Leonard Russo, and Terry Looper, but it will not award attorney fees or costs to any Defendant.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Lawrence Kirk Tompkins
Little Rock, Arkansas

      *Plaintiff pro se*

James T. Roach
Albuquerque, New Mexico

      *Attorneys for Defendants Executive Committee of the Southern Baptist Convention, Southern Baptist Convention, Frank S. Page, and D. August Boto*

--and--

Olivia Neidhardt
Janet Santillanes, P.C.
Albuquerque, New Mexico

      *Attorneys for Defendants Executive Committee of the Southern Baptist Convention, Southern Baptist Convention, and Frank S. Page*

--and--

James P. Guenther
Guenther, Jordan & Price, P.C.
Nashville, Tennessee

      *Attorneys for Defendants Executive Committee of the Southern Baptist Convention, Southern Baptist Convention, and D. August Boto*

Emil Kiehne
Rufus E. Thompson
Modrall Sperling Roehl Harris & Sisk, P.A.
Albuquerque, New Mexico

      *Attorneys for Defendants Lifeway Christian Resources of the Southern Baptist Convention, Lifeway Christian Resources of the Southern Baptist Convention, Inc., Glorieta 2.0, Inc., David Weekley, Leonard Russo, Terry Looper, Thom Rainer, Jerry L. Rhyne, Michael Deahl, Larry D. Cannon, Terry S. Braswell, Travis Best, and Charles Carlisle*

- 22 -